UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------x
                        :

STEVEN NUNEZ,              :      **ECF Case**

           Plaintiff,     :

                        :      Civil Action No. 08-CV-5398 (BSJ)

     - against -      :

                        :      **Oral Argument Requested**

CITIBANK, N.A.,       :

                        :

         Defendant.    :

                        :
---------------------------------------------------x

---

## BRIEF IN SUPPORT OF DEFENDANT CITIBANK, N.A.'S
## MOTION TO COMPEL ARBITRATION

---

SILLS CUMMIS & GROSS P.C.
Attorneys for Defendant
Citibank, N.A.
One Rockefeller Plaza
New York, New York  10020
(212) 643-7000

Of Counsel:
  David W. Garland

On the Brief:
  David W. Garland
  William R. Horwitz

1497885

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ........................................................................................ 1

STATEMENT OF THE CASE........................................................................................... 2

ARGUMENT ...................................................................................................................... 7

NUNEZ IS REQUIRED TO ARBITRATE HIS CLAIMS ............................................... 7

    A.    The Federal Arbitration Act Governs Nunez's Arbitration Agreement ................ 7

    B.    Arbitration Should Be Compelled ...................................................................... 8

        1.    The Parties Agreed To Arbitrate................................................................ 8

        2.    Nunez's Claims Fall Within The Scope Of The Arbitration Policy .......... 9

        3.    Nunez's Claims Are Arbitrable ................................................................ 9

    C.    This Action Should Be Dismissed ...................................................................... 10

CONCLUSION.................................................................................................................... 12

# TABLE OF AUTHORITIES

**Cases**                                                                                                     **Page**

Alford v. Dean Witter Reynolds, Inc., 975 F.2d 1161 (5th Cir. 1992)............................11

Bloom v. Jersey City Mun. Utils. Auth.,
   2008 U.S. Dist. LEXIS 10046 (D.N.J. Feb. 8, 2008) ........................................ 9-10

Carey v. Connecticut Gen. Life Ins. Co., 93 F. Supp. 2d 165 (D. Conn. 1999) ............................10

Chanchani v. Salomon/Smith Barney, Inc.,
   2001 U.S. Dist. LEXIS 2036 (S.D.N.Y. March 1, 2001) ...................................... 7-8

Circuit City Stores, Inc. v. Adams, 532 U.S. 105 (2001) ................................................7

Davis v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,
   164 Misc. 2d 481, 625 N.Y.S.2d 795 (N.Y. Sup. Ct. 1994)....................................10

Dean Witter Reynolds v. Byrd, 470 U.S. 213 (1985) ........................................................7

Desiderio v. NASD, 191 F.3d 198 (2d Cir. 1999) ................................................................9

Fletcher v. Kidder, Peabody & Co., 81 N.Y.2d 623, 601 N.Y.S.2d 686 (1993) ......................7, 10

Genesco, Inc. v. T. Kakiuchi & Co., 815 F.2d 840 (2d Cir. 1987)......................................7

Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20 (1991) .........................................7

Gold v. Deutsche Aktiengesellschaft, 365 F.3d 144 (2d Cir. 2004).................................9

Gonzalez v. Toscorp Inc., 1999 U.S. Dist. LEXIS 12109 (S.D.N.Y. Aug. 5, 1999).................. 7-8

Granger v. Securitas Sec. Servs. United States, Co.,
   2006 U.S. Dist. LEXIS 60224 (S.D. Miss. Aug. 23, 2006)............................... 9-10

Keady v. Nike, Inc., 116 F. Supp. 2d 428 (S.D.N.Y. 2000) ........................................10

Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1 (1983) ...........................7, 9

Moss v. Rent-A-Center, Inc., 2007 U.S. Dist. LEXIS 60011 (E.D.N.Y. 2007) ...................... 9-10

Rice v. Brown Bros. Harriman & Co.,
   1997 U.S. Dist. LEXIS 3628 (S.D.N.Y. Mar. 20, 1997) .......................................10

Rubin v. Sona Int'l Corp., 457 F. Supp. 2d 191 (S.D.N.Y 2006).................................11

Scherk v. Alberto-Culver Co., 417 U.S. 506 (1974).........................................................8

Schnabel v. Abramson, 232 F.3d 83 (2d Cir. 2000) ........................................................9

ii

# TABLE OF AUTHORITIES
*(cont'd.)*

**Cases**                                                                                                    **Page**

Sea-Land Service, Inc. v. Sea-Land of P.R., Inc., 636 F. Supp. 750 (D.P.R. 1986)......................11

Shearson/American Express v. McMahon, 482 U.S. 220 (1987)...............................................7, 10

Singer v. Jefferies & Co., 78 N.Y.2d 76, 571 N.Y.S.2d 680 (1991) ..........................................7, 9

Spencer-Franklin v. Citigroup/Citibank N.A.,
    2007 U.S. Dist. LEXIS 11625 (S.D.N.Y. Feb. 21, 2007)..................................................10-11

Tarulli v. Circuit City Stores, Inc., 333 F. Supp. 2d 151 (S.D.N.Y. 2004) ....................................8

Thomas James Assocs. v. Jameson, 102 F.3d 60 (2d Cir. 1996)........................................................9

Varner v. Illinois State Univ., 150 F.3d 706 (7th Cir. 1998) ........................................................10

Vera v. Saks & Co., 335 F.3d 109 (2d Cir. 2003) ............................................................................8

Vittengl v. Wurld Media, Inc., 2007 U.S. Dist. LEXIS 25492 (N.D.N.Y Apr. 5, 2007) ........ 10-11

Williams v. Parkell Prods., 91 Fed. Appx. 707 (2d Cir. 2003)......................................................10


**Statutes**

9 U.S.C. § 1, *et seq.*..............................................................................................................1, 7

9 U.S.C. § 3.........................................................................................................................7, 10

9 U.S.C. § 4.............................................................................................................................7

42 U.S.C. § 1981a.............................................................................................................1, 6, 10

42 U.S.C. § 1983........................................................................................................1, 6, 9, 10

42 U.S.C. § 1985..........................................................................................................1, 6, 10

42 U.S.C. § 2000e, *et seq.* ........................................................................................ 1, 6, 9-10

Admin. Code § 8-101, *et seq.* .................................................................................................1

N.Y. Exec. Law § 290, *et seq.* .................................................................................................1


**Other Authorities**

Fed. R. Civ. P. 12..................................................................................................................1

## PRELIMINARY STATEMENT

On June 13, 2008, plaintiff Steven Nunez commenced this action, which arises from his employment with defendant Citibank, N.A. ("Citibank"). In the Verified Complaint, Nunez alleges that during his employment, Citibank subjected him to harassment based upon his race and religion and retaliated against him, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), the New York State Human Rights Law, N.Y. Exec. Law § 290, *et seq.*, the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101, *et seq.*, 42 U.S.C. §§ 1981a, 1983, and 1985, and the First and Fourteenth Amendments to the U.S. Constitution. Citibank now moves, pursuant to the Federal Arbitration Act, 9 U.S.C. § 1, *et seq.*, and Rule 12(b)(1) and (6) of the Federal Rules of Civil Procedure, for an Order dismissing this action and compelling Nunez to arbitrate his claims.

As set forth herein, Nunez expressly agreed on more than one occasion to arbitrate any employment-related claims he may have against Citibank. He first agreed to arbitrate claims in March 2005, when he completed and signed a Citibank employment application explaining that the Company had a mandatory arbitration policy and that his employment would be contingent upon his agreeing to submit employment disputes to binding arbitration. A month later, upon commencement of his employment, Nunez signed two documents agreeing to the terms of Citibank's arbitration policy. Approximately a year later, for the third time, he signed a document agreeing to arbitrate employment-related claims.

In accordance with the Federal Arbitration Act and Citibank's arbitration policy, this Court should compel Nunez to arbitrate the claims that are the subject of this lawsuit.

## STATEMENT OF THE CASE[1]

Citibank's arbitration policy (the "Arbitration Policy") requires that all employment disputes be resolved by binding arbitration. The policy applies to all employees of Citibank's U.S. Consumer Group, a business unit that includes employees working in Citibank branch locations. (Pollock Cert. ¶¶ 3-4).

In March 2005, Steven Nunez applied for a position with Citibank. (Pollock Cert. ¶ 5, Ex. 1, p. 3).[2] The employment application completed and signed by Nunez included a statement that "the Company has a mandatory employment arbitration policy" and that employment is "contingent upon execution of written employment documents including an agreement to submit employment related disputes to binding arbitration." (Pollock Cert. Ex. 1).

In the Verified Complaint, Nunez alleges that Citibank hired him on April 25, 2005, as a Personal Banker, and that he worked in a bank branch located in Uniondale, New York. (Complaint ¶¶ 6, 14).[3] Upon the commencement of his employment, Nunez signed two documents reflecting his agreement to the Arbitration Policy. The first document, entitled "Principles of Employment," stated that "[y]ou agree to follow our dispute resolution/arbitration procedures for employment disputes." (Pollock Cert. ¶ 7, Ex. 2). The "Principles of Employment" document outlined the arbitration procedures and provided that, with respect to any dispute that cannot be resolved internally:

---

[1] Citibank accepts the allegations set forth in the Verified Complaint as true for purposes of this motion only, and otherwise reserves the right to dispute them.

[2] References to the paragraphs of the Certification of Ruth A. Pollock are designated as "(Pollock Cert. __)." References to the exhibits attached to the Certification of Ms. Pollock are designated as "(Pollock Cert. Ex. __)."

[3] References to the paragraphs of the Verified Complaint, a copy of which is attached hereto as Exhibit A, are designated as "(¶__)."

1497885

> you and the Company agree to submit the dispute, within the time
> provided by the applicable statute(s) of limitations, to binding
> arbitration with the American Arbitration Association ("AAA") …
> in accordance with the arbitration rules of that forum then in effect
> and as supplemented by the applicable Employment Arbitration
> Policy. A detailed description of these procedures is available in
> the Human Resources department for your review. <u>Again, it is
> your responsibility to read and understand the dispute
> resolution/arbitration procedures. If you have any questions, now
> or in the future, please ask.</u>

(Pollock Cert. Ex. 2) (emphasis in original).

By the second document, entitled "Receipt Form" and dated April 26, 2005, Nunez

acknowledged that he had received a copy of the U.S. Consumer Group 2004 Employee

Handbook, understood that it contained the Arbitration Policy, and agreed to arbitrate

employment-related disputes. (Pollock Cert. ¶¶ 8-9, Ex. 3). The Receipt Form stated:

> I understand that this *Handbook* contains a policy that requires me
> to submit employment-related disputes to binding arbitration (see
> page 35). I have read that policy carefully. I also understand that
> no provision in this *Handbook* or elsewhere is intended to
> constitute a waiver, nor be construed to constitute a waiver, of the
> Company's right to compel arbitration of employment-related
> disputes.

(Pollock Cert. Ex. 3).

Page 1 of the 2004 Employee Handbook, in bold type, contained the following language:

> ***Important: This* Handbook *contains a policy that requires you
> to submit employment-related disputes to binding arbitration (see
> page 35). Please read that policy carefully. No provision in this*
> **Handbook** *or elsewhere is intended to constitute a waiver, or be
> construed to constitute a waiver, of the Company's right to
> compel arbitration of employment-related disputes.***

(Pollock Cert. ¶ 10, Ex. 4, p. 1) (emphasis in original).

The Arbitration Policy in the 2004 Employee Handbook stated the following with respect

to employment-related disputes:

-3-

1497885

> U.S. Consumer Group believes that the resolution of such disagreements will be best accomplished by internal dispute resolution and, where that fails, by arbitration conducted under the auspices of the American Arbitration Association. For these reasons, U.S. Consumer Group has adopted this Employment Arbitration Policy ("Policy"). Except as provided below, the Policy applies to all persons employed by U.S. Consumer Group as of September 1, 2001 and all employees joining U.S. Consumer Group after that date.

(Pollock Cert. Ex. 4, p. 35).

The Arbitration Policy further provided:

> The Policy makes arbitration the required and exclusive forum for the resolution of all employment disputes based on legally protected rights (i.e., statutory, contractual or common law rights) that may arise between an employee or former employee and U.S. Consumer Group or its current and former parents, subsidiaries and affiliates and its and their current and former officers, directors, employees, and agents (and that aren't resolved by the internal Dispute Resolution Procedure) including, without limitation, claims, demands, or actions under Title VII of the Civil Rights Act of 1964, the Civil Rights Acts of 1866 and 1991, the Age Discrimination in Employment Act of 1967, the Older Workers Benefit Protection Act of 1990, the Rehabilitation Act of 1973, the Americans with Disabilities Act of 1990, the Family and Medical Leave Act of 1993, the Fair Labor Standards Act of 1938, the Equal Pay Act of 1963, the Employee Retirement Income Security Act of 1974, the Worker Adjustment and Retraining Notification Act, and all amendments thereto, and any other federal, state, or local statute, regulation, or common-law doctrine regarding employment discrimination, conditions of employment, termination of employment, breach of contract, or defamation.

(Pollock Cert. Ex. 4, p. 35).

Approximately one year after beginning his employment, Nunez signed a "Receipt Form" dated March 2, 2006, acknowledging his receipt of a copy of the U.S. Consumer Group 2006 Employee Handbook, which again included the Arbitration Policy. (Pollock Cert. Ex. 5). By signing the form, Nunez again affirmed that he had read the Arbitration Policy carefully and

1497885

understood that, pursuant to the policy, he would be required "to submit employment-related disputes to binding arbitration." (Pollock Cert. Ex. 5).

Like the 2004 Handbook, the first page of the 2006 Handbook emphasized that the Arbitration Policy "**requires you to submit employment-related disputes to binding Arbitration.**" (Pollock Cert. ¶ 13, Ex. 6, p. 1) (emphasis in original). The versions of the Arbitration Policy contained in the 2004 and 2006 Employee Handbooks are substantively identical. (See Pollock Cert. Exs. 5, 6).

In the Verified Complaint, Nunez alleges that he "is a Jew, a member of The Israelite Church of God in Jesus Christ and must honor the Sabbath … from Friday sundown to Saturday sundown." (¶ 15). He further alleges that on September 1, 2006, he informed a supervisor that, "because of his religious obligations," he would no longer be able to work on Saturdays. (¶ 15). Nunez contends that on October 16, 2006, the Area Manager and a Human Resources representative questioned him about why he could no longer work on Saturdays. (¶ 21). He alleges that they then informed him that he would not be able to continue working in the Uniondale branch if he could not work Saturdays, but they would look for a branch that could accommodate his request. (¶ 21).

According to Nunez, he chose to transfer to the Cedarhurst branch, where he would not have to work Saturdays. (¶ 28). Nunez contends that he began working in the Cedarhurst branch on November 14, 2006. (¶ 29). He further contends that on January 8, 2007, he began working temporarily at the Wantagh branch to provide coverage during another employee's absence. (¶¶ 32-33). According to Nunez, the Cedarhurst and Wantagh Branch Managers questioned him about his religious beliefs, which "upset" and "embarrassed" him. (¶¶ 29-34). Nunez alleges that he also "learned" that his e-mail was "being monitored." (¶ 36). Further, Nunez asserts that

he was subjected to a "hostile work environment" in which he "was prevented from being given a fair opportunity to succeed working for the defendants." (¶ 37).

Based upon the foregoing allegations, Nunez claims that Citibank violated Title VII, the New York State and City Human Rights Laws, 42 U.S.C. §§ 1981a, 1983, and 1985, and the First and Fourteenth Amendments to the U.S. Constitution. (¶¶ 1, 44, 49, 54).

## ARGUMENT

## NUNEZ IS REQUIRED TO ARBITRATE HIS CLAIMS.

**A.     The Federal Arbitration Act Governs Nunez's Arbitration Agreement.**

Nunez's agreement to arbitrate is governed by the Federal Arbitration Act, 9 U.S.C. § 1, *et seq.* (the "FAA"). See Circuit City Stores, Inc. v. Adams, 532 U.S. 105, 109 (2001); Fletcher v. Kidder, Peabody & Co., 81 N.Y.2d 623, 638, 601 N.Y.S.2d 686, 693 (1993); Singer v. Jefferies & Co., 78 N.Y.2d 76, 81, 571 N.Y.S.2d 680, 682 (1991). See also Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 24-5 (1991). The FAA was adopted to ensure enforcement of private agreements to arbitrate and "establishes an 'emphatic' national policy favoring arbitration which is binding on all courts, State and Federal." Singer, 78 N.Y.2d at 81, 571 N.Y.S.2d at 682 (citing, inter alia, Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1 (1983)).

In determining whether arbitration should be compelled under the FAA, courts assess the following factors: (1) whether the parties agreed to arbitrate; (2) whether the plaintiff's claims fall within the scope of the agreement; and (3) if federal statutory claims are at issue, whether Congress intended those claims to be non-arbitrable. See Genesco, Inc. v. T. Kakiuchi & Co., 815 F.2d 840, 844 (2d Cir. 1987). See also Chanchani v. Salomon/Smith Barney, Inc., 2001 U.S. Dist. LEXIS 2036, *5-6 (S.D.N.Y. March 1, 2001); Gonzalez v. Toscorp Inc., 1999 U.S. Dist. LEXIS 12109, *4 (S.D.N.Y. Aug. 5, 1999).[4] When a party to a valid arbitration agreement asserts arbitrable claims in a judicial forum that fall within the scope of the agreement, as Nunez has done here, the FAA requires the Court to compel arbitration. 9 U.S.C. §§ 3 and 4; Shearson/American Express v. McMahon, 482 U.S. 220, 226 (1987); Dean Witter Reynolds v.

---

[4] Copies of the Chanchani and Gonzalez cases are attached hereto as Exhibits B and C, respectively.

Byrd, 470 U.S. 213, 217 (1985); Scherk v. Alberto-Culver Co., 417 U.S. 506, 511 (1974); Vera

v. Saks & Co., 335 F.3d 109, 116 (2d Cir. 2003). The Court should compel arbitration because,

as discussed below, Nunez is a party to a valid arbitration agreement, his claims fall within the

scope of that agreement, and his claims are arbitrable.

**B.    Arbitration Should Be Compelled.**

**1.    The Parties Agreed To Arbitrate.**

As reflected on his employment application, Nunez knew even before he became

employed by Citibank that Citibank had an Arbitration Policy and that his employment would be

contingent upon his agreeing to its terms. Upon his hiring, Nunez signed two documents

expressly setting forth his agreement to the terms of the policy. He worked for almost a year,

and then signed another document reiterating his agreement. His employment then continued for

more than another year, further evidencing his agreement to the terms of the Arbitration Policy.

Courts have held that even in the absence of a written agreement to arbitrate, an

employee who receives an arbitration policy and continues his employment is bound by its

terms. See Chanchani, 2001 U.S. Dist. LEXIS at *8-9; Gonzalez, 1999 U.S. Dist. LEXIS *6. In

this case, Nunez not only accepted and continued his employment with full knowledge of the

Arbitration Policy, he repeatedly agreed to its terms, in writing, both at the outset of and during

his employment. No question exists that under these circumstances arbitration is warranted. See

Tarulli v. Circuit City Stores, Inc., 333 F. Supp. 2d 151, 158 (S.D.N.Y. 2004) (compelling

arbitration where "[t]he Plaintiff voluntarily signed the [arbitration] Agreement and knowingly

accepted employment with the Defendant on the express condition that employment-related

disputes would be settled through arbitration").

1497885

2.    **Nunez's Claims Fall Within The Scope Of The Arbitration Policy.**

Nunez's race and religious discrimination and retaliation claims fall squarely within the scope of the Arbitration Policy. The policy expressly applies to "claims, demands or actions under ... any ... federal, state, or local statute, regulation or common-law doctrine regarding employment discrimination, conditions of employment, termination of employment, breach of contract, or defamation." (Pollock Cert. Exs. 4, 6). Even if any doubt existed as to "the scope of arbitrable issues" here (which it does not), such doubt would have to be resolved in favor of arbitration. Moses H. Cone Memorial Hosp., 460 U.S. at 24-5. Indeed, arbitration must be ordered "unless it may be said with *positive assurance* that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." Thomas James Assocs. v. Jameson, 102 F.3d 60, 65 (2d Cir. 1996) (citations omitted, emphasis added); Singer, 78 N.Y.2d at 82, 571 N.Y.S.2d at 683.

Based on the foregoing, Nunez's claims fall within the scope of the Arbitration Policy and arbitration should be compelled.

3.    **Nunez's Claims Are Arbitrable.**

All of Nunez's claims are arbitrable. See Gold v. Deutsche Aktiengesellschaft, 365 F.3d 144, 148 (2d Cir. 2004) (Title VII and New York State Human Rights Law); Desiderio v. NASD, 191 F.3d 198, 206 (2d Cir. 1999) (Title VII); Bloom v. Jersey City Mun. Utils. Auth., 2008 U.S. Dist. LEXIS 10046, *16-17 (D.N.J. Feb. 8, 2008) (42 U.S.C. § 1983 and First Amendment to the U.S. Constitution);[5] Moss v. Rent-A-Center, Inc., 2007 U.S. Dist. LEXIS 60011, *9 n.2 (E.D.N.Y. 2007) (New York State and City Human Rights Laws); Granger v. Securitas Sec. Servs. United States, Co., 2006 U.S. Dist. LEXIS 60224, *24 (S.D. Miss. Aug. 23, 2006) (42

---

[5] Although Nunez pleaded a § 1983 claim, it should ultimately be dismissed because Citibank is "not a state actor amenable to suit under § 1983." See Schnabel v. Abramson, 232 F.3d 83, 91 (2d Cir. 2000).

1497885

U.S.C. §§ 1983 and 1985); <u>Carey v. Connecticut Gen. Life Ins. Co.</u>, 93 F. Supp. 2d 165, 169 (D.

Conn. 1999) (Title VII, 42 U.S.C. § 1981a, and the Thirteenth Amendment to the U.S.

Constitution);[6] <u>Rice v. Brown Bros. Harriman & Co.</u>, 1997 U.S. Dist. LEXIS 3628, *8 (S.D.N.Y.

Mar. 20, 1997) (New York City Human Rights Law); <u>Fletcher v. Kidder, Peabody & Co.</u>, 81

N.Y.2d 623, 638, 601 N.Y.S.2d 686, 694 (1993) (New York State Human Rights Law).[7]

Therefore, Nunez's claims should be arbitrated.

### C.    <u>This Action Should Be Dismissed.</u>

Once it is determined that the claims asserted in a pending court action are subject to an

arbitration agreement, the FAA mandates that the action be stayed pending completion of arbitral

proceedings. 9 U.S.C. § 3. <u>See also</u> <u>Shearson/American Express v. McMahon</u>, 482 U.S. 220,

226 (1987); <u>Davis v. Merrill Lynch, Pierce, Fenner & Smith, Inc.</u>, 164 Misc. 2d 481, 484 n.3,

625 N.Y.S.2d 795, 797 n.3 (N.Y. Sup. Ct. 1994). Several courts, however, have dismissed cases

when, as is the case here, *all* of the issues raised in the plaintiff's complaint must be submitted to

arbitration. <u>See, e.g.</u>, <u>Williams v. Parkell Prods.</u>, 91 Fed. Appx. 707, 709 (2d Cir. 2003)

(affirming dismissal); <u>Vittengl v. Wurld Media, Inc.</u>, 2007 U.S. Dist. LEXIS 25492, *4

(N.D.N.Y Apr. 5, 2007) ("because there are no issues remaining in this dispute that might

properly be decided by the district court, it is appropriate to dismiss the action rather than to stay

it"); <u>Spencer-Franklin v. Citigroup/Citibank N.A.</u>, 2007 U.S. Dist. LEXIS 11625, *11 (S.D.N.Y.

Feb. 21, 2007) ("[a]ll courts of which we are aware have followed the rule" that a court may

---

[6] Although Nunez asserts a § 1981a "claim" in the Verified Complaint, § 1981a is merely a damages provision and does not support an independent cause of action. <u>Varner v. Illinois State Univ.</u>, 150 F.3d 706, 718 (7th Cir. 1998) ("[t]he plain language of 1981a shows that Congress intended to create an additional remedy for Title VII violations, as opposed to a separate cause of action"); <u>Keady v. Nike, Inc.</u>, 116 F. Supp. 2d 428, 436 (S.D.N.Y. 2000), *aff'd in relevant part*, 23 Fed. Appx. 29 (2d Cir. 2001) ("this statute provides for no independent cause of action, but merely expands the remedies available ... pursuant to Title VII").

[7] Copies of the <u>Bloom</u>, <u>Moss</u>, <u>Granger</u>, and <u>Rice</u> cases are attached hereto as Exhibits D, E, F, and G, respectively.

dismiss a case in which all claims must be arbitrated); <u>Rubin v. Sona Int'l Corp.</u>, 457 F. Supp. 2d 191, 198 (S.D.N.Y 2006) ("[w]here all of the issues raised in the Complaint must be submitted to arbitration, the Court may dismiss an action rather than stay proceedings).[8]

Other courts that addressed the issue have recognized that a stay (as opposed to dismissal) serves no useful purpose because any subsequent court review would be limited by the usual restrictions on reviewing arbitrators' awards and would not address the underlying merits. <u>Alford v. Dean Witter Reynolds, Inc.</u>, 975 F.2d 1161, 1164 (5th Cir. 1992); <u>Sea-Land Service, Inc. v. Sea-Land of P.R., Inc.</u>, 636 F. Supp. 750, 757 (D.P.R. 1986).

Based on the foregoing, once this Court compels arbitration of Nunez's claims, this action should be dismissed pending arbitration.

---

[8] Copies of the <u>Vittengl</u> and <u>Spencer-Franklin</u> cases are attached hereto as Exhibits H and I, respectively.

-11-

1497885

## **CONCLUSION**

For the foregoing reasons, the Court should grant defendant Citibank, N.A.'s motion to

compel arbitration and this action should be dismissed.

Dated: New York, New York
      August 20, 2008

                        Respectfully submitted,

                        SILLS CUMMIS & GROSS P.C.
                        Attorneys for Defendant
                        Citibank, N.A.
                        One Rockefeller Plaza
                        New York, New York 10020
                        (212) 643-7000

                        S/DAVID W. GARLAND (DG-7506)

1497885

# EXHIBIT A

JUDGE JONES

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

**08 CV 5398**

------------------------------------------------X

STEVEN NUNEZ,

CIVIL ACTION NO.

Plaintiff,

VERIFIED COMPLAINT

-against-

PLAINTIFF DEMANDS A TRIAL
BY JURY

CITIBANK, N.A.

Defendant.

------------------------------------------------X

Plaintiff, STEVEN NUNEZ, by his attorneys Phillips, Krantz & Associates,

complaining of the defendant, alleges as follows, upon information and belief:

I

JURISDICTION AND VENUE

1.      This action is brought to remedy discrimination on the basis of religion and race

and in retaliation for the exercise of rights in violation of Title VII of the 1964 Civil

Rights Act, as amended, 42 U.S.C. §2000 et seq., 42 U.S.C. §1981a, 42 U.S.C. §1983, 42

U.S.C. §1985, and the First and Fourteenth Amendments to the United States

Constitution. Jurisdiction is based on 42 U.S.C. §2000e-5(f)(3), 28 U.S.C. §§1331 and

1343(3)(4).

2.      Supplemental jurisdiction pursuant to 28 U.S.C. §1367 is sought to remedy

discrimination on the basis of religion and race and in retaliation for the exercise of rights

in violation of New York Executive Law, §290 et seq. and New York City

Administrative Code, §8-101, et seq.

3.      Injunctive and declaratory relief, damages, attorneys fees and other appropriate

legal and equitable relief are sought pursuant to 42 U.S.C. §2000e-5(g) and (k), 42 U.S.C.

§1988, New York State Executive Law, §297(9), and New York City Administrative

Code, §8-502.

4.    As the defendant's headquarters are in and many of the unlawful practices complained of herein occurred within the Southern District, venue is proper in this District pursuant to 42 U.S.C. §2000e-5(f)(3) and 29 U.S.C. §1391(b).

II

## DETERMINATION BY THE U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

5.    The United States Equal Employment Opportunity Commission, issued a Right to Sue letter without making a determination as to the merits.  Enclosed please find the determination of the United States Equal Employment Opportunity Commission as Exhibit "A".

III

## PARTIES

6.    Plaintiff was employed by the defendant CITIBANK, N.A. as a Personal Banker and had worked for the defendants since approximately April 25, 2005 until the date of his termination on July 19, 2007.

7.    Plaintiff STEVEN NUNEZ was at the time that the causes of action accrued a resident of the State of New York, County of Nassau.  Plaintiff is currently a resident of the State of New York, County of Bronx.

8.    Defendant CITIBANK, N.A. was and still is a domestic corporation organized and existing under the laws of the State of New York.

9.    Defendant CITIBANK, N.A. was and still is a foreign corporation authorized to do business in the State of New York.

10.    Defendant CITIBANK, N.A. was and still is a business organization authorized to do business in the State of New York.

11.    At all times hereinafter mentioned, defendant CITIBANK, N.A. was and still is a corporation engaged in the banking business with a principal place of business located at One Court Square, 9th floor, Long Island City, in the County of Queens, State of New York. The defendant CITIBANK, N.A. employs thousands of people in the banking business.

12.    Defendant CITIBANK, N.A. is an employer within the meaning of Title VII, 42 U.S.C. §2000(e)(b), the Human Rights Law §292(5) and the Administrative Code §8-102(5).

13.    The herein named employees of Defendant CITIBANK, N.A. were supervisors of plaintiff and acted at all relevant times vicariously on behalf of the employer.

IV

FACTUAL ALLEGATIONS COMMON TO
ALL CAUSES OF ACTION

14.    On or about September 22, 2006, Plaintiff was informed that he could no longer work at the Uniondale branch of Citibank due to his request to not work Saturdays because of Sabbath observance. Plaintiff is a Jew and a practicing member of the Israelite Church of God in Jesus Christ. Plaintiff is also Hispanic. On or about September 18, 2006 a message was left with Plaintiff's church regarding Plaintiff's request which contained several discriminatory and insulting statements by the individuals who were evaluating his request, which reflected their true discriminatory mindset towards him. Apparently the Citibank managers who had called the church were not aware that they had hung up the phone, and the recording contained disparaging

remarks about Plaintiff and his religion.  Amongst the remarks made included statements

that the Virgin Mary was not a Virgin, that "This (referring to Plaintiff) is God

Almighty's Son", sarcastic comments of "Hallelujah", and references to his religion as

"unbelievable".  It was also mentioned that Plaintiff was not a "good performer" although

the objective evidence would indicate otherwise.  Plaintiff is in possession of the

recording of the phone message.  Since that time Plaintiff continued to endure hostile and

discriminatory treatment on the basis of his religious beliefs, and has been placed in an

environment which affected Plaintiff's future promotion and salary prospects as an

employee of the defendants, despite the fact that Plaintiff has been a diligent employee

who was known for generating business for the defendant.  Plaintiff also contends that his

requests for religious accommodation as a Jew were not taken seriously because he is

Hispanic.  The following timeline details Plaintiff's work history with defendant.

15.     On September 1, 2006 Plaintiff informed Tama Johnson that he would not longer

be able to work Saturdays because of his religious obligations.  Plaintiff is a Jew, a

member of The Israelite Church of God in Jesus Christ and must honor the Sabbath

which takes place from Friday sundown to Saturday sundown.  Ms. Johnson's response

was that she was trying to run a business and could not think about this right now.

16.     On September 5, 2006 an official letter was submitted to Tama Johnson from The

Israelite Church of God in Jesus Christ stating that Plaintiff was a member of the Church

and a Sabbath observer, and that Plaintiff can no longer continue working on the Sabbath.

Ms. Johnson stated that she will submit the letter to Human Resources.  She then

responded that Plaintiff has to work the next three months on Saturdays until November.

She stated that she is running a business and as soon as Human resources responds she

will let him know. Plaintiff then stated that he could only work this way for one more month and then she would have to find someone to cover for him. She responded that most branches might have no one else to spare and that she'll call around. Approximately two weeks later Ms. Johnson stated that Human resources wanted to know if his request for Saturdays off was temporary or permanent. Plaintiff stated that it was permanent.

17.    On September 22, 2006 Ms. Johnson informed Plaintiff that Human Resources has approved Plaintiff's request to not work Saturdays. However, she stated that she could not have him working at her branch because she is running a business and the other personal bankers will be required to work Saturdays, and that she needs two personal bankers every Saturday. She then stated that Human Resources will look for a location for him, but in the meantime, Plaintiff needed to continue working Saturdays. Plaintiff reminded her that he could only work Saturdays for one more month. When Plaintiff reminded her of the letter submitted by his church she again stated that she is running a business and that she is going on vacation and she needed him to be at work on Saturday, October 7. Plaintiff agreed but then informed her that he could not work Saturdays after that date. She then responded that she is not sure if anyone from other branches would be available, but she would be willing to pay overtime. Plaintiff suggested that she contact Arthur Kent, a personal banker from the Roosevelt branch who had covered in Plaintiff's branch before. She then made the statement, "If I would have known that you could not work on Saturdays I would not have hired you". Plaintiff responded that this is the branch that he wanted to stay at because this is a community that he is familiar with. She then stated that in the interview that Plaintiff agreed on two Saturdays a month.

Plaintiff responded that he had also told her at the interview that he was a religious man and that things might change in the future, and that they had agreed to be flexible provided he gave them advance notice.

18.    On September 26, 2006 Plaintiff spoke to Arthur Kent from the Roosevelt branch and asked him if he received a call from Tama about covering for him on Saturdays. Mr. Kent said no. Plaintiff then asked if he would be willing to cover for him on October 21, 2007 because of his Sabbath obligations. He agreed but indicated that he would need a manager's approval. On September 28, 2006 Arthur Kent called to inform him that his manager had approved him working at his branch on October 21, 2007, but that he needed for Ms. Johnson to call to confirm that she was paying for overtime.

19.    On September 29, 2006 Aimee Standwill stated to Plaintiff that he was approved not to work on Saturday. However, she said that he could not work at the Uniondale branch because he does not meet the needs of the business. She then stated that right now there is no other location that needs another personal banker. She stated that they have a location that is closed on Saturdays and open on Sundays in Cedarhurst but their staff is full. She then stated that he might have to look in the city even if it is 40 miles away. Plaintiff stated that this would result in additional unreimbursed expenses, and that he wanted to stay in Uniondale since it is close to his house and near his family, and also, since Plaintiff is bilingual and familiar with the community in Uniondale, he would prefer to remain in Uniondale.

20.    On October 12, 2006 Ms. Johnson returned from vacation. Plaintiff informed her that Arthur Kent was available to work on October 21, but that his manager needed to speak to her. Around this time Plaintiff began to notice that whenever he passed around

Ms. Johnson's desk area she would speak to the operations manager Beth Gentile in a very low voice, and would abruptly stop talking when he would get close or would signal to each other as he approached. This behavior made Plaintiff feel uncomfortable, as if they are speaking or gossiping about him or his request for the Sabbath off from work.

21.    On October 16, 2006 Liz McNally, the Area Manager, who was Ms. Johnson's boss, called him in to a meeting with Ms. Stanwill from Human Resources. They informed Plaintiff at the meeting that they could not allow him to work at the Uniondale branch. They then asked Plaintiff what has changed that he can not work Saturday. Plaintiff stated that he is a Jew, an Israelite and he is required to honor the Sabbath. They then informed him that they would look into the Long Island area and that he should look into branches outside Long Island, like Manhattan where her request for Saturdays off could be accommodated. The tone of the meeting seemed to be more like an interrogation, rather than an attempt to accommodate his request.

22.    On October 17, 2006 Ms. Gentile was sitting at Ms. Johnson's desk and he was standing at the desk. Ms. Gentile was showing Ms. Johnson how to conference a call and project her voice on the phone loud speaker to reach an employee. One of the codes happened to be 666. Ms. Johnson mentioned that she knew how to use it very well and Ms. Gentile stated that it is easy to remember because it is associated with the Devil. Knowing that Plaintiff is a spiritual person, Plaintiff felt that it was an insensitive statement directed towards him and made him feel uncomfortable.

23.    On October 19, 2006 Plaintiff called Arthur Kent to confirm he was covering for him on October 21. He stated that he never received a phone call and that his manager already scheduled him to work on Saturday. He stated that his manager was waiting for

Plaintiff's manager to call. When Plaintiff reminded Ms. Johnson of her need to call, she finally called, but appeared to be laughing and joking with her and matter of factly informed him that he needed to work that Saturday, with no remorse regarding placing him in that situation.

24.     On October 27, 2006 Plaintiff was called in to another meeting with Liz and Amy, and Jairo Navarro, who was his former Area Manager. They concluded that the best location for him is Cedarhurst. However, Cedarhurst is 45 minutes from Plaintiff's house.

25.     On October 31, 2006 Plaintiff spoke to Tama Johnson and informed her that his preference is remain at the Uniondale branch. She refused and tried to justify her decision based on business reasons, but then mentioned she may hire a personal banker part time.

26.     On November 1, 2006 Plaintiff received an email from Ms. Standwill requesting an answer from him. Plaintiff responded stating that he would have an answer by tomorrow.

27.     On November 2, 2006 Ms. Johnson approached Plaintiff repeatedly about his answer. At the end of the work day Ms. Johnson prevented him from leaving the bank by physically blocking his pathway until he provided here with an answer. Plaintiff stated to her that his attorney was in contact with Human Resources.

28.     On Friday, November 10, 2006 Plaintiff spoke to Ms. Standwill and informed her that he wished to stay at the Uniondale branch. Plaintiff was then informed that his option was to either stay at Uniondale working Saturdays, or work at the Cedarhurst branch where Plaintiff would not be required to work Saturdays. Plaintiff was also

informed by Ms. Standwill that since Plaintiff is an employee of the company he should

not be consulting with an attorney. Plaintiff was also told that he was not reasonable with

his request. When Plaintiff requested that she commit her position in writing she

informed Plaintiff that the only thing in writing he would receive would be the written

decision. Finally, Plaintiff was told that if he stayed at the branch and did not come in on

Saturday, then he must either resign or he would be terminated. Left with no option for

fear of losing his job, Plaintiff then reluctantly agreed to go to the Cedarhurst branch, to

begin on November 16. Plaintiff was then asked by Ms. Standwill to start on Monday the

13th. Plaintiff asked if he could start on the 14th so that he could have a chance to pack

his things. Plaintiff felt that he was being rushed out the door.

29.    On November 14, 2006 Plaintiff was introduced to Roberta Caponi, branch

manager of the Cedarhurst branch, by Jairo Navarro. Mr. Navarro mentioned throughout

the conversation that Plaintiff has a religious obligation and that this location is suitable.

Plaintiff then stated that he is a Jew, an Israelite and that he keeps the Sabbath which

begins Friday sundown to Saturday sundown and he keeps all nine of God's High Holy

Days. Plaintiff also stated that on Fridays Plaintiff has to leave by 2:30-3:00 P.M.

Plaintiff stated that to make up those hours he can do a late night during the week. She

stated no problem and that Plaintiff would like it here. Plaintiff felt at ease that his

religious beliefs would finally be honored.

30.    Plaintiff had mentioned to Ms. Caponi a few days prior that he needed to leave

early Thursday for the opening of Hunnukah. On December 13, 2006 she came to him

and asked why is Hannukah starting on Thursday rather than Friday which it states on her

Jewish calendar. Plaintiff explained to her that according to the Bible it is supposed to be

disciplining religious and racial discrimination and unlawful retaliation.

40.    Defendant's custom or policy of refusing to effectively investigate complaints of religious and racial discrimination and unlawful retaliation or to discipline offenders guilty of religious and racial discrimination and unlawful retaliation amounted to deliberate indifference on the part of the defendant.

41.    Defendant's retaliation of plaintiff is based on religion and race and a hostility to equal treatment of practitioners of Plaintiff's religion and Hispanics.

42.    Defendant's failure to effectively investigate and remedy religious and racial discrimination and unlawful retaliation is based on religious and racial discrimination and causes a chilling of religious and Hispanic employees' protected rights.

43.    Based on the foregoing, the defendant has allowed a pattern or practice of religious and racial discrimination and unlawful retaliation to exist which has subjected Plaintiff to an abusive or hostile discriminatory environment based on religion and race.

V

FIRST CAUSE OF ACTION

44.    Defendant has discriminated against plaintiff on the basis of his religion and race and in retaliation for his opposition to religious and racial discrimination against him, in violation of Title VII of the Civil Rights Act.  Defendant intentionally, willfully, and without justification, acted to deprive plaintiff, on the ground of his religion and race, of his rights, privileges and immunities, particularly of his right to be free of religious and racial discrimination in the workplace and his right to oppose and complain of religious and racial discrimination.  Defendant has a duty to provide and ensure a workplace for Plaintiff and other religious and Hispanic employees, free of intimidation, discriminatory

and other religious and Hispanic employees, from a hostile or abusive work environment and retaliation for exercising protected rights.

50.    Defendant, by their conduct herein alleged, intentionally, willfully, and without justification, deprived Plaintiff on grounds of his religion and race, of his rights, privileges and immunities secured by the Constitution and the laws of the United States, including but not limited to his rights to equal protection of laws provided by the Fourteenth Amendment, and his right to free speech provided by the First Amendment in violation of 42 U.S.C. §1983 and 42 U.S.C. §1985.

51.    Plaintiff has and will continue to suffer irreparable injury, loss of promotion opportunity, loss of pay raises, additional expenses and inconveniences associated with his retaliatory transfer, psychological trauma, mental anguish and humiliation as a result of defendant's discriminatory practices unless and until this Court grants relief.

52.    That as a result of the foregoing, plaintiff has been damaged in the amount of FIVE MILLION DOLLARS ($5,000,000.00).

## VII

### THIRD CAUSE OF ACTION

53.    Plaintiff repeats and realleges each and every allegation contained in paragraphs numbered "1" through "52" of the complaint with the same force and effect as if more fully set forth herein.

54.    Defendant has discriminated against plaintiff in the workplace on the basis of his religion and race in violation of New York Executive Law, §290, et seq. and New York City Administrative Code, §§8-101 et seq.

55.    Defendant has discriminated against plaintiff on the basis of his religion and race

**VERIFICATION**

JASON KRANTZ, an attorney duly admitted to practice law before the Southern District of the State of New York, affirms the following to be true under the penalty of perjury:

I am the attorney of record for the Plaintiff STEVEN NUNEZ in the proceeding herein. I have read the annexed

**COMPLAINT**

know the contents thereof, and the same are true to my knowledge, except those matters therein which are stated to be alleged upon information and belief, and as to those matters I believe them to be true. My belief, as to those matters therein not stated upon knowledge, is based upon facts, records, and other pertinent information contained in my files, provided to me by the Plaintiff.

The reason this Verification is made by me and not Plaintiff is that Plaintiff is not presently in the county wherein the attorney for the Plaintiff maintains his offices.

Dated:   New York, New York
         June 12, 2008

JASON KRANTZ ( JK 0166 )

# EXHIBIT B

LEXSEE



Cited
As of: Aug 16, 2008

AJAY CHANCHANI and BHARATI CHANCHANI, Plaintiffs, - v - SALO-
MON/SMITH BARNEY, INC., Defendant.

99 Civ. 9219 (RCC)

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF
NEW YORK

2001 U.S. Dist. LEXIS 2036; 85 Fair Empl. Prac. Cas. (BNA) 840; 80 Empl. Prac.
Dec. (CCH) P40,538; 17 I.E.R. Cas. (BNA) 860

February 28, 2001, Decided
March 1, 2001, Filed

**DISPOSITION:** [*1] Defendant Smith Barney's mo-
tion to compel arbitration granted.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Defendant employer
moved to compel arbitration pursuant to the dispute-
resolution clause contained in its employee handbook,
and requested that the court stay further proceedings
pending arbitration of plaintiff former employees' claims
for common law wrongful termination and employment
discrimination in violation of Title VII of the Civil
Rights Act of 1964, 42 U.S.C.S. § 2000e et seq.

**OVERVIEW:** Defendant relied upon its employee
handbook's dispute-resolution policy, which made arbi-
tration the exclusive forum for claims against defendant.
After the Equal Employment Opportunity Commission
issued a right to sue letter, plaintiffs filed their complaint
asserting race discrimination, national original discrimi-
nation, retaliation and wrongful termination. Plaintiffs
argued the manual provisions they agreed to were super-
seded by a new version, but the language of the new ar-
bitration provision was the same, and plaintiffs were
deemed to have accepted it by continued employment.
The agreement directed that the wrongful termination
claims would be arbitrated and the discrimination claims.
Although the New York Stock Exchange rules did not
require arbitration of those claims, the agreement clearly

required that the parties submit their dispute to the
American Arbitration Association as an alternate forum.

**OUTCOME:** Defendant's motion to compel arbitration
was granted because the agreement to arbitrate contained
in the employee manual was binding on plaintiffs, who
never rejected its terms and were deemed to have ac-
cepted the terms by continuing their employment, and
because the agreement provided for arbitration even if
the New York Stock Exchange rules did not provide for
it.

**CORE TERMS:** arbitration, arbitration agreements,
handbook, employee handbooks, employment discrimi-
nation, arbitrate, wrongful termination, compel arbitra-
tion, agreed to arbitrate, Civil Rights Act, common law,
acknowledgment, termination, distributed, enforceable,
pre-dispute, binding, registered representative, harass-
ment, eligible, NYSE Rules, common law doctrine,
common law, termination of employment, arbitration
provision, pending resolution, policy contained, pertinent
part, protected rights, statutory claims

**LexisNexis(R) Headnotes**

*Civil Procedure > Alternative Dispute Resolution >
Arbitrations > General Overview*
*Civil Procedure > Alternative Dispute Resolution >
Validity of ADR Methods*

2001 U.S. Dist. LEXIS 2036, *; 85 Fair Empl. Prac. Cas. (BNA) 840;
80 Empl. Prac. Dec. (CCH) P40,538; 17 I.E.R. Cas. (BNA) 860

*Securities Law > Self-Regulating Entities > National Association of Securities Dealers*
[HN1]The federal policy favoring arbitration is well established. Under the Federal Arbitration Act (FAA), 9 U.S.C.S. § 1 et seq., a written agreement to arbitrate shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract. 9 U.S.C.S. § 2. When faced with a motion to compel arbitration under the FAA, a court must assess the following factors: (1) whether the parties agreed to arbitrate; (2) whether the parties' claims fall within the scope of the agreement to arbitrate; and (3) if federal statutory claims are at issue, whether Congress intended those claims to be non-arbitrable.

*Civil Procedure > Alternative Dispute Resolution > Arbitrations > General Overview*
*Civil Procedure > Alternative Dispute Resolution > Validity of ADR Methods*
[HN2]A court generally must decide whether to stay the balance of the case pending arbitration in the event that certain claims are non-arbitrable.

*Administrative Law > Agency Adjudication > Alternative Dispute Resolution*
*Contracts Law > Defenses > Duress & Undue Influence > General Overview*
*Contracts Law > Formation > Execution*
[HN3]Courts employ ordinary principles of contract and agency in order to determine whether the parties have agreed to arbitrate. A party generally will be held to a signed contract unless he can demonstrate special circumstances, such as duress or coercion, that contradict his intent to be bound.

*Civil Procedure > Alternative Dispute Resolution > Arbitrations > General Overview*
*Civil Procedure > Alternative Dispute Resolution > Validity of ADR Methods*
*Contracts Law > Contract Conditions & Provisions > Arbitration Clauses*
[HN4]Courts in the Southern District of New York routinely uphold arbitration agreements contained in employee handbooks where the employee has signed an acknowledgment form.

*Civil Procedure > Alternative Dispute Resolution > Arbitrations > General Overview*
*Contracts Law > Contract Conditions & Provisions > Arbitration Clauses*
*Contracts Law > Formation > Execution*

[HN5]The Federal Arbitration Act, 9 U.S.C.S. § 1 et seq., does not require that the parties sign written acknowledgments of an arbitration agreement; it mandates only that the agreement itself be in writing. 9 U.S.C.S. § 3. It is well settled that a non-signatory party may be subject to an arbitration agreement if his subsequent conduct indicates that he has assumed the obligation to arbitrate.

*Contracts Law > Contract Interpretation > General Overview*
[HN6]It is generally recognized that later agreements supersede earlier agreements, not vice versa.

*Civil Procedure > Alternative Dispute Resolution > Mandatory ADR*
*Labor & Employment Law > Collective Bargaining & Labor Relations > Arbitration > General Overview*
*Labor & Employment Law > Discrimination > Title VII of the Civil Rights Act of 1964 > Remedies > Alternative Dispute Resolution*
[HN7]It is well established in the Second Circuit that employment discrimination claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C.S. § 2000e et seq., are arbitrable.

**COUNSEL:** For AJAY CHANCHANI, BHARATI CHANCHANI, plaintiffs: Alice K. Jump, New York, NY.

**JUDGES:** Richard Conway Casey, U.S.D.J.

**OPINION BY:** Richard Conway Casey

**OPINION**

**OPINION AND ORDER**

Richard Conway Casey, U.S.D.J.,

Plaintiffs Ajay and Bharati Chanchani (collectively, the "Chanchanis") filed the above-captioned action against their former employer, defendant Salomon Smith Barney, Inc. ("Smith Barney" or the "Company"), alleging common law wrongful termination and employment discrimination in violation of Title VII of the civil rights laws, 42 U.S.C. § 2000 et seq. Smith Barney now moves to compel arbitration pursuant to the dispute-resolution clause contained in the Company's Employee Handbook, and requests that this Court stay further proceedings pending resolution of that arbitration. For the reasons set forth below, Smith Barney's motion is granted.

I. BACKGROUND

2001 U.S. Dist. LEXIS 2036, *; 85 Fair Empl. Prac. Cas. (BNA) 840;
80 Empl. Prac. Dec. (CCH) P40,538; 17 I.E.R. Cas. (BNA) 860

Defendant Smith Barney, a registered broker-dealer of securities, is headquartered in New York, New York, with branches nationwide. During the period relevant to the instant motion, the Chanchanis were employed in Smith Barney's Lawrenceville, [*2] New Jersey office. Mr. Chanchani held the position of Financial Consultant, or broker. Mrs. Chanchani initially worked as a Sales Assistant, providing clerical support to her husband, before she too obtained the title of Financial Consultant.

In 1993, Smith Barney distributed to its personnel an Employee Handbook containing the Company's dispute-resolution policy, which made arbitration the exclusive forum for claims against the Company. Smith Barney issued updated versions of the Handbook in 1994, 1995 and 1996. Mr. and Mrs. Chanchani acknowledged receipt of the 1996 version by signing individual Employee Handbook Receipt Forms in March 1997. *See* Declaration of Scott E. Kresch dated November 1, 1999 ("Kresch Decl."), Exs. 3-4. [1] In executing the Receipt Forms, the Chanchanis affirmed that they reviewed the Handbook and agreed to "comply with all the Policies and Procedures of the Company." *Id.*

> 1  Mr. Chanchani appears also to have signed a copy of the Receipt Form in February 1997. *See* Affidavit of Ajay Chanchani dated April 13, 2000 ("Chanchani Aff."), Ex. A.

[*3]  The 1996 Handbook sets forth the arbitration policy, in pertinent part, as follows:

> The Policy makes arbitration the required, and exclusive, forum for the resolution of all disputes based on legally protected rights (i.e. statutory, contractual or common law rights) that may arise between an employee or former employee and the [Company] or its affiliates, officers, directors, employees and agents (and which are not resolved by the internal dispute resolution procedure), including claims, demands or actions under Title VII of the Civil Rights Act of 1964 ... and any other federal, state or local statute, regulation or common law doctrine, regarding employment discrimination, conditions of employment, or termination of employment.

Kresch Decl., Ex. 1 at p. 5. The policy further provides that arbitration shall be conducted pursuant to the rules of the New York Stock Exchange ("NYSE") except as modified by the policy. *Id.* If the NYSE declines to provide a forum for the dispute, the arbitration is to be governed by the rules of the American Arbitration Association ("AAA"). *Id.*

In March 1998, Smith Barney again distributed Receipt Forms to the Lawrenceville employees [*4] pertaining to a newly-issued Interim Employee Handbook. The Interim Handbook, by its terms, "supersedes any conflicting human resources/employment-related policies" of Smith Barney. Reply Declaration of Scott E. Kresch dated April 19, 2000 ("Kresch Reply Decl."), Ex. 1. The Chanchanis never signed the 1998 Receipt Forms. In any event, in April 1998, the branch manager, Rochelle Horst, informed the Lawrenceville employees that the Receipt Form procedure was under review, and stated that she would advise them upon clarification of the policy. *See* Chanchani Aff., Ex. D. Ms. Horst returned those 1998 Receipt Forms which already had been signed to the appropriate individuals.

On October 1, 1998, Smith Barney terminated Mr. Chanchani. Mrs. Chachani left the Company thereafter. In 1999, the Chanchanis filed discrimination claims against Smith Barney with the EEOC. After the EEOC issued a "right to sue" letter, the Chanchanis filed the instant complaint in this Court asserting race discrimination, national original discrimination, retaliation and wrongful termination. Specifically, the complaint alleges that (1) Smith Barney improperly failed to promote Mr. Chanchani; (2) Lawrenceville [*5] management allocated new syndicate issues among employees in a discriminatory fashion; (3) Mrs. Chanchani was subject to separate incidents of harassment by Ms. Horst; and (4) the Chanchanis were retaliated against for reporting their complaints to management. Smith Barney now moves to compel arbitration and to stay the proceedings in this Court on the ground that the arbitration policy contained in the Employee Handbook governs this dispute.

## II DISCUSSION

[HN1]The federal policy favoring arbitration is well-established. *See Gilmer v. Interstate/Johnson Lane Corporation, 500 U.S. 20, 24, 114 L. Ed. 2d 26, 111 S. Ct. 1647 (1991); Desiderio v. National Association of Securities Dealers, Inc., 191 F.3d 198, 203-04 (2d Cir. 1999); Arakawa v. Japan Network Group, 56 F. Supp. 2d 349, 352 (S.D.N.Y. 1999); Maye v. Smith Barney Inc., 897 F. Supp. 100, 105 (S.D.N.Y. 1995).* Under the Federal Arbitration Act ("FAA"), a written agreement to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *9 U.S.C. § 2.* When faced with [*6] a motion to compel arbitration under the FAA, the court must assess the following factors: (1) whether the parties agreed to arbitrate; (2) whether the parties' claims fall within the scope of the agreement; and (3) if federal statutory claims are at issue, whether Congress intended

2001 U.S. Dist. LEXIS 2036, *; 85 Fair Empl. Prac. Cas. (BNA) 840;
80 Empl. Prac. Dec. (CCH) P40,538; 17 I.E.R. Cas. (BNA) 860

those claims to be non-arbitrable. *Genesco, Inc. v. T. Kakiuchi & Co.*, 815 F.2d 840, 844 (2d Cir. 1987); *see also Arakawa*, 56 F. Supp. 2d at 352. [2]

> 2  [HN2]The Court generally must also decide whether to stay the balance of the case pending arbitration in the event that certain claims are non-arbitrable. *Genesco*, 815 F.2d at 844. Because the Court finds that all claims asserted herein are subject to arbitration, this fourth factor is irrelevant. *See Arakawa*, 56 F. Supp. 2d at 353 n.2.

## A. AGREEMENT TO ARBITRATE

With respect to the first factor, [HN3]courts employ "ordinary principles of contract and agency" in order to determine whether the parties have agreed to arbitrate. [*7] *Thomson-CSF S.A. v. American Arbitration Ass'n*, 64 F.3d 773, 776-77 (2d Cir. 1995). A party generally will be held to a signed contract unless he can demonstrate special circumstances, such as duress or coercion, that contradict his intent to be bound. *See Arakawa*, 56 F. Supp. 2d at 352 (applying New York law). Smith Barney argues that the Chanchanis expressly accepted binding arbitration when they executed their Employee Handbook Receipt Forms in 1997. The language of the Receipt Form reads, in pertinent part:

> I have reviewed the Smith Barney Employee Handbook ... I will comply with all the Policies and Procedures of the Company. I will take responsibility for having any questions about any policies answered.

Kresch Decl., Exs. 3-4.

[HN4]Courts in this district routinely uphold arbitration agreements contained in employee handbooks where, as here, the employee has signed an acknowledgment form. *See Arakawa*, 56 F. Supp. 2d at 352 (holding that parties' arbitration agreement was manifested in employee handbook and acknowledgment form signed by plaintiff, and constituted a valid, enforceable contract to arbitrate); *Degetano v. Smith Barney*, 1996 U.S. Dist. LEXIS 1140, No. 95 Civ. 1613, 1996 WL 44226, [*8] at *7-8 (S.D.N.Y. Feb. 5, 1996) (holding that signed arbitration agreement in employment handbook was an enforceable contract in accordance with New York law); *Maye*, 897 F. Supp. at 105-07 (enforcing signed arbitration policy contained in employee handbook according to state law principles of contract formation).

Notwithstanding this case law, the Chanchanis argue that the 1996 Employee Handbook policy does not constitute a binding agreement because Smith Barney "disavowed" it by issuing the Interim Handbook without requiring Receipt Forms. However, by its own terms, the 1998 Interim Handbook supersedes only previous "conflicting" employment policies. Kresch Reply Decl., Ex. 1. The arbitration provision contained in the 1998 Interim Handbook is identical in all respects to that contained in the earlier edition. *Id.* P 3. There is therefore no support for plaintiffs' contention that the policy in the 1996 manual was superseded by the Interim Handbook.

Moreover, the Chanchanis would still be subject to the later arbitration provision even though they did not execute Receipt Forms. [HN5]The FAA does not require that the parties sign written acknowledgments of an arbitration [*9] agreement; it mandates only that the agreement itself be in writing. *See* 9 U.S.C. § 3; *see also Gonzalez v. Toscorp Inc.*, 1999 U.S. Dist. LEXIS 12109, No. 97 Civ. 8158, 1999 WL 595632, at *2 (S.D.N.Y. Aug. 5, 1999) (citing cases). It is well-settled that a non-signatory party may be subject to an arbitration agreement if his subsequent conduct indicates that he has assumed the obligation to arbitrate. *See Thomson*, 64 F.3d at 777. Because the Chanchanis continued to work at Smith Barney even after the promulgation of the Interim Handbook, and never informed Smith Barney that they rejected its terms, they will be deemed to have accepted its provisions.

In a similar case from this district, the Court held that the plaintiff was subject to the company's arbitration policy, distributed to employees along with a copy of the company's handbook, despite the fact that the plaintiff did not sign the required receipt form. *See Gonzalez*, 1999 WL 595632 at *1-3. The Court found that the plaintiff assumed the obligation to arbitrate when he continued his employment with the company past the effective date of the policy. *Id.* at *2; *see also Genesco v. T Kakiuchi & Co.*, 815 F.2d 840, 846 (2d Cir. 1987) [*10] (finding that plaintiff agreed to arbitrate with defendant under both signed and unsigned agreements); *Bishop v. Smith Barney*, 1998 U.S. Dist. LEXIS 1239, No. 97 Civ. 4807, 1998 WL 50210, at *5 (S.D.N.Y. Feb. 6, 1998) (holding that unsigned arbitration agreement was binding under the FAA and indicating that plaintiff's conduct demonstrated an obligation to arbitrate). Therefore, the Chanchanis can be held to arbitration under either the 1996 or the 1998 policy.

## B. SCOPE OF THE AGREEMENT

Courts must resolve any doubts as to the scope of arbitrable issues in favor of arbitration. *See Genesco*, 815 F.2d at 847 (citing *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25, 74 L. Ed. 2d

2001 U.S. Dist. LEXIS 2036, *; 85 Fair Empl. Prac. Cas. (BNA) 840;
80 Empl. Prac. Dec. (CCH) P40,538; 17 I.E.R. Cas. (BNA) 860

765, 103 S. Ct. 927 (1983)). The Smith Barney arbitration policy, by its terms, applies to "legally protected rights (i.e. statutory, contractual or common law rights) ... including claims, demands or actions under Title VII of the Civil Rights Act of 1964 ... and any other federal, state or local statute, regulation or common law doctrine, regarding employment discrimination, conditions of employment, or termination of employment." Kresch Decl., Ex. 1 at p. 5. [*11] This comprehensive language therefore encompasses both plaintiffs' common law wrongful termination claim and plaintiffs' Title VII claims.

The Chanchanis argue, however, that the Smith Barney policy cannot encompass their employment discrimination claims because NYSE Rules 347 and 600, as amended effective January 1, 1999, mandate that such claims are not eligible for arbitration in the absence of a *post-dispute* arbitration agreement:

### Rule 347. Controversies As to Employment or Termination of Employment

(a) Except as provided in paragraph (b), any controversy between a registered representative and any member or member organization arising out of the employment or termination of employment of such registered representative by and with such member or member organization shall be settled by arbitration, at the instance of any such party, in accordance with the arbitration procedure prescribed elsewhere in these rules.

(b) A claim alleging employment discrimination, including any sexual harassment claim, in violation of a statute shall be eligible for arbitration only where the parties have agreed to arbitrate the claim after it has arisen.

### Rule 600. Arbitration [*12]

...

(f) Any claim alleging employment discrimination, including any sexual harassment claim, in violation of a statute shall be eligible for submission to arbitration under these Rules only where the parties have agreed to arbitrate the claim after it has arisen.

Reply Declaration of Michael Delikat dated April 20, 2000 ("Delikat Reply Decl."), Ex. 1. [3] The Chanchanis argue that these Rules are applicable here because the

Chanchanis' Uniform Application for Securities Industry Registration or Transfer, commonly known as a Form U-4, as well as the Smith Barney policy itself, provide that arbitration shall be conducted in accordance with the NYSE rules.

3 Presumably the Chanchanis concede that their common law wrongful termination claim is not excluded from arbitration by the NYSE rules, which by their terms apply only to claims of "employment discrimination ... in violation of a statute ...." *Id.* Plaintiffs' papers do not address this distinction.

The Chanchanis contend that the NYSE rules [*13] must govern this dispute because the Smith Barney arbitration policy is superseded by the Chanchanis' Form U-4s. As brokers, the Chanchanis executed Form U-4s in order to become "registered representatives" with the NYSE and other self-regulatory securities organizations. The U-4 signed by Mr. Chanchani provides that:

I agree that any controversy between me and any member or member organization or affiliate or subsidiary thereof arising out of my employment or the termination of my employment shall be settled by arbitration at the instance of any such party in accordance with the arbitration procedure prescribed in the Constitution and Rules then obtaining of the New York Stock Exchange, Inc.

Affidavit of Alice K. Jump dated April 13, 2000 ("Jump Aff."), Ex. 1. The U-4 signed by Mrs. Chanchani is similar:

I agree to arbitrate any dispute, claim or controversy that may arise between me and my firm, or a customer, or any other person, that is required to be arbitrated under the rules, constitutions, or by-laws of the organizations indicated in item 10 as may be amended from time to time and that any arbitration award rendered against me may be entered as a judgment [*14] in any court of competent jurisdiction.

*Id.*, Ex. 2. The Chanchanis urge that these arbitration agreements, which reference the NYSE rules, must take precedence over the Smith Barney policy, particularly as Smith Barney itself is a member of the NYSE.

2001 U.S. Dist. LEXIS 2036, *; 85 Fair Empl. Prac. Cas. (BNA) 840;
80 Empl. Prac. Dec. (CCH) P40,538; 17 I.E.R. Cas. (BNA) 860

The Court, however, does not agree that the Form U-4s trump the Smith Barney policy. First of all, [HN6]it is generally recognized that later agreements supersede earlier agreements, not vice versa. *See, e.g., Kreiss v. McCown De Leeuw & Co.,* 37 F. Supp. 2d 294, 301 (S.D.N.Y. 1999) ("under New York law, a subsequent contract regarding the same subject matter supersedes the prior contract") (citations omitted). Mr. and Mrs. Chanchani signed their U-4s in 1971 and 1996, respectively; therefore the 1997 Receipt Forms would govern. In any event, the Court can give effect to both agreements because there is no conflict between the two -- the terms of the U-4s and the NYSE rules in no way prohibit member organizations from entering into separate, private arbitration agreements with their employees. Indeed, the NYSE Rules merely prevent the NYSE from acting as an arbitral *forum* with respect to pre-dispute arbitration [*15] agreements. In its release approving the amendments to the Rules, the Securities and Exchange Commission ("SEC") recognized that, according to the NYSE's own interpretation, the proposal "neither invalidates pre-disputes arbitration agreements nor forces parties to litigate statutory employment discrimination claims -- it merely removes the Exchange as an arbitration forum for such claims." 1998 SEC LEXIS 2836, SEC Release No. 34-40858, 1998 WL 907943, at *5 (Dec. 29, 1998). The SEC also recognized that such disputes could still be brought in "another forum provided for in the Form U-4 *or* arbitration agreement." *Id.* at *4 (emphasis added).

The Smith Barney arbitration policy provides such an alternative forum, stating that "if the NYSE declines to provide a forum for dispute, the arbitration shall be conducted under the auspices of the American Arbitration Association (AAA), pursuant to the AAA rules as modified by the Travelers Group Arbitration Policy." Kresch Decl., Ex. 1 at p. 5. Consequently, plaintiffs' second argument -- that the Smith Barney policy itself prohibits pre-dispute agreements because it references the NYSE rules -- also must fail. Read in full, the policy clearly [*16] requires that the parties submit their dispute to the AAA where, as here, the NYSE does not provide a forum for the dispute. Therefore, both plaintiffs' Title VII employment claims and their common law wrongful termination claim are subject to arbitration under the AAA rules.

## C. ARBITRABILITY OF FEDERAL STATUTORY CLAIMS

[HN7]It is well-established in this Circuit that employment discrimination claims under Title VII of the Civil Rights Act are arbitrable. In *Desiderio v. National Ass'n of Securities Dealers, Inc.,* 191 F.3d 198, 204-05 (2d Cir. 1999), the Second Circuit definitively held that compulsory arbitration was not incompatible with the purposes of Title VII. The Second Circuit's decision was in accordance with the long-standing case law in this Circuit. *See, e.g., Maye,* 897 F. Supp. at 109-110.

## III. CONCLUSION

For the foregoing reasons, defendant Smith Barney's motion to compel arbitration is granted. The Court will not conduct any further proceedings pending resolution of the parties' arbitration. The Court therefore directs the Clerk of the Court to close this case subject to reinstatement in the event that post-arbitral proceedings become [*17] necessary.

**Dated: February 28, 2001**

**New York, New York**

**SO ORDERED:**

**Richard Conway Casey, U.S.D.J.**

# EXHIBIT C

LEXSEE

JUAN A. GONZALEZ, Plaintiff, -against- TOSCORP INC. and SOREKE PETERS, Defendants.

97 Civ. 8158 (LAP)

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

1999 U.S. Dist. LEXIS 12109

August 5, 1999, Decided
August 5, 1999, Filed

**DISPOSITION:** [*1] Defendant's motion to compel arbitration granted. Complaint dismissed without prejudice. All pending motions denied as moot.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Defendants moved for an order dismissing plaintiff's employment discrimination complaint pursuant to Fed. R. Civ. P. 12(b)(1) and for an order compelling arbitration under the Federal Arbitration Act.

**OVERVIEW:** Plaintiff employee brought an action for employment discrimination against defendants, the corporation employing plaintiff and plaintiff's supervisor. Defendants moved for an order dismissing plaintiff's complaint and for an order compelling arbitration under the Federal Arbitration Act (FAA). The court granted the arbitration order and dismissed plaintiff's action without prejudice to reinstatement in the event that post-arbitration events would make reinstatement necessary. Defendants had adopted an arbitration policy and had informed plaintiff of the policy at the time of its adoption. The court deemed that plaintiff had assumed the obligation to arbitrate his employment claims. The policy was valid despite the parties' unequal bargaining power. The policy was clear and unambiguous, and plaintiff's claims were within its scope. Second circuit case law clearly established that Title VII claims were arbitrable. The court therefore decided to compel arbitration.

**OUTCOME:** The court granted defendants' motion to compel arbitration and dismissed the complaint without prejudice because plaintiff and defendants had a valid agreement to arbitrate, plaintiff's claims were within the scope of the agreement, and plaintiff's Title VII claims were arbitrable.

**CORE TERMS:** arbitrate, arbitrable, arbitration, arbitration agreements, Civil Rights Act, law claims, compel arbitration, national origin, arbitration clause, team member, agreement to arbitrate, acknowledgment, signature, sexual, Federal Arbitration Act, discrimination claims, judicial forum, condition of employment, compulsory arbitration, harassment, litigate, coercion, binding, concedes, duress, waive, sex, breach of contract, restaurant, ordinance

**LexisNexis(R) Headnotes**

*Civil Procedure > Alternative Dispute Resolution > Arbitrations > Federal Arbitration Act > Arbitration Agreements*
*Civil Procedure > Alternative Dispute Resolution > Judicial Review*
*Contracts Law > Contract Conditions & Provisions > Arbitration Clauses*
[HN1]The Federal Arbitration Act (FAA) establishes a federal policy favoring arbitration. The FAA accomplishes this purpose by providing that arbitration agreements shall be valid, irrevocable, and enforceable, save

upon such grounds as exist at law or in equity for the revocation of any contract.

***Civil Procedure > Alternative Dispute Resolution > Mandatory ADR***
***Labor & Employment Law > Discrimination > Title VII of the Civil Rights Act of 1964 > Remedies > Alternative Dispute Resolution***
[HN2]To determine whether to compel arbitration, a court must decide (1) whether the parties agreed to arbitrate; (2) the scope of the agreement; and (3) whether Congress intended Title VII claims to be arbitrated.

***Civil Procedure > Alternative Dispute Resolution > Judicial Review***
***Contracts Law > Contract Conditions & Provisions > Arbitration Clauses***
[HN3]In determining whether parties have agreed to arbitrate, courts apply generally accepted principles of contract law.

***Civil Procedure > Alternative Dispute Resolution > Arbitrations > General Overview***
***Contracts Law > Contract Conditions & Provisions > Arbitration Clauses***
***Contracts Law > Formation > Execution***
[HN4]The Federal Arbitration Act, 9 U.S.C.S. § 3, requires only that the arbitration agreement be set in writing; it does not require that the writing be signed by the parties. Parties may be bound to unsigned, written arbitration agreements as long as the ordinary principles of contract and agency are satisfied.

***Civil Procedure > Alternative Dispute Resolution > Judicial Review***
***Contracts Law > Contract Conditions & Provisions > Arbitration Clauses***
[HN5]A non-signatory to an arbitration agreement may be bound by the principle of assumption. Assumption arises where a party's subsequent conduct indicates that it is assuming the obligation to arbitrate.

***Contracts Law > Defenses > Duress & Undue Influence > Economic Duress***
[HN6]Under New York law, the following elements of economic duress or coercion must be shown: (1) a threat, (2) which was unlawfully made, and (3) caused involuntary acceptance of contract terms, (4) because the circumstances permitted no other alternative.

***Civil Procedure > Alternative Dispute Resolution > Arbitrations > General Overview***
***Civil Procedure > Alternative Dispute Resolution > Mandatory ADR***
***Contracts Law > Contract Conditions & Provisions > Arbitration Clauses***
[HN7]A mandatory arbitration clause is a reasonable means by which an employer can seek to protect itself from protracted litigation.

***Civil Procedure > Alternative Dispute Resolution > Arbitrations > General Overview***
***Civil Procedure > Alternative Dispute Resolution > Validity of ADR Methods***
***Contracts Law > Contract Conditions & Provisions > Arbitration Clauses***
[HN8]The mere inequality of bargaining power that exists between an employee and an employer is an insufficient reason to find an arbitration agreement unenforceable.

***Civil Procedure > Alternative Dispute Resolution > Arbitrations > General Overview***
***Contracts Law > Contract Conditions & Provisions > Arbitration Clauses***
***Contracts Law > Contract Interpretation > General Overview***
[HN9]A court must broadly construe an arbitration agreement and resolve any doubts concerning its scope in favor of arbitration.

***Civil Procedure > Alternative Dispute Resolution > Arbitrations > General Overview***
***Civil Procedure > Alternative Dispute Resolution > Mandatory ADR***
***Contracts Law > Contract Conditions & Provisions > Arbitration Clauses***
[HN10]Arbitration should be ordered unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.

***Governments > Courts > Judicial Precedents***
[HN11]A decision of the ninth circuit is not binding on the United States District Court for the Southern District of New York.

*Civil Procedure > Alternative Dispute Resolution > Arbitrations > Federal Arbitration Act > General Overview*
*Civil Procedure > Alternative Dispute Resolution > Validity of ADR Methods*
*International Trade Law > Dispute Resolution > Arbitration*
[HN12]Federal statutory claims, including discrimination claims, are arbitrable under the Federal Arbitration Act.

*Civil Procedure > Alternative Dispute Resolution > Validity of ADR Methods*
*Civil Rights Law > Civil Rights Acts > Civil Rights Act of 1964*
[HN13]Title VII claims are arbitrable.

**COUNSEL:** For JUAN A. GONZALEZ, plaintiff: Michael R. Bressler, New York, NY.

**JUDGES:** LORETTA A. PRESKA, U.S.D.J.

**OPINION BY:** LORETTA A. PRESKA

**OPINION**

*MEMORANDUM and ORDER*

LORETTA A. PRESKA, United States District Judge:

Plaintiff, Juan A. Gonzalez ("Gonzalez") brings this action against defendants Toscorp Inc. ("Toscorp") and Soreke Peters ("Peters") alleging employment discrimination. Defendants Toscorp and Peters move for (1) an order dismissing the complaint pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure ("FRCP"); (2) compelling arbitration under the Federal Arbitration Act (the "FAA"); and (3) for such other and further relief as this Court may deem just, proper, and equitable. For the reasons that follow, the motions to dismiss the complaint and to compel arbitration are granted. [1]

> 1 The following submissions have been considered in resolving this motion: Verified Complaint ("Compl."); Memorandum of Law in Support of the Motion by Defendants to Dismiss the Complaint ("Defs. Mem."); Affidavit of Jennifer Roth in Support of Defendants Motion to Dismiss ("Roth Aff."); Affidavit of Juan Gonzalez in Opposition to Defendants Motion to Dismiss ("Gonzalez Aff."); Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss the Complaint and Compel Arbitration ("Pltff. Mem."); Defendants' Reply Memorandum of Law

in Support of its Motion to Dismiss the Complaint ("Reply Mem.").

[*2] **I. BACKGROUND**

On January 20, 1997 Gonzalez, was hired to work as a sous chef at the Coco Pazzo restaurant in New York City. (Gonzalez Aff. P 2). The restaurant is owned and operated by Toscorp, Inc., a New York corporation. (Compl. P 3). Gonzalez reported to Peters, the Executive Chef and Supervisor, at Coco Pazzo. (Compl. P 4).

Beginning in May 1997, Toscorp adopted an Alternative Dispute Policy (the "Policy") by which all employees and Toscorp were bound to arbitrate, among other things, employment disputes. (Roth Aff. P 4). The Policy states that:

> the claims covered by this Policy include, but are not limited to, claims for (i) wages or other compensation due; (ii) breach of contract or covenant; (iii) torts; (iv) alleged discrimination including, but not limited to race, color, sex, religion, national origin, sexual violation, marital status or age; (v) denial of benefits, (vi) violation of any Federal, state or other governmental law, statute, regulation or ordinance; and (vii) any common law claims.

*Id.* at Ex. C.

A complete copy of the Policy was distributed to all employees along with a copy of the Toscorp Team Member Handbook (the "Handbook") [*3] on April 18, 1997. (Roth Aff. P 7). In addition, an acknowledgment of receipt, requiring the signature of each employee accompanied each document, neither of which Gonzalez signed. (Gonzalez Aff. P 3).

The "Acceptance" section of the Policy states:

> all Team members who continue employment after May 1, 1997 will be deemed to have accepted this Policy as the exclusive method to resolve claims not resolved through normal human resource channels and thereafter neither Toscorp nor the team member may litigate the claims against the other in court or in a judicial type proceedings before administrative agencies. Any individual hired after May 1, 1997 shall be deemed to have accepted this Policy as a term and condition of employment.

(Roth Aff. Ex. C).

On September 14, 1997, Gonzalez's employment was terminated. (Roth Aff. P 3). In response Gonzalez filed this action in which he asserts claims of discrimination based on his race (Hispanic) and national origin (Mexican) pursuant to Title VII of the Civil Rights Act of 1964, in addition to other New York common law claims. As noted above, Toscorp and Peters now seek to dismiss the complaint and to compel Gonzalez to arbitrate [*4] his claims.

## II. DISCUSSION

[HN1]The Federal Arbitration Act (the "Act") establishes a federal policy favoring arbitration. See _Shearson/American Express, Inc. v. McMahon_, 482 U.S. 220, 225-6, 107 S. Ct. 2332, 96 L. Ed. 2d 185 (1991).

The Act accomplishes this purpose by providing that arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.

[HN2]To determine whether to compel arbitration, a court must decide (1) whether the parties agreed to arbitrate; (2) the scope of the agreement; and (3) whether Congress intended Title VII claims to be arbitrated. [2] _Genesco, Inc. v. T. Kakiuchi & Co._, 815 F.2d 840, 844 (2d Cir. 1987); _DeGaetano v. Smith Barney, Inc._, 1996 U.S. Dist. LEXIS 1140, 95 Civ. 1613, 1996 WL 44226 at *3 (S.D.N.Y. Feb. 5, 1996).

> 2    Genesco also identifies a fourth issue, that is, whether to stay the balance of the case pending arbitration if the Court were to find that not all of the claims are arbitrable. I find that all of plaintiff's claims are arbitrable and therefore need not reach this fourth issue.

### [*5] A. Agreement to Arbitrate

[HN3]In determining whether parties have agreed to arbitrate, courts apply generally accepted principles of contract law. _Genesco_, 815 F.2d at 845. In this action, Gonzalez contends that the Policy does not apply to him because he did not sign the acknowledgment and, therefore, did not agree to arbitrate. (Pltff. Mem. at 6). Toscorp and Peters contend that the arbitration agreement between the parties became binding upon Gonzalez's voluntary and continuous employment after May 1, 1997. Gonzalez concedes that he received a copy of Toscorp's Team Member Handbook and the Alternative Dispute Policy but states he never signed the acknowledgments of receipt for either. (Gonzalez Aff. P 3).

[HN4]The FAA requires only that the arbitration agreement be set in writing; it does not require that the writing be signed by the parties. See 9 U.S.C. § 3. Parties may be bound to unsigned, written arbitration agreements as long as the "ordinary principles of contract and agency" are satisfied. _Thomson-CSF S.A. v. American Arbitration Association_, 64 F.3d 773, 776-77 (2d Cir. 1995); _Genesco_, 815 F.2d at 846 [*6] (party may be bound to an agreement to arbitrate even absent a signature) (citing _Medical Development Corp. v. Industrial Modeling Corp._, 479 F.2d 345, 348 (10th Cir. 1973)); _Fisser v. International Bank_, 282 F.2d 231, 233 (2d. Cir. 1960) (FAA does not impose obligation to arbitrate only to one who has personally signed the written arbitration provision); _Creative Securities Corp. v. Bear Stearns & Co._, 671 F. Supp. 961, 965 (S.D.N.Y. 1987), _aff'd_, 847 F.2d 834 (2d Cir. 1988) (FAA only requires written agreement to arbitrate, not signature of the party to be charged).

[HN5]A non-signatory to an arbitration agreement may be bound by the principle of assumption. _Thomson_, 64 F.3d 773 at 776-77. Assumption arises where a party's "subsequent conduct indicates that it is assuming the obligation to arbitrate." _Thomson_, 64 F.3d at 777 (citing cases). In the instant case, Gonzalez concedes receipt of the Policy and the Handbook and chose to continue his employment with Toscorp past the May 1, 1997 effective date. In doing so, he assumed the obligation to arbitrate future employment claims.

Unless Gonzalez can demonstrate [*7] special, mitigating circumstances, such as duress or coercion, he is bound by the terms of the arbitration Policy. _Gilmer [v. Interstate/Johnson Lane Corp.]_, 500 U.S. 20, 33, 111 S. Ct. 1647, 114 L. Ed. 2d 26 (1991). [HN6]Under New York law, the following elements of economic duress or coercion must be shown:

> (1) a threat, (2) which was unlawfully made, and (3) caused involuntary acceptance of contract terms, (4) because the circumstances permitted no other alternative.

_DeGaetano_, 1996 U.S. Dist. LEXIS 1140, *14, 1996 WL 44226, at *5 (citing _Kamerman v. Steinberg_, 891 F.2d 424, 431 (2d Cir. 1989)).

Gonzalez alleges no threat or wrongful act, he simply argues that Toscorp's Policy amounts to "compulsory arbitration" in that Gonzalez is compelled, as a condition of employment, to waive his right to litigate future employment disputes in a judicial forum. (Pltff. Mem. at 1). However, [HN7]a mandatory arbitration clause is a reasonable means by which an employer can seek to protect

itself from protracted litigation. See *Sablosky v. Gordon Inc.*, 73 N.Y.2d 133, 138, 538 N.Y.S.2d 513, 517, 535 N.E.2d 643, 647 (1989) (arbitration clause in an employment agreement was not unconscionable simply because the employer drafted it)). [*8] In addition, [HN8]the "mere inequality of bargaining power" that exists between an employee and an employer is an insufficient reason to find an arbitration agreement unenforceable. See *Gilmer*, 500 U.S. at 33, 111 S. Ct. at 1655-56. Absent wrongdoing by Toscorp and Peters to coerce Gonzalez to accept the arbitration Policy, I find the parties have a valid agreement to arbitrate.

*B. Scope of the Agreement*

[HN9]A court must broadly construe an arbitration agreement and resolve any doubts concerning its scope in favor of arbitration. *Hoffman v. Kamhi*, 927 F. Supp. 640, 644 (S.D.N.Y. 1996) (citing *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-5, 103 S. Ct. 927, 941-2, 74 L. Ed. 2d 765(1983). The Court of Appeals has instructed that "[HN10]arbitration should be ordered unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *McMahan Securities Co. v. Forum Capital Markets L.P.*, 35 F.3d 82, 88 (2d Cir. 1984) (quoting *S.A. Mineracao Da Trinidade-Samitri v. Utah Int'l Inc.*, 745 F.2d 190, 194 (2d Cir. 1984)). [*9]

The scope of Toscorp's ADR policy is very specific. As noted above, the Policy states that claims covered include breach of contract and discrimination, including but not limited to race and national origin, as well as "violation of any federal, state or other governmental law, statute, regulation or ordinance," and "any common law claims." (Roth Aff. Ex. C). While the policy does not specifically refer to Title VII of the Civil Rights Act of 1964, the policy does state that it covers alleged discrimination including "race" and "national origin", and "any common law claims." In construing Toscorp's policy, I find that the language of the arbitration policy is clear and unambiguous and specifically makes reference to Gonzalez's contract, discrimination and New York common law claims. Accordingly, I find Gonzalez's present claims are within the scope of the Policy to arbitrate.

*C. Congress' Intent to Arbitrate Title VII Claims*

The crux of plaintiff's argument pertains to the third prong of the Genesco test, that is, whether it was Congress' intent to arbitrate Title VII claims. In his opposition papers, Plaintiff argues that under the Civil Rights

Act of 1991 Toscorp may not [*10] compel plaintiff to waive his Title VII right to a judicial forum. (Pltff. Mem. at 2). In support of his position, Gonzalez relies principally on the decision by the Ninth Circuit in *Duffield v. Robertson Stephens & Co.*, 144 F.3d 1182 (9th Cir. 1998) (holding that Civil Rights Act of 1991 precludes compulsory arbitration of civil rights claims).

As a preliminary matter, [HN11]a decision of the Ninth Circuit is not binding on this court. Moreover, the Supreme Court has held that [HN12]federal statutory claims, including discrimination claims, are arbitrable under the FAA. *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 111 S. Ct. 1647, 114 L. Ed. 2d 26 (1991)(age discrimination claims are arbitrable). Courts in the Second Circuit have also held that [HN13]Title VII claims are arbitrable. E.g., *DeGaetano v. Smith Barney Inc.*, 1996 U.S. Dist. LEXIS 1140, No. 95 Civ. 1613, 1996 WL 44226 *5-6 (S.D.N.Y Feb 5, 1996) (sexual harassment claim under Title VII is arbitrable); *Maye v. Smith Barney*, 897 F. Supp. 100, 109 (S.D.N.Y. 1995) (sexual and racial harassment Title VII claims are arbitrable); *Gateson v. ASLK-Bank, N.V./CGER-Banque S.A.*, 1995 U.S. Dist. LEXIS 9004, No. 94 Civ. 5849, 1995 WL 38720 [*11] (S.D.N.Y. June 29, 1995) (Title VII claims based on sex, age, and national origin are arbitrable); *Hall v. MetLife Resources*, 1995 U.S. Dist. LEXIS 5812, No. 94 Civ. 0358, 1995 WL 258061, at *3 (S.D.N.Y. May 2, 1995) (Title VII claims based on gender or race are arbitrable). This District has adopted the *Gilmer* ruling and has applied it to Title VII claims of the Civil Rights Act of 1964. *Desiderio v. NASD*, 2 F. Supp. 2d 516, 520 (S.D.N.Y. 1998). It is clear from the case law that Title VII claims are arbitrable, and Gonzalez has failed to provide any basis to justify this Court's departure from well-settled precedent.

*Conclusion*

Defendant's motion to compel arbitration is granted. The complaint is dismissed without prejudice to reinstatement in the event post-arbitral proceedings becomes necessary.

The Clerk of Court shall mark this action closed and all pending motions denied as moot.

SO ORDERED.

Dated: August 5, 1999

New York, New York

LORETTA A. PRESKA, U.S.D.J.

# EXHIBIT D

LEXSEE

JENNIFER BLOOM, Plaintiff, v. JERSEY CITY MUNICIPAL UTILITIES AU-
THORITY, THE ESTATES OF GERARD LETIZIA, HOWARD JACKSON,
GEORGE KELLY, EILEEN GAUGHAN, KATHLEEN HARTYE, KATHLEEN
CURRAN, WILLIAM MACCHI, THOMAS KANE, BARBARA GORDON, EL-
NARDO WEBSTER, JR., THE CITY OF JERSEY CITY, JERRAMIAH HEALY,
CARL CZAPLICKI, BRIAN O'REILLY, Defendants.

MASTER FILE: 06-CV-3526 (WJM)

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY

2008 U.S. Dist. LEXIS 10046

February 8, 2008, Filed

**SUBSEQUENT HISTORY:** Reconsideration granted
by Bloom v. Jersey City Mun. Utils. Auth., 2008 U.S.
Dist. LEXIS 40974 (D.N.J., May 22, 2008)

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff former employee
sued defendants, a city, its municipal utilities authority,
and officials of the authority and the city under 42
U.S.C.S. § 1983 for alleged First Amendment retaliation
and under New Jersey state law. Several defendants, in-
cluding the authority and its officials, moved for sum-
mary judgment.

**OVERVIEW:** The employee, who had worked for the
authority, claimed to have been retaliated against for
having reported unethical and illegal acts at the authority.
The employee had signed an acknowledgement of and
agreement to the authority's arbitration policy in 2004,
but she had not signed a modified version issued in 2005.
The court found that the 2004 agreement was a valid
arbitration contract; although the 2005 modifications
were not binding, the 2004 agreement remained in place.
The employee's claim that the arbitration agreement was
a contract of adhesion did not preclude enforcement, as
the terms were not particularly oppressive. There was no
clear congressional indication that 42 U.S.C.S. § 1983
claims were not arbitrable. Although the authority and its
officials could compel the employee to arbitrate, there

was no showing that the authority acted as a principal or
agent of the city and its officials when entering into the
arbitration agreement; the city and the officials therefore
could not be bound to the agreement. A stay was re-
quired under 9 U.S.C.S. § 3 as to the claims that were
subject to arbitration but not as to the claims that were
not subject to arbitration.

**OUTCOME:** The litigation was stayed as to those
claims subject to arbitration.

**CORE TERMS:** arbitration, arbitration agreement, arbi-
trate, manual, dispute resolution, compel arbitration, ar-
bitration provision, compelled, acknowledgment, official
capacities, contract of adhesion, agreed to arbitrate,
statutory claims, subject to arbitration, arbitrability, mu-
nicipal, handbook, bind, federal statutes, unenforceable,
nonsignatory, arbitrable, oppressive, prong, legal claims,
binding, Federal Arbitration Act, agreement to arbitrate,
water supplies, employment contract

**LexisNexis(R) Headnotes**

*Civil Procedure > Alternative Dispute Resolution >
Arbitrations > Arbitrability*
*Contracts Law > Contract Conditions & Provisions >
Arbitration Clauses*

[HN1]Arbitrability is a matter of contract. To compel arbitration of a claim, a party seeking to arbitrate must demonstrate that the opposing party has contractually agreed to do so. Whether a party has so agreed is a question for a court to answer as a threshold matter.

*Civil Procedure > Federal & State Interrelationships > General Overview*
*Civil Procedure > Alternative Dispute Resolution > Arbitrations > Arbitrability*
*Civil Procedure > Alternative Dispute Resolution > Arbitrations > Federal Arbitration Act > Arbitration Agreements*
*Civil Procedure > Alternative Dispute Resolution > Arbitrations > Federal Arbitration Act > Coverage & Exceptions*
*Labor & Employment Law > Employment Relationships > Employment Contracts > Conditions & Terms > Arbitration Provisions > Enforcement*
[HN2]Although the arbitration of an employment contract is governed by the Federal Arbitration Act (FAA), that Act instructs courts to refer to principles of applicable state law when determining the existence and scope of an agreement to arbitrate. 9 U.S.C.S. § 2 of the FAA creates a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act.

*Contracts Law > Contract Conditions & Provisions > Arbitration Clauses*
[HN3]The Supreme Court of New Jersey uses a two-part test to determine if a party has contractually agreed to arbitrate a claim. First, the arbitration provision must reflect an unambiguous intention to arbitrate a claim. Second, the parties must have agreed to that provision.

*Contracts Law > Contract Conditions & Provisions > Arbitration Clauses*
[HN4]A valid arbitration contract must clearly state its purpose to ensure that litigants know they are waiving their right to sue.

*Contracts Law > Contract Modifications > General Overview*
[HN5]A modification of a contractual agreement requires new consideration and the clear assent of the both parties.

*Contracts Law > Contract Conditions & Provisions > Arbitration Clauses*

*Contracts Law > Types of Contracts > Adhesion Contracts*
*Labor & Employment Law > Employment Relationships > Employment Contracts > Conditions & Terms > Arbitration Provisions > Enforcement*
[HN6]A contract of adhesion is one that is presented on a take-it-or-leave-it basis, commonly in a standardized printed form, with little or no opportunity for negotiation over terms. Such contracts are not per se unenforceable, but courts will subject them to heightened scrutiny. In determining a contract of adhesion's enforceability, courts will examine the subject matter of the contract, the parties' relative bargaining positions, the degree of economic compulsion motivating the "adhering" party, and the public interest affected by the contract. Considering these factors, courts in New Jersey have upheld arbitration provisions in employment contracts--even though they were contracts of adhesion. Requiring arbitration of employment disputes is not particularly oppressive, the provision puts employees on notice of their waiver of litigation rights, and public policy favors arbitration.

*Civil Rights Law > Section 1983 Actions > Scope*
[HN7]42 U.S.C.S. § 1983 creates a cause of action for violations of all federal statutes.

*Civil Procedure > Alternative Dispute Resolution > Arbitrations > Arbitrability*
*Evidence > Procedural Considerations > Burdens of Proof > Allocation*
*Governments > Legislation > Statutory Remedies & Rights*
[HN8]Although not all statutory claims may be appropriate for arbitration, where parties have agreed to arbitrate a specific statutory claim, the party seeking to avoid arbitration bears the burden of showing that Congress intended to preclude a waiver of a judicial forum for that claim.

*Civil Procedure > Alternative Dispute Resolution > Arbitrations > Arbitrability*
*Civil Rights Law > Practice & Procedure > General Overview*
*Civil Rights Law > Section 1983 Actions > General Overview*
[HN9]The United States District Court for the District of New Jersey finds no clear congressional indication that parties may not be compelled to arbitrate 42 U.S.C.S. § 1983 claims. Neither the United States Supreme Court nor the United States Court of Appeals for the Third Circuit has found that Congress intended to preclude compulsory arbitration of such claims.

*Business & Corporate Law > Agency Relationships > Authority to Act > Contracts & Conveyances > Enforcement & Execution*
*Civil Procedure > Alternative Dispute Resolution > Arbitrations > Arbitrability*
*Contracts Law > Contract Conditions & Provisions > Arbitration Clauses*
*Contracts Law > Third Parties > General Overview*
[HN10]Arbitration is a matter of contract. Nonsignatories to an arbitration agreement may not normally compel arbitration. However, nonsignatories of an arbitration agreement may be bound if they are principals or agents of a signatory. The question is whether the nonsignatory would be bound to the arbitration agreement by traditional principles of contract and agency law.

*Governments > Local Governments > Administrative Boards*
[HN11]Municipal departments are not agencies of the municipality itself.

*Civil Procedure > Judicial Officers > Judges > Discretion*
*Civil Procedure > Alternative Dispute Resolution > Arbitrations > Federal Arbitration Act > Stays Pending Arbitration*
[HN12]The plain language of the Federal Arbitration Act affords district court no discretion to dismiss a case where one of the parties applies for a stay pending arbitration. The court cannot stay the litigation of those claims not subject to arbitration.

**COUNSEL:** [*1] For **JENNIFER BLOOM, Plaintiff: D. GAYLE LOFTIS,** *LEAD ATTORNEY,* HACKENSACK, NJ.

For **JERSEY CITY MUNICIPAL UTILITIES AUTHORITY,** *in both individual and Jersey City Municipal Authority official capacities,* **ESTATES OF GERARD LETIZIA, THE, HOWARD JACKSON, EILEEN GAUGHAN, KATHLEEN HARTYE, KATHLEEN CURRAN, WILLIAM MACCHI, THOMAS KANE, BARNARA GORDON, CITY OF JERSEY CITY, THE,** *and in both individual and Jersey City official capacities,* **Defendants: LEON B. PIECHTA,** *LEAD ATTORNEY,* O'DONNELL, PIECHTA, WEST ORANGE, NJ.

For **George Kelly, Defendant: LEON B. PIECHTA,** *LEAD ATTORNEY,* O'DONNELL, PIECHTA, WEST ORANGE, NJ; **PETER J. KING,** *LEAD ATTORNEY,* LAKE HIAWATHA, NJ.

For **BRIAN O'REILLY, Defendant, Cross Defendant: CHARLES P. DAGLIAN,** JERSEY CITY, NJ.

For **ELNARDO WEBSTER, JR., Cross Claimant: TERRENCE J. BOLAN,** BOLAN JAHNSEN REARDON, ESQS., SHREWSBURY, NJ.

For **KATHLEEN CURRAN, WILLIAM MACCHI, THOMAS KANE, BARNARA GORDON, JERSEY CITY MUNICIPAL UTILITIES AUTHORITY,** *in both individual and Jersey City Municipal Authority official capacities,* **ESTATES OF GERARD LETIZIA, THE, HOWARD JACKSON, George Kelly, EILEEN GAUGHAN, KATHLEEN HARTYE, Cross Defendants: LEON B. PIECHTA,** *LEAD ATTORNEY,* O'DONNELL, PIECHTA, WEST [*2] ORANGE, NJ.

For **CITY OF JERSEY CITY, THE,** *and in both individual and Jersey City official capacities,* **Cross Defendant, Cross Claimant: LEON B. PIECHTA,** *LEAD ATTORNEY,* O'DONNELL, PIECHTA, WEST ORANGE, NJ; **MARTIN C. DOLAN,** *LEAD ATTORNEY,* OFFICE OF JERSEY CITY CORPORATION COUNSEL, JERSEY CITY, NJ.

For **JERRAMIAH HEALY, CARL CZAPLICKI, Cross Defendants, Cross Claimants: MARTIN C. DOLAN,** *LEAD ATTORNEY,* OFFICE OF JERSEY CITY CORPORATION COUNSEL, JERSEY CITY, NJ.

**JUDGES:** William J. Martini, U.S.D.J.

**OPINION BY:** William J. Martini

**OPINION**

**WILLIAM J. MARTINI, U.S.D.J.:**

Several Defendants in this case have moved on summary judgment to dismiss Plaintiff's claims. These Defendants argue that Plaintiff's claims are arbitrable under an agreement that Plaintiff entered with Defendant Jersey City Municipal Utilities Authority ("JCMUA"). This Court finds that Plaintiff did enter into an agreement to arbitrate these claims against JCMUA and its officials both in their individual and official capacities but that the obligation to arbitrate does not extend to her claims against the other Defendants in this case. Accordingly, the Court stays this case until the conclusion of Plaintiff's arbitration against JCMUA.

**I. FACTS AND PROCEEDINGS**

This [*3] case centers around the scope and enforceability of an arbitration agreement between Plaintiff and Defendant Jersey City Municipal Utilities Authority ("JCMUA"). The issue is which of Plaintiff's claims--if any--she must submit to arbitration under this agreement.

## A. The Arbitration Agreement

Plaintiff was the Director of Administration and Financial Management for JCMUA, a municipal instrumentality that manages the sewage and water systems in Jersey City. (Compl. PP 2, 38.) JCMUA policies established an alternative dispute resolution procedure, which included arbitration. (Mot. for Summ. J. Ex. B.)

JCMUA informed its employees of this procedure by issuing them a Policies and Procedures Manual, which contained an array of JCMUA policies and procedures. (Ex. B.) The manual provided, inter alia, that "JCMUA has established an Alternative Dispute Resolution Procedure Program ("ADR" or "Program") for all matters involving employee disputes and discipline." (Ex. B.) The manual provided that the final step of the program would consist of arbitration: "If an employee is not satisfied with the results of the Internal Meeting and the issue falls within the scope of the Arbitration Policy, the [*4] employee may request arbitration, which is the last step of the Alternative Dispute Resolution Procedure Program." (Ex. B.)

With the exception of the alternative dispute resolution program, JCMUA intended that the Policies and Procedures Manual would not constitute binding contract. They merely required each employee to sign an Employee's Acknowledgment of Receipt of Manual ("Acknowledgment"). (Mot. for Summ. J. Ex. D.) This document stated, in relevant part, as follows:

> I understand that the policies and procedures described in this Manual are neither a promise of employment nor a promise of conditions of employment. . . . I further understand that the contents of the Manual are for information only and are not intended to create or constitute a contract. I understand the Manual is only a brief summary of benefits currently offered by the JCMUA and an overview of some of its work rules and policies. (Ex. D.)

With respect to the alternative dispute resolution program, however, JCMUA sought to create a binding agreement with its employees. JCMUA required each employee to sign an Employee's Acknowledgment of Receipt and Agreement to the JCMUA's Alternative Dispute Resolution Procedures [*5] ("Arbitration Agreement"). (Mot. for Summ. J. Exs. D, E.) This document stated, in relevant part and in contrast to the document mentioned above, as follows:

> I understand that by accepting employment and being able to receive increases in compensation and benefits, I am agreeing to the important term and condition of my employment that I will use JCMUA's internal and external employment dispute resolution process to resolve legal claims against JCMUA --therefore, rather than go to court or to a government agency for a hearing to decide my legal claim, I will submit my employment related legal claims except workers' compensation and unemployment compensation to final and binding neutral third party arbitration. I understand further that this term of my employment replaces and supersedes any prior agreement concerning this term and cannot be changed in any way except in writing signed by me and the Executive Director of the JCMUA . . . . (Ex. E.)

JCMUA issued these documents to Plaintiff two separate times during the relevant period of her employment. JCMUA issued a set of these documents to Plaintiff initially in 2004. (Exs. D, E.) At that time, Plaintiff signed both the Acknowledgment [*6] and the Arbitration Agreement. (Exs. D, E.) JCMUA then in 2005 issued another set of these documents to Plaintiff with only minor alterations that are not relevant here. (Mot. for Summ. J. Ex. C.) Plaintiff never signed this second set of documents. (Opp'n to Mot. for Summ. J. 1.)

## B. Plaintiff's Claims

Plaintiff alleges that in 2004 she began to discover that JCMUA was engaging in unethical and illegal acts concerning, inter alia, whether JCMUA was properly withholding its employees' wages and benefits. (Compl. P 47.) Plaintiff alleges that when she reported her discoveries to JCMUA officials, they declined to investigate. (Compl. P47.) Furthermore, Plaintiff alleges that JCMUA retaliated against her with both personal and professional attacks, which culminated in her termination. (Compl. PP 46-84.)

In response Plaintiff sued an array of parties: (1) JCMUA, (2) several JCMUA officials both in their individual and official capacities, (3) Jersey City, (4) Mayor of Jersey City Jerremiah Healy, and (5) several Jersey City officials both in their individual and official capaci-

ties. (Compl. PP 2-34.) Plaintiff asserts many claims, including claims under 42 U.S.C. § 1983 for retaliation in [*7] violation of the First Amendment, under the New Jersey Law Against Discrimination, and under the New Jersey Civil Rights Statutes.

## C. The Instant Motions

Now several Defendants file this motion for summary judgment. JCMUA and its officials and employees whom Plaintiff has sued move to dismiss the entire suit. (Mot. for Summ. J. 6.) They argue that by signing the Arbitration Agreement, Plaintiff has agreed to arbitrate all of her claims. (Mot. for Summ. J. 6, 9-10.) They further argue that because all of her claims are subject to arbitration, this Court should dismiss the entire case. [1] (Mot. for Summ. J. 10.)

> 1 Several other Defendants have submitted similar motions or requests, all of which concern the arbitrability of Plaintiff's claims. For example, Jersey City Business Administrator Brian O'Reilly has submitted a brief arguing that Plaintiff must arbitrate her claims against JCMUA but that as a Jersey City employee, O'Reilly cannot be compelled to participate in the arbitration. Given that JCMUA's motion requires this Court to address the arbitrability of all Plaintiff's claims, this Opinion will not further discuss the other motions.

Plaintiff opposes this motion and puts forth three [*8] arguments that she has not submitted to arbitration. First, Plaintiff argues that she cannot be compelled to arbitrate her claims because she never signed the 2005 Arbitration Agreement. (Opp'n to Mot. for Summ. J. 1.) Second, Plaintiff argues that the arbitration provision is void as a contract of adhesion. (Opp'n to Mot. for Summ. J. 7.) Third, Plaintiff argues that parties cannot be compelled to arbitrate § 1983 claims. (Opp'n to Mot. for Summ. J. 7.)

In addition to these arguments, this Court must address which parties can compel Plaintiff to arbitrate.

## II. DISCUSSION

[HN1]Arbitrability is a matter of contract. Goodwin v. Elkins & Co., 730 F.2d 99, 108 (3d Cir. 1984). To compel arbitration of a claim, a party seeking to arbitrate must demonstrate that the opposing party has contractually agreed to do so. Whether a party has so agreed is a question for this Court to answer as a threshold matter. First Options of Chi., Inc. v. Kaplan, 514 U.S. 938, 943, 115 S. Ct. 1920, 131 L. Ed. 2d 985 (1995). To make that determination, this Court will look to New Jersey's law of arbitration and contracts. [2]

2 [HN2]Although the arbitration of an employment contract is governed by the Federal Arbitration Act, EEOC v. Waffle House, Inc., 534 U.S. 279, 289, 122 S. Ct. 754, 151 L. Ed. 2d 755 (2002), [*9] that Act instructs courts to refer to principles of applicable state law when determining the existence and scope of an agreement to arbitrate. Volt Info. Sciences, Inc. v. Bd. of Trustees of the Leland Stanford Junior Univ., 489 U.S. 468, 475, 109 S. Ct. 1248, 103 L. Ed. 2d 488 (1989); see Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25, 103 S. Ct. 927, 74 L. Ed. 2d 765 (1983) (holding that § 2 of the FAA "create[s] a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act.").

## A. Plaintiff's Obligations to Arbitrate Under the 2004 and 2005 Manuals

Plaintiff argues that she cannot be compelled to arbitrate her claims because she never signed the 2005 Agreement. This Court disagrees.

[HN3]The Supreme Court of New Jersey uses a two-part test to determine if a party has contractually agreed to arbitrate a claim. Leodori v. CIGNA Corp., 175 N.J. 293, 814 A.2d 1098, 1104, 1105 (N.J. 2003). First, the arbitration provision must reflect an unambiguous intention to arbitrate a claim. Id. at 1104. Second, the parties must have agreed to that provision. Id. at 1105.

The Agreement meets the first prong of the test. [HN4]A valid arbitration contract must clearly state its purpose to ensure that litigants [*10] know they are waiving their right to sue. Garfinkel v. Morristown Obstetrics & Gynecology Assocs., P.A., 773 A.2d 665, 673, 168 N.J. 124 (N.J. 2001). The Manual clearly states that arbitration is a component of JCMUA's dispute resolution procedures. (Mot. for Summ. J. Ex. B.) Also, the Agreement clearly states that Plaintiff's accession to the Manual's arbitration provisions is a contractual condition of her employment. (Mot. for Summ. J. Ex. E.) The Agreement accordingly satisfies the requirements for a valid arbitration contract.

Indeed, the New Jersey Supreme Court has found a valid arbitration agreement in a situation quite similar to this case, in which the employer promulgated an arbitration policy in an employee manual and sought to bind its employees only to the arbitration provision. In Leodori, the employer initially provided its employees with a handbook that detailed a number of the employer's policies and procedures, including an arbitration procedure. Leodori, 814 A.2d at 1101 (the "You and CIGNA" handbook). With this handbook, the employer distributed an

acknowledgment form--stating only that the employee had received a handbook and had reviewed the policies therein--which the plaintiff [*11] employee signed. Id. at 1101. The employer also distributed an agreement form stating that arbitration constituted a term of employment. Id. at 1101-02. The plaintiff employee did not sign this second form. Id. Subsequently, the plaintiff employee filed claims in state court against the employer, alleging that the employer had illegally retaliated against him for reporting the employer's wrongdoing. Id. at 1103. The trial court dismissed the claims as arbitrable, but the Appellate Division reversed, and the Supreme Court affirmed. Id. The Supreme Court held that the plaintiff was not bound by the arbitration provision because she signed only the acknowledgment form--not the arbitration-agreement form. Id. at 1106. The court found the plaintiff's refusal to sign the agreement dispositive: "Without plaintiff's signature on the Agreement . . . we cannot enforce the arbitration provision." [3] Id. Thus the JCMUA Arbitration Agreement--if signed--would be sufficient to bind Plaintiff to arbitrate her claims.

> 3    The court also noted that "[s]ignificantly, plaintiff did not sign the Agreement." Id. at 1102.

Whether the Arbitration Agreement meets the second prong of the Leodori test depends upon [*12] whether the Plaintiff agreed to arbitrate her claims given that she signed the 2004 Arbitration Agreement but not the 2005 Arbitration Agreement. This Court finds that she did. By signing the 2004 Arbitration Agreement, Plaintiff undoubtedly agreed to arbitrate her claims against JCMUA, as explained in the analysis of the first prong. [HN5]A modification of this contractual agreement would have required new consideration and the clear assent of the both parties. County of Morris v. Fauver, 153 N.J. 80, 707 A.2d 958, 965 (N.J. 1998). Here, there is no evidence of such new consideration or clear assent. The fact that JCMUA issued the 2005 Arbitration Agreement--which Leodori makes clear cannot bind Plaintiff without her signature--did not alter Plaintiff's obligation to arbitrate her claims under the 2004 Arbitration Agreement. The 2004 Arbitration Agreement thus remained in place and obligated Plaintiff to arbitrate her claims against JCMUA.

## B. Whether the Arbitration Agreement Is an Unenforceable Contract of Adhesion

Plaintiff argues that the Arbitration Agreement is unenforceable as a contract of adhesion. She notes that the Arbitration Agreement requires arbitration to be initiated by the employee within [*13] a thirty-day period, and she argues that this is a particularly oppressive term. (Opp'n to Mot. for Summ. J. 7.) This Court disagrees and finds that the Arbitration Agreement is enforceable

[HN6]A contract of adhesion is one that is presented on a take-it-or-leave-it basis, commonly in a standardized printed form, with little or no opportunity for negotiation over terms. Martindale v. Sandvik, Inc., 173 N.J. 76, 800 A.2d 872, 880 (N.J. 2002). Such contracts are not per se unenforceable, but courts will subject them to heightened scrutiny. Muhammad v. County Bank of Rehoboth Beach, Del., 189 N.J. 1, 912 A.2d 88, 96-97 (N.J. 2006). In determining a contract of adhesion's enforceability, courts will examine the subject matter of the contract, the parties' relative bargaining positions, the degree of economic compulsion motivating the "adhering" party, and the public interest affected by the contract. Rudbart v. N. Jersey Dist. Water Supply Comm'n, 127 N.J. 344, 605 A.2d 681, 687 (N.J. 1992).

Considering these factors, courts in New Jersey have upheld arbitration provisions in employment contracts--even though they were contracts of adhesion. See Martindale, 800 A.2d at 879-81. These courts have noted that requiring arbitration of [*14] employment disputes is not particularly oppressive, the provision puts employees on notice of their waiver of litigation rights, and that public policy favors arbitration. Martindale, 800 A.2d at 879-81.

The Arbitration Agreement here does not appear different in nature from that considered by the court in Martindale. Also, the thirty-day requirement that Plaintiff focuses on does not seem particularly oppressive. Accordingly, this Court holds that the Arbitration Agreement is enforceable.

## C. Arbitration of § 1983 Claims

Finally, Plaintiff argues that parties may never be compelled to arbitrate § 1983 claims. [4] (Opp'n to Mot. for Summ. J. 7.) This Court disagrees.

> 4    Alternatively, Plaintiff argues that the Arbitration Agreement does not provide for the arbitration of § 1983 claims. (Opp'n to Mot. for Summ. J. 7.) This is incorrect. While the Arbitration Agreement does not specifically state that § 1983 claims are arbitrable, it does state that claims under several other federal statutes are available (such as the Civil Rights Act of 1964) and also subjects to arbitration claims under "any other federal . . . statute . . . regarding employment . . . ." (Mot. for Summ. J. Ex. E.) Given that [*15] § 1983 is merely a legal vehicle for some of these claims, see Albright v. Oliver, 510 U.S. 266, 271, 114 S. Ct. 807, 127 L. Ed. 2d 114 (1994), it would be contradictory to hold that the Arbitration Agreement provides for arbitration of federal employment claims but not § 1983 claims. See Maine v. Thiboutot, 448 U.S. 1, 4, 100 S. Ct.

2502, 65 L. Ed. 2d 555 (1980) (holding that [HN7]§ 1983 creates a cause of action for violations of all federal statutes).

Courts have cast some doubt on the compulsory arbitration of § 1983 claims, but they have not widely held that parties may not be compelled to arbitrate such claims. In McDonald v. City of W. Branch, Mich., 466 U.S. 284, 287-92, 104 S. Ct. 1799, 80 L. Ed. 2d 302 (1984), the Court held that federal courts may not accord preclusive effect to an unappealed arbitration award in a case brought under § 1983. The Court reasoned that "an arbitration proceeding cannot provide an adequate substitute for a judicial trial." Id. at 292. However, the Court did not hold that § 1983 claims could not be arbitrated and noted that courts in the future would have to decide how much weight to accord such arbitrations. Id. at 292 n.13 ("[A]n arbitral decision may be admitted as evidence in a § 1983 action.").

The Court then in Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 111 S. Ct. 1647, 114 L. Ed. 2d 26 (1991), [*16] clarified further its position with respect to arbitration of statutory claims. In Gilmer, the Court disclaimed that McDonald precluded arbitration of any statutory claims, clarifying that McDonald rather dealt with the question of whether arbitration of contract-based claims precluded subsequent judicial resolution of statutory claims. Id. at 33-35. The Court further held that [HN8]although not all statutory claims may be appropriate for arbitration, where parties have agreed to arbitrate a specific statutory claim, the party seeking to avoid arbitration bears the burden of showing that Congress intended to preclude a waiver of a judicial forum for that claim. Id. at 26.

[HN9]This Court finds no clear congressional indication that parties may not be compelled to arbitrate § 1983 claims. Neither the Supreme Court nor the Third Circuit have found that Congress intended to preclude compulsory arbitration of such claims. Nor does Plaintiff argue this. Plaintiff's sole support for her argument is a 2003 unpublished case: Tripp v. Renaissance Advantage Charter School, No. Civ. A. 02-9366, 2003 U.S. Dist. LEXIS 19834, 2003 WL 22519433 (E.D. Pa. October 8, 2003). This Court finds such an unpublished case insufficient to satisfy [*17] Plaintiff's burden to show that Congress intended to preclude § 1983 arbitration, particularly in light of dicta in McDonald that courts may review such arbitration. Accordingly, this Court holds that JCMUA may compel arbitration of Plaintiff's § 1983 claims.

**D. Whether Defendants Other Than JCMUA May Compel Arbitration**

Plaintiff does not directly argue that only JCMUA may compel arbitration. However, Defendant O'Reilly disclaims an obligation to arbitrate on the ground that he was not a signatory to the Arbitration Agreement. Accordingly, this Court finds it prudent to determine which Defendants may compel arbitration.

Once again, the starting point of the analysis is that [HN10]arbitration is a matter of contract. Nonsignatories to an arbitration agreement may not normally compel arbitration. See Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 7 F.3d 1110, 1121 (3d Cir. 1993); Jansen v. Salomon Smith Barney, Inc., 342 N.J. Super. 254, 776 A.2d 816, 819 (N.J. Super. Ct. App. Div. 2001). However, nonsignatories of an arbitration agreement may be bound if they are principals or agents of a signatory. Pritzker, 7 F.3d at 1121; Jansen, 776 A.2d at 820. The question is whether the nonsignatory would be bound [*18] to the arbitration agreement by traditional principles of contract and agency law. Bel-Ray Co. v. Chemrite (Pty) Ltd., 181 F.3d 435, 444 (3d Cir. 1999).

With respect to Jersey City, the officials thereof, and Mayor Healy, Defendants have failed to set forth a basis for holding that JCMUA was acting as their principal or agent when it entered into the Arbitration Agreement. Courts have often held that [HN11]municipal departments are not agencies of the municipality itself. See Rollins v. Ellwood, 141 Ill. 2d 244, 565 N.E.2d 1302, 1310, 152 Ill. Dec. 384 (Ill. 1990) ("[E]ven under Illinois agency law no agency relationship between Baltimore and the police department has been proved . . . ."); Grosso v. City of Paterson, 55 N.J. Super. 164, 150 A.2d 94, 98-99 (N.J. Super. Law Div. 1959) ("Neither the board of health, its members nor its employees are agents of the municipality . . . ."). But see N. Jersey Dist. Water Supply Comm'n v. State Water Policy Comm'n, 129 N.J.L. 326, 29 A.2d 617, 617 (N.J. 1943) ("Passaic Valley Water Supply Commission is a public body organized by an act of the legislature to represent and act as the agent of the Cities of Paterson, Passaic and Clifton for the distribution of water and water supplies."). This Court has no basis upon which [*19] to bind Jersey City, its officials, or Mayor Healy to the arbitration agreement signed by JCMUA. Thus, the Court holds that only JCMUA and its officials, in both their individual and official capacities, may compel Plaintiff to arbitrate. [5]

> 5   Plaintiff's counsel concedes that if JCMUA may compel arbitration, then so too may its officials in both their individual and official capacities.

**III. CONCLUSION**

In light of the foregoing, this Court holds that only JCMUA and its officials in both their individual and of-

# EXHIBIT E

LEXSEE



Cited
As of: Aug 16, 2008

**KIMYATTA MOSS and TOYLIN HENRY, Plaintiffs, -- against -- RENT-A-CENTER, INC. and RICHARD TORA, Defendants.**

**06 CV 3312 (SLT)(KAM)**

**UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF NEW YORK**

**2007 U.S. Dist. LEXIS 60011**

**August 15, 2007, Decided**
**August 15, 2007, Filed**

**CORE TERMS:** arbitration agreement, arbitration, unconscionability, arbitrate, filing fees, unconscionable, prohibitive, arbitrable, sexual harassment, unreasonably, discovery, sexual, tort claims, compel arbitration, material fact, unenforceable, supervisor, deposition, invalidate, assault and battery, summary judgment, nonmoving party, meaningful choice, high pressure, arbitrability, mutually, genuine, minutes, tactics, sex

**COUNSEL:** [*1] For Kimyatta Moss, Toylin Henry, Plaintiffs: Ambrose W. Wotorson, Jr., LEAD ATTORNEY, Law Offices of Ambrose Wotorson, Brooklyn, NY.

For Rent-A-Center Inc., Richard Tora, Individually, and as an aider and abettor, Defendants: David S. Warner, LEAD ATTORNEY, Sara Danielle Sheinkin, Litter Mendelson, P.C., New York, NY.

**JUDGES:** SANDRA L. TOWNES, United States District Judge.

**OPINION BY:** SANDRA L. TOWNES

**OPINION**

**MEMORANDUM and ORDER**

**TOWNES, United States District Judge** [1]:

1  The Court wishes to acknowledge the capable assistance of a student intern, Renee Morisa Wil-

liams of Fordham Law School, in the preparation of this Memorandum and Order.

Plaintiffs, Kimyatta Moss and Toylin Henry ("Plaintiffs"), bring this diversity action against their former employer, Rent-A-Center and Rent-A-Center employee, Richard Tora ("Defendants"), asserting claims of sexual harassment and retaliation in violation of New York State Human Rights Law and New York City Human Rights Law. In addition, Moss asserts tort claims of assault and battery against Tora, her supervisor at Rent-A-Center. Defendants move to dismiss the complaint pursuant to Federal Rules of Civil Procedure ("Fed. R. Civ. P.") 12(b)(1) and/or 12(b)(6), or in the alternative, [*2] to stay these proceedings and compel arbitration, pursuant to the Federal Arbitration Act ("FAA"). For the reasons set forth below, Defendants' motion to compel arbitration and stay all proceedings pending arbitration is granted.

**BACKGROUND**

Plaintiffs were employed by Rent-A-Center from 2005 to 2006. (Compl. PP 8-11.) A few days after they commenced employment, Plaintiffs signed a "Mutual Agreement to Arbitrate Claims" ("arbitration agreement"). ((Kimyatta Moss Affidavit ("Moss Aff.") at PP 2, 8); (Toylin Henry Affidavit ("Henry Aff.") at PP 4, 7.)) Moss signed two arbitration agreements, one on April 7, 2005 and another on September 22, 2005. (Richard Tora Affidavit ("Tora Aff.") at P 3.) Henry signed one arbitration agreement on December 21, 2005. (Tora Aff. at P 6.)

In pertinent part, the arbitration agreement reads:

The Company and I mutually consent to the resolution by arbitration of all claims or controversies ("claims"), past, present, or future, whether or not arising out of my application for employment, assignment/employment, or the termination of my assignment/employment that the Company may have against me or that I may have against any of the following: (1) the Company, (2) [*3] its officers, directors, employees, or agents in their capacity as such or otherwise . . . .

The only claims that are arbitrable are those that, in the absence of this Agreement, would have been justiciable under applicable state or federal law. The claims covered by this Agreement include, but are not limited to . . . tort claims; claims for discrimination (including, but not limited to race, sex, sexual harassment, sexual orientation, religion, national origin, age, workers' compensation, marital status, medical condition, handicap or disability) . . . and claims for violation of any federal, state, or governmental law, statute, regulation, or ordinance . . . .

Except as otherwise provided in this agreement, both the company and I agree that neither of us shall initiate or prosecute any lawsuit or administrative action (other than an administrative charge of discrimination to the Equal Employment Opportunity Commission, or a similar fair employment practices agency . . .) in any way related to any claim covered by this Agreement.

(Ex. 1, p. 1; *see also* Ex. 3, p. 1.)

Each Plaintiff also signed and printed her name immediately beneath the prominently displayed language of the agreement's [*4] acknowledgment provision, which states:

I ACKNOWLEDGE THAT I HAVE CAREFULLY READ THIS AGREEMENT, THAT I UNDERSTAND ITS TERMS; THAT ALL UNDERSTANDINGS AND AGREEMENTS BETWEEN THE COMPANY AND ME RELATING TO THE SUBJECTS COVERED IN THE AGREEMENT ARE CONTAINED IN IT; AND THAT I HAVE ENTERED INTO THE AGREEMENT AND NOT IN RELIANCE ON ANY PROMISES OR PRESENTATIONS BY THE COMPANY OTHER THAN THOSE CONTAINED IN THIS AGREEMENT ITSELF. I UNDERSTAND THAT BY SIGNING THIS AGREEMENT I AM GIVING UP MY RIGHT TO A JURY TRIAL.

I FURTHER ACKNOWLEDGE THAT I HAVE BEEN GIVEN THE OPPORTUNITY TO DISCUSS THIS AGREEMENT WITH MY PRIVATE LEGAL COUNSEL AND HAVE AVAILED MYSELF OF THAT OPPORTUNITY TO THE EXTENT I WISH TO DO SO.

(Ex. 1, p. 4; *see also* Ex. 3, p. 5.)

Plaintiffs contend that they were not permitted to consult an attorney or take the arbitration agreement off the premises. (Moss Aff. at P 5; Henry Aff. at PP 5, 6.) They further contend that they were informed that they would lose their jobs if they did not immediately sign the arbitration agreement. (Moss Aff. at P 5; Henry Aff. at P 6.) Plaintiffs signed the arbitration agreement without reading or understanding it. (Moss Aff. at P 8; Henry Aff. at P 7.) In [*5] addition, Henry contends that she signed the arbitration agreement within five minutes of receiving it. (Henry Aff. at P 7.)

Tora signed Plaintiffs' arbitration agreements on the behalf of Rent-A-Center. He denies preventing Plaintiffs from reviewing their arbitration agreements, reviewing their arbitration agreements with an attorney, or from taking their arbitration agreements off the premises. (Tora Aff. PP 4-8.)

On January 6, 2006, Moss and Tora drove to Juniors Restaurant to discuss Moss' future employment at Rent-A-Center. (Compl. P 9e.) Moss asserts that Tora informed her that she could keep her job only if he could "taste" her. (Compl. P 9f.) He then offered to promote her within six months in exchange for sex. *(Id.)* He also forcibly slid his hands down her pants. (Compl. P 9g.) Moss declined Tora's offer and never returned to the job. (Compl. P 9f.)

In early January, 2006, one of Henry's male co-workers informed her that the managers thought she had engaged in a sexual relationship with him. (Compl. P 11a.) Under the pretext that he was typing an order, that

same co-worker would rub his body against Henry's. (Compl. P 11c.) According to Henry, he would lean his body over hers [*6] while touching her shoulders and back. (Compl. P 11d.) On January 20, 2006, Henry reported to a supervisor that the co-worker was sexually harassing her. (Compl. P 11e.) At the end of the day, that same supervisor told her not to return to work until an investigation of her sexual harassment claim had been completed. (Compl. P 11f.) He also asked Henry to contact him three days later, on January 23, 2006, to ascertain the status of the investigation. (Compl. P 11g.) When Henry contacted the supervisor on January 23, 2006, she was informed, without explanation, that her employment had been terminated. (Compl. P 11h.)

## DISCUSSION

### A. Standard of Review

When a motion to compel arbitration is brought under the FAA, "the court applies a standard similar to that applicable to a motion for summary judgment." _Barbieri v. K-Sea Transp. Corp.,_ No. 05-04950, 2006 U.S. Dist. LEXIS 91565, 2006 WL 3751215, at *3 (E.D.N.Y. Dec. 19, 2006) (quoting _Bensadoun v. Jobe-Riat,_ 316 F.3d 171, 175 (2d Cir. 2003)). _See also DeBono v. Wash. Mut. Bank,_ No. 05-10333, 2006 U.S. Dist. LEXIS 89283, 2006 WL 3538938, at *2 (S.D.N.Y. Dec. 8, 2006). Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories and admissions on file, together with [*7] the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." _Fed. R. Civ. P. 56(c)._ "A material fact is one that would 'affect the outcome of the suit under the governing law,' and a genuine issue of material fact occurs if the evidence is such that a 'reasonable jury could return a verdict for the nonmoving party.'" _Sea Carriers Corp. v. Empire Programs, Inc.,_ 488 F. Supp. 2d 375, 2007 WL 1467220, at *3 (S.D.N.Y. May 17, 2007) (quoting _Anderson v. Liberty Lobby, Inc.,_ 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)). As a result, the mere existence of factual issues that are not material to the case will not suffice to defeat a motion for summary judgment. _See id._

"The burden of demonstrating that no material fact exists lies with the party seeking summary judgment." _Jeffreys v. City of New York,_ 426 F.3d 549, 553 (2d Cir. 2005). The burden then shifts to the nonmoving party who "must do more then simply show that there is some metaphysical doubt as to the material facts." _Mosely v. Island Computer Products, Inc.,_ No. 04-2469, 2006 U.S. Dist. LEXIS 6437, 2006 WL 318815, at *2 (E.D.N.Y. Feb. 9, 2006) (quoting _Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,_ 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986)). [*8] The nonmoving party must offer specific evidence to support its claim that a genuine issue of material fact exists. _See Fernandez v. CMB Contracting,_ 487 F. Supp. 2d 281, 2007 WL 1456220, at *2 (E.D.N.Y. May 16, 2007). In considering the motion, the court's responsibility "is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party." _Douglas v. First Unum Life Ins. Co.,_ 465 F. Supp. 2d 301, 305 (S.D.N.Y. 2006) (quoting _Knight v. U.S. Fire Ins. Co.,_ 804 F.2d 9, 11 (2d Cir. 1986), _cert. denied,_ 480 U.S. 932, 107 S. Ct. 1570, 94 L. Ed. 2d 762 (1987)).

### B. Federal Arbitration Act

Although Plaintiffs' claims of sexual harassment, and of assault and battery arise under New York law, the FAA preempts state and local law on the issue of enforceability of arbitration agreements. "Where the [statutory] right is predicated on a State or local statute rather than on a congressional enactment, it is undisputed . . . that the courts are obligated to draw an analogy to the equivalent Federal law, where possible, and to consider Congress's intentions with regard to the rights created [*9] by that law." _Fletcher v. Kidder, Peabody and Company, Inc.,_ 81 N.Y.2d 623, 632, 619 N.E.2d 998, 601 N.Y.S.2d 686 (1993). The FAA evidences Congress' intention to enforce arbitration agreements. _See id._ "As a result, the burden is upon the party seeking to avoid arbitration of a statutory claim to show that Congress intended to preclude waivers of the right to judicial remedy for such claims." [2] _Id._

> 2    New York Human Rights law claims are arbitrable. _See Fletcher,_ 81 N.Y.2d at 638 (stating that an arbitration agreement is fully enforceable in disputes that fall within its terms, even where the underlying claim concerns an alleged breach of a local, State or Federal law barring racial or gender discrimination. ). Tort claims are also arbitrable. _See Collins & Aikman Prods. Co. v. Building Sys.,_ 58 F.3d 16, 23 (2nd Cir. 1995) (stating that the mere fact that this is a tort claim, rather than one for breach of Contract, does not make the claim any less arbitrable).

The FAA "covers arbitration provisions that are contained in employment contracts and arbitration agreements . . . ." _Sinnett v. Friendly Ice Cream Corp.,_ 319 F. Supp. 2d 439, 443 (S.D.N.Y. 2004). _See also Circuit City Stores, Inc. v. Adams,_ 532 U.S. 105, 121 S. Ct. 1302, 149 L. Ed. 2d 234 (2001) [*10] (holding that employment contracts are covered by the FAA). The FAA provides that "an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in

equity for the revocation of any contract." 9 U.S.C. § 2 (2003). "Section three of the FAA provides for a stay of legal proceedings when the court is satisfied that the issue is arbitrable under an arbitration agreement." Sinnett, 319 F. Supp. 2d at 443 (citing 9 U.S.C. § 3 (2003)). Absent a ground for revocation of the contract, the FAA mandates that district courts direct parties to proceed to arbitration regarding issues on which an arbitration agreement was signed. See Sinnett, 319 F. Supp. 2d at 443 (quoting Genesco, Inc. v. T. Kakiuchi & Co., 815 F.2d 840, 844 (2d Cir. 1987)).

In light of the FAA's strong policy in favor of rigorously enforcing arbitration agreements, the Second Circuit articulated a two-part test to determine arbitrability of claims that do not involve federal statutes. See Ace Capital Re Overseas Ltd. v. Central United Life Ins. Co., 307 F.3d 24, 28 (2d Cir. 2002); [*11] see also Baldeo v. Darden Rests., Inc., No. 04-2185, 2005 U.S. Dist. LEXIS 289, 2005 WL 44703, at *4 (E.D.N.Y. Jan. 11, 2005). A district court must examine each of the following: "(1) whether the parties agreed to arbitrate disputes at all; and (2) whether the dispute at issue comes within the scope of the arbitration agreement." Ace Capital Re Overseas Ltd., 307 F.3d at 28 (citing Hartford Accident & Indemn. Co. v. Swiss Reinsurance Am. Corp., 246 F.3d 219, 226 (2d Cir. 2001)).

### 1. Agreement to Arbitrate

Districts courts apply generally accepted principles of state contract law to determine whether there is an agreement to arbitrate. See Rubin v. Sona Int'l Corp., 457 F. Supp. 2d 191, 195 (S.D.N.Y. 2006); see also Elwell v. Google, Inc., No. 05-6498, 2006 U.S. Dist. LEXIS 3114, 2006 WL 217978, at *3 (S.D.N.Y. Jan. 30, 2006). "Pursuant to New York law, 'a person who signs a contract is presumed to know its contents and to assent to them,'" unless he can show special circumstances that would relieve him of that obligation. Arakawa v. Japan Network Group, 56 F. Supp. 2d 349, 352 (S.D.N.Y. 1999) (quoting Berger v. Cantor Fitzgerald Sec., 967 F. Supp. 91, 93 (S.D.N.Y. 1993)). Therefore, an employee's failure to read an arbitration agreement [*12] would not generally allow an employee to avoid the terms set forth in that arbitration agreement because there is a presumption that the employee knew the contents of that agreement and assented to them. See Baldeo, 2005 U.S. Dist. LEXIS 289, 2005 WL 44703, at *4. Each Plaintiff signed the "Mutual Agreement to Arbitrate Claims" and promised that "[t]he Company and I mutually consent to the resolution by arbitration of all claims or controversies . . . that the Company may have against me or that I may have against any of the following: (1) the Company, (2) its officers, directors, employees, or agents in their capacity as such or otherwise . . . ." (Ex. 1, p. 1; see also Ex. 3, p. 1.) Thus, Plaintiffs are bound by the arbitration

agreement unless they can show special circumstances, such as unconscionability, which would prevent enforcement of the arbitration agreement.

An arbitration agreement that is unconscionable is unenforceable. See Baldeo, 2005 U.S. Dist. LEXIS 289, 2005 WL 44703, at *6 (citing Brennan v. Bally Total Fitness, 198 F. Supp. 2d 377, 381 (S.D.N.Y. 2002)). An unconscionable arbitration agreement is "one which is so grossly unreasonable or unconscionable in the light of the mores and business practices of the time and [*13] place as to be unenforceable according to its literal terms." Gillman v. Chase Manhattan Bank, 73 N.Y.2d 1, 10, 537 N.Y.S.2d 787, 534 N.E.2d 824 (1988). In other words, an arbitration agreement is unconscionable where there is "an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party." Gillman, 73 N.Y.2d at 10 (quoting Williams v. Walker-Thomas Furniture Co., 121 U.S. App. D.C. 315, 350 F.2d 445, 449 (D. C. Cir. 1965)). A court should adopt a "flexible" approach when examining all the facts and circumstances of a particular case but an employee still has to hurdle a high bar to establish the unconscionability of an arbitration agreement. See Baldeo, 2005 U.S. Dist. LEXIS 289, 2005 WL 44703, at *6.

### a. Procedural Unconscionability

Under New York law, an arbitration agreement is unconscionable if it contains both procedural and substantive unconscionability. See Gill v. World Inspection Network Int'l, Inc., No. 06-3187, 2006 U.S. Dist. LEXIS 52426, 2006 WL 2166821, at *5 (E.D.N.Y. July 31, 2006). To determine if there is procedural unconscionability, courts look at whether a party lacked meaningful choice. See id. Courts focus on evidence of high pressure or deceptive tactics, [*14] as well as disparity in bargaining power between the parties. See Brennan v. Bally Total Fitness, 198 F. Supp. 2d 377, 382 (S.D.N.Y. 2002).

Plaintiffs assert that they were threatened with loss of their jobs if they failed to sign the arbitration agreement, that they were not given time to consult an attorney regarding the arbitration agreement, and that they subsequently signed the arbitration agreement without reading or understanding it. Moss signed the arbitration agreement on two separate occasions without reading it and Henry signed the arbitration agreement within five minutes of receiving it. Even if all of Plaintiffs' assertions are true, they do not show procedural unconscionability. Both Moss and Henry signed the arbitration agreement in which they acknowledged that they read and understood the agreement, and that they were given an opportunity to discuss the agreement with an attorney. If Plaintiffs did not understand the form of the arbitration

agreement or had questions about it, the burden was upon them to have their concerns addressed before placing their signatures on the agreement. *See Baldeo,* 2005 U.S. Dist. LEXIS 289, 2005 WL 44703, at *5 (citing *Gold v. Deutsche Aktiengesellschaft,* 365 F.3d 144, 149 (2d Cir. 2004)). [*15] In addition, mere inequality in bargaining power between an employer and employee is insufficient to render an arbitration agreement unenforceable. *See Cap Gemini Ernst & Young U.S. LLC v. Arentowicz,* No. 04-0299, 2004 U.S. Dist. LEXIS 11337, 2004 WL 1386145, at *5 (S.D.N.Y. June 22, 2004) (citing *Arakawa,* 56 F. Supp. 2d at 352)). Thus, conditioning continued employment and promotion upon an agreement to arbitrate does not by itself constitute unconscionability. *See Gruber v. Louis Hornick & Co.,* No. 02-5092, 2003 U.S. Dist. LEXIS 8764, 2003 WL 21222541, at *2 (S.D.N.Y. May 23, 2003) (citing *Brennan,* 198 F. Supp. 2d at 383)).

Further, Plaintiffs' reliance upon *Brennan* is misplaced because *Brennan* is distinguishable from the instant case. The plaintiff in *Brennan* was asked to sign an arbitration agreement *after* she had already commenced a discrimination action against her employer. *See Brennan,* 198 F. Supp. 2d at 380. In addition, Brennan's employer utilized high pressure tactics to compel her to sign the arbitration agreement. *See Morales v. Rent-A-Center, Inc.,* 306 F. Supp. 2d 175, 182 (D. Conn. 2003). For instance, the employer gave Brennan no more than fifteen minutes to review the sixteen-page, single-spaced arbitration agreement and [*16] did not inform Brennan that the agreement would affect her pending sexual harassment claim. *Brennan,* 198 F. Supp. 2d at 383. Unlike Brennan, Moss and Henry did not face any high pressure tactics from Rent-A-Center. As a result, Plaintiffs failed to establish that they lacked a meaningful choice when they signed the arbitration agreement.

### b. Substantive Unconscionability

"Substantive elements of unconscionability appear in the context of the contract per se . . . ." *Brennan,* 198 F. Supp. 2d at 382. A contract is substantively unconscionable where its terms are unreasonably favorable to the party against whom unconscionability is claimed. *See Desiderio v. NASD,* 191 F.3d 198, 207 (2d Cir. 1999), *cert. denied,* 531 U.S. 1069, 121 S. Ct. 756, 148 L. Ed. 2d 659 (2001). Generally, arbitration agreements that bind both parties do not favor the stronger party unreasonably. *See id.* Here this contract mutually binds both parties and may not be said to favor the stronger party unreasonably. *See id.* Nevertheless, Plaintiffs claim that the terms of the arbitration agreement unreasonably favor Rent-A-Center because the agreement limits Plaintiffs to one deposition, and requires Plaintiffs and Rent-A-Center [*17] to split the fees and costs of arbitration.

### i. Discovery

Plaintiffs claim that because the discovery process limits them to one deposition, there is a limited amount of proof they can gather for their case. However, the Supreme Court has held that limited discovery is an insufficient ground to invalidate an arbitration agreement. *Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 31, 111 S. Ct. 1647, 114 L. Ed. 2d 26 (1991); *see also Stewart v. Paul, Hastings, Janofsky & Walker, LLP,* 201 F. Supp. 2d 291, 292 (S.D.N.Y. 2002). The Supreme Court reasoned that, "[a]lthough those procedures might not be as extensive as in the federal courts, by agreeing to arbitrate, a party 'trades the procedures and opportunity for review of the courtroom for the simplicity, informality, and expedition of the arbitration.'" *Gilmer,* 500 U.S. at 31 (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,* 473 U.S. 614, 628, 105 S. Ct. 3346, 87 L. Ed. 2d 444 (1985)). *See also Ciago v. Ameriquest Mortgage Co.,* 295 F. Supp. 2d 324, 333 (S.D.N.Y. 2003). Although, the arbitration agreement limits Plaintiffs to one deposition, other means of discovery are at Plaintiffs' disposal. The arbitration agreement [*18] allows Plaintiffs to subpoena witnesses, and permits the arbitrator to order additional discovery, if necessary.

### ii. Filing Fees

Plaintiffs also claim that the arbitration agreement requires them to pay filing fees, fifty percent of all other administrative fees, and one hundred percent of the arbitrator's fees when they are the movants on any motions. According to Plaintiffs, these cost-splitting fees are prohibitive. In *Green Tree Financial Corp. - Alabama v. Randolph,* 531 U.S. 79, 121 S. Ct. 513, 148 L. Ed. 2d 373 (2000), the Supreme Court suggested that large arbitration costs could invalidate an arbitration agreement. *Id. See also Chamois v. Countrywide Home Loans,* No. 02-9550, 2003 U.S. Dist. LEXIS 23202, 2003 WL 23022033, at *4 (S.D.N.Y. Dec. 29, 2003). The mere uncertainty of expense however, does not render an arbitration agreement unenforceable. *See Gambardella v. Pentec Inc.,* 218 F. Supp. 2d 237, 245 (D. Conn. 2002). The party who resists arbitration on the ground that it would be prohibitively expensive "bears the burden of showing the likelihood of incurring such costs." *Green Tree Financial Corp. - Alabama,* 531 U.S. at 91. *See also Stewart,* 201 F. Supp. 2d at 293.

Neither the Supreme Court nor the Second [*19] Circuit have elaborated on how detailed a showing of prohibitive fees needs to be to invalidate an arbitration agreement. *See E.E.O.C. v. Rapport, Hertz, Cherson & Rosenthal, P.C.,* 448 F. Supp. 2d 458, 462 (E.D.N.Y. 2006). The Fourth Circuit holds that in the context of employment discrimination, the proper inquiry for the

court is a "case-by-case analysis that focuses, among other things, upon the claimant's ability to pay the arbitration fees and costs, the expected cost differential between arbitration and litigation in court, and whether that cost differential is so substantial as to deter the bringing of claims." *Bradford v. Rockwell Semiconductor Sys.,* 238 F.3d 549, 556 (4th Cir. 2001). Contrary to the Fourth Circuit, the Sixth Circuit holds that the "court must evaluate the likely cost of arbitration not in absolute terms, but *relative to the likely costs of litigation." Cooper v. MRM Inv. Co.,* 367 F.3d 493, 511 (6th Cir. 2004) (emphasis in original). Most District Courts in the Second Circuit follow the Fourth Circuit's rationale on how detailed a showing of prohibitive fees needs to be to invalidate an arbitration agreement. *See E.E.O.C.,* 448 F. Supp. 2d at 463.

In an attempt [*20] to demonstrate to the court how prohibitive arbitration fees will be, Plaintiffs provided the court with examples of the amount of filing fees they will be required to pay. According to Plaintiffs, the filing fee for each claim ranges from $ 750 to $ 10,000. Since there are five claims, Plaintiffs argue that their filing fees are between $ 3,750 and $ 50,000, depending upon the value of each claim. Plaintiffs' arbitration agreement calls for arbitration under the auspices of the American Arbitration Association ("AAA") or the Judicial Arbitration & Mediation Services ("JAMS)." Other than Plaintiffs own assertions however, Plaintiffs have failed to provide any independent evidence from either of these associations that demonstrate that this is the range of filing fees Plaintiffs will be forced to pay. From Plaintiffs' example, the Court currently cannot ascertain the actual costs and fees that Plaintiffs would be required to pay.

Even if Plaintiffs' argument about the amount of filing fees they might incur is accurate, Defendants have agreed to pay all arbitration costs associated with this case. *See Chamois,* 2003 U.S. Dist. LEXIS 23202, 2003 WL 23022033, at *4 (holding that employees failed to satisfy their burden [*21] of showing that prohibitive arbitration fees were likely because the employer offered to pay almost all of the costs of arbitration). Because Defendants have agreed to pay all arbitration costs associated with this case, Plaintiffs will not incur prohibitive fees as a result of arbitration.

*2. Scope of the Agreement*

"[A]s a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract itself or an allegation of waiver, delay, or a like defense to arbitrability." *Opals On Ice Lingerie, Designs by Bernadette, Inc. v. Bodylines Inc.,* 320 F.3d 362, 369 (2d Cir. 2003) (quoting *Moses H. Cone Memorial Hosp. v. Mercury Const. Corp.,* 460 U.S. 1, 24-5, 103 S. Ct 927, 74 L. Ed. 2d 765 (1983)). Broadly phrased arbitration agreements create a presumption of arbitrability which is only overcome if the arbitration agreement is not susceptible to an interpretation that covers the dispute. *See Bank Julius Baer & Co. v. Waxfield Ltd,* 424 F.3d 278, 284 (2d Cir. 2005). Parties must arbitrate claims if their underlying factual allegations touch on issues encompassed by the arbitration [*22] agreement. *See JLM Indus.,* 387 F.3d 163, 172; *see also Sherr v. Dell, Inc.,* No. 05-10097, 2006 U.S. Dist. LEXIS 51864, 2006 WL 2109436, at *3 (S.D.N.Y. July 27, 2006). The arbitration agreement between Plaintiffs and Defendants covers the following: "tort claims; claims of discrimination (including, but not limited to race, sex, sexual harassment, sexual orientation, religion, national origin, age, workers' compensation, marital status, medical condition, handicap or disability) . . . and claims for violation of any federal, state, or governmental law, statute, regulation, or ordinance . . . ." (Ex. 1, pp. 1, 4; *see also* Ex. 3, pp. 1, 5.) All of Plaintiffs claims - sexual harassment; and assault and battery - are covered under the arbitration agreement. Therefore, Plaintiffs' claims are within the scope of the arbitration agreement.

## CONCLUSION

For the reasons set forth above, Defendants' motion to compel arbitration and stay all proceedings is GRANTED. Defendants' request for attorneys' fees is DENIED.

SO ORDERED.

Dated: Brooklyn, New York

August 15, 2007

SANDRA L. TOWNES

United States District Judge

# EXHIBIT F

LEXSEE

**CUSTINA GRANGER, PLAINTIFF vs. SECURITAS SECURITY SERVICES USA, CO. ¹; KENNETH GRAVES APARTMENTS; AND RONALD PROMISE, DEFENDANTS**

1  The correct name of the defendant is Securitas Security USA, Inc.

**CIVIL ACTION NO. 5:05-cv-230(DCB)(JMR)**

**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF MISSISSIPPI, WESTERN DIVISION**

**2006 U.S. Dist. LEXIS 60224**

**August 23, 2006, Decided**

**CORE TERMS:** arbitration, arbitration agreement, commerce, acknowledgment, unconscionable, state law, conspiracy, interstate, federal law, compel arbitration, agreement to arbitrate, equal protection, intentional infliction of emotional distress, good cause, deprivation, harassment, arbitrate, color, arbitration provision, equal protection, transaction involving, unconscionability, nonarbitrable, out-of-state, procedurally, bargaining, security guard, arbitration clauses, federal statute, parties agreed

**COUNSEL:** [*1] For Custina Granger, Plaintiff: Louis Ivan Burghard, BURGHARD LAW FIRM, Brookhaven, MS.

For Securitas Security USA Co., Defendant: Ashley E. Cannady, LEWIS, FISHER, HENDERSON, CLAXTON & MULROY, LLP-Jackson, Jackson, MS.; Bethany Brantley Johnson, LEWIS, FISHER, HENDERSON, CLAXTON & MULROY, LLP, Jackson, MS.

**JUDGES:** DAVID BRAMLETTE, UNITED STATES DISTRICT JUDGE.

**OPINION BY:** DAVID BRAMLETTE

**OPINION**

*MEMORANDUM OPINION AND ORDER*

This cause is before the Court on the defendant Securitas Security Services USA, Inc. ("Securitas")'s Motion to Dismiss Plaintiff's Complaint or, in the Alternative, to Stay Litigation, and to Compel Arbitration (**docket entries 6 and 8**). After careful consideration of the motion and response, the memoranda and applicable law, and being fully advised in the premises, the Court finds as follows:

In January of 2005, Custina Granger ("Granger") filed a Charge of Discrimination with the EEOC, alleging that she was subjected to sexual harassment while working as a security guard for Securitas. She further alleged that she was denied assignments and discharged from her position, constituting gender discrimination under Title VII of the Civil Rights Act of 1964. The [*2] EEOC issued Granger a right to sue letter on April 29, 2005. On July 27, 2005, the plaintiff filed an action against the defendants in the Circuit Court of Adams County, Mississippi, and amended her complaint on November 23, 2005. On December 21, 2005, Securitas removed the action to this Court on the basis of federal question jurisdiction, and now seeks enforcement of an arbitration agreement between the parties.

The plaintiff's Amended Complaint names as defendants Securitas, Kenneth Graves Apartments, and Ronald Promise. Granger states that she was hired by Securitas in April of 2004 as a security guard for the Kenneth Graves Apartments in Natchez, Mississippi. Amended Complaint, P 7. She alleges that shortly after she began work, her supervisor, Ronald Promise, began to harass her by making sexual advances and requests. P 9. She further alleges that as a result of her refusal of his advances, she was denied a promotion by Promise. P 12. She also alleges that she was fired by Securitas in retaliation for her complaints of harassment. P 13. Count I of the Amended Complaint is brought pursuant to 42 U.S.C. § 1983 and alleges deprivations of equal protection [*3] and due process under the Fifth and Fourteenth Amend-

ments of the United States Constitution. P 16. Count II alleges a conspiracy to deprive the plaintiff of her equal protection rights, and is brought pursuant to 42 U.S.C. § 1985. P 25. Count III alleges that the defendants committed the state law tort of intentional infliction of emotional distress. P 31.

The Federal Arbitration Act ("FAA") does not provide an independent source of federal jurisdiction, and an independent basis for jurisdiction must exist before a federal court may assume jurisdiction. See Moses H. Cone Memorial Hospital v. Mercury Construction Corp., 460 U.S. 1, 26 n.32, 103 S. Ct. 927, 74 L. Ed. 2d 765 (1983). Securitas alleges that federal jurisdiction is proper under 28 U.S.C. § 1331 because the Court has original federal question jurisdiction over the plaintiff's claims brought pursuant to 42 U.S.C. §§ 1983 and 1985. Notice of Removal, PP III-IV.

The next question to be determined is whether federal law (the FAA) or state law applies to Securitas' motion to compel arbitration. The FAA, 9 U.S.C. §§ 1-14 [*4] provides in part:

> A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. Thus, the FAA only applies to written provisions of a contract "evidencing a transaction involving commerce." This provision extends the reach of the FAA to all contractual activity which facilitates or affects commerce even tangentially. See Acre v. Cotton Club of Greenville, Inc., 883 F.Supp. 117, 119 (N.D. Miss. 1995). The Supreme Court has noted the phrase "evidencing a transaction involving commerce" extends the reach of the FAA to the full extent of Congress' power to regulate under the Commerce Clause of the United States Constitution. See Allied-Bruce Terminix Cos. v. Dobson, 513 U.S. 265, 115 S. Ct. 834, 130 L. Ed. 2d 753 (1995). "Commerce" in this context refers to interstate or foreign commerce. Atlantic Aviation, Inc. v. EBM Group, Inc., 11 F.3d 1276, 1280 (5th Cir. 1994).

In [*5] deciding whether the requisite degree of interstate commerce is involved, courts have looked to a variety of factors. In the context of employment contracts, the case of Jones v. Tenet Health Network, Inc., 1997 U.S. Dist. LEXIS 5037, 1997 WL 180384 (E.D. La. April 7, 1997) is illustrative. There, the district court found the agreement to arbitrate evidenced a transaction

involving interstate commerce because the hospital where the plaintiff worked received services and goods from out-of-state vendors, treated out-of-state patients and received payment for services rendered from out-of-state insurance carriers. Id. 1997 U.S. Dist. LEXIS 5037. In the case at bar, the only information before the Court relevant to this inquiry is that Securitas is a foreign corporation and that the plaintiff was employed as a security guard in Natchez, Mississippi. The fact that the employer is an out-of-state corporation is not in itself enough to show that the transaction "involved commerce." See, e.g., Bernhardt v. Polygraphic Co. of America, Inc., 350 U.S. 198, 200-01, 76 S. Ct. 273, 100 L. Ed. 199 (1956)(requiring showing that employee was working "in" commerce, was producing goods for commerce, or was engaging in activity that affected [*6] commerce).

Ordinarily, the party seeking to compel arbitration alleges that the arbitration agreement involves interstate commerce, and the court makes an evidentiary determination concerning the existence of an "interstate nexus" as required by the FAA. See United House of Prayer v. L.M.A. International, Ltd., 107 F.Supp.2d 227 (S.D. N.Y. 2000). In the absence of an "interstate nexus," the parties' disputes are not subject to the FAA, and the Court must look to state jurisprudence specifically addressing arbitration issues under state law. See McBride v. Mursimco, Inc., 2004 U.S. Dist. LEXIS 11953, 2004 WL 1459565 *2 (E.D. La. June 28, 2004). In the past, Mississippi law diverged from federal law in allowing revocation of arbitration clauses. See Arce v. Cotton Club of Greenville, Inc., 883 F.Supp. 117 (N.D. Miss. 1995)(citing McClendon v. Shutt, 237 Miss. 703, 115 So.2d 740, 741 (1959); Standard Millwork & Supply Co. v. Mississippi Steel & Iron Co., 205 Miss. 96, 38 So.2d 448, 452 (1949)). More recently, however, the Mississippi Supreme Court "has recognized that arbitration is favored and firmly embedded in both our federal [*7] and state laws." Vicksburg Partners, L.P. v. Stephens, 911 So.2d 507, 513 (Miss. 2005). "Consistent with federal law, [Mississippi] case law now clearly emphasizes the favored status of arbitration." Id. In addition, Mississippi now follows federal case law which interprets the FAA, even when the FAA does not apply, "because the case law is based on sound principles which are easily transferable to non-interstate commerce litigation." University Nursing Associates, PLLC v. Phillips, 842 So.2d 1270, 1276 n.6 (Miss. 2003). Consequently, the Court finds it unnecessary to resolve the "interstate nexus" question because the application of federal law or state law would yield the same result.

Next, the Court must determine if the claims raised in the plaintiff's complaint are arbitrable. The plaintiff's Amended Complaint contains three counts. Count 1 alleges deprivations of her constitutional rights under 42

At the inception of Plaintiff's employment, Plaintiff executed a written agreement to arbitrate and [*sic*] all claims arising from her employment relationship with Securitas in accordance with the Securitas Arbitration Program. Plaintiff does not dispute signing the agreement as part of her condition for employment as alleged by the Defendant.

Plaintiff's Response, P 2. Furthermore, Granger acknowledged that her employment was conditioned on her acceptance of the arbitration agreement; therefore, her acceptance of the job manifested her assent to be bound by the arbitration program. *See May v. Higbee Company*, 372 F.3d 757 (5th Cir. 2004)(applying Mississippi law that a party's conduct may manifest assent to an agreement).

Granger next challenges the arbitration agreement as being both procedurally and substantively unconscionable. Arbitration agreements are not inherently unconscionable. *Smith v. Equifirst Corp.*, 117 F.Supp.2d 557, 564 (S.D. Miss. 2000). The question of procedural unconscionability is whether the insertion of the arbitration provision [*13] into the contract was done in a procedurally unfair manner. To demonstrate procedural unconscionability, the party resisting the arbitration agreement must establish a lack of knowledge, lack of voluntariness, inconspicuous print, the use of complex legalistic language, disparity of sophistication or bargaining powers of the parties, or lack of opportunity to study the contract and inquire about the contract terms. *Pridgen v. Greentree Financial Servicing Corp., Inc.*, 88 F.Supp.2d 655, 657 (S.D. Miss. 2000).

Granger contends that the arbitration agreement was procedurally unconscionable because:

> No explanation was given to the Plaintiff regarding the ultimate ramifications of this arbitration program. The Plaintiff was in a completely inferior bargaining position having no understanding of arbitration. Furthermore no proper procedures were utilized by the Defendant to properly educate the Plaintiff regarding their Program.

Plaintiff's Response, P 2. The plaintiff does not contend that at the time she signed the Acknowledgment of Receipt she was not permitted to read or study the Acknowledgment and the Arbitration Program brochure, or

that she inquired [*14] about, or requested an explanation of, the terms of those documents. Nor does she contend that the agreement to arbitrate was buried in fine print or otherwise inconspicuous. In fact, the brochure titled "The Securitas Arbitration Program" clearly explains what arbitration is, how it works, and how it is related to the employer/employee relationship. Both the brochure and the Acknowledgment of Receipt, a separate document, are easy to read and contain no complex legalistic language.

As for the plaintiff's assertion that she was in an inferior bargaining position, "mere inequality in bargaining power . . . is not a sufficient reason" in itself to hold that an arbitration provision is unenforceable. *Gilmer*, 500 U.S. at 33. Moreover, Granger always had the option to simply "refrain from contracting at all." *Pridgen*, 88 F.Supp.2d at 658. Granger further contends that she did not understand the arbitration provision. Mississippi law clearly precludes parties from disavowing written contracts for alleged failures of their own making to read or understand them. Absent fraud, "a person cannot avoid a signed, written contract on the grounds that he did not [*15] read it." *Hicks v. Bridges*, 580 So.2d 743, 746 (Miss. 1991). Further, a party to a contract cannot escape its obligations on grounds "that the contents thereof were not explained." *McCubbins v. Morgan*, 199 Miss. 153, 23 So.2d 926, 927 (Miss. 1945). As the Mississippi Supreme Court has stated:

> To permit a party when sued on a written contract to admit that he signed it, but to deny that it expresses the agreement he made or to allow him to admit that he signed it, but did not read it or know its stipulations, would absolutely destroy the value of all contracts.

*Hicks*, 580 So.2d at 746 (citations omitted). In the context of arbitration agreements, the Fifth Circuit has emphasized:

> Under elementary principles of contract law, one is presumed to have read a contract that one signs: "A person who signs a written instrument is presumed to know its contents and cannot avoid its obligations by contending that he did not read it, or that it was not explained or that he did not understand it."

*In re Cajun Elec. Power Co-op, Inc.*, 791 F.2d 353, 359-60 (5th Cir. 1986) (quoting *Smith v. Leger*, 439 So.2d 1203, 1206 (La.App. 1983) [*16] (additional citations and footnote omitted). In fact, the document that Granger

signed was clearly titled "Acknowledgment of Receipt of and Agreement to Securitas' Arbitration Program." The plaintiff has failed to show that the arbitration agreement is procedurally unconscionable.

Granger also states in her Response that the arbitration agreement is substantively unconscionable. Substantive unconscionability exists only when the terms of a contract are "oppressive." "That is, if the arbitration clause, as written, would necessarily operate in such a way as to have an unconscionable effect, it is unconscionable." *Pridgen 88 F.Supp.2d at 658*. However, Granger's Response merely alleges "substantive unconscionability" without any allegations to support her claim. She does not claim that any of the terms of the arbitration agreement are oppressive, nor does she suggest how any of the terms could be considered unconscionable. The plaintiff has failed to show that the arbitration agreement is substantively unconscionable.

The Court therefore finds that a valid agreement to arbitrate exists. Next, the Court considers whether the plaintiff's claims fall within the scope of [*17] the arbitration agreement. As noted previously, the plaintiff does not challenge the defendant's assertion that her employment-related claims are within the scope of the agreement; therefore, the Court finds that the dispute falls within the scope of the arbitration agreement, and that the parties agreed to arbitrate the dispute.

The Court's inquiry does not end here, however, for the Court must also consider whether any federal statute or policy renders the plaintiff's claims nonarbitrable. *OPE Int'l, 258 F.3d at 446*. Employment discrimination claims may properly be compelled to arbitration where, as here, they are within the scope of the arbitration agreement. *See Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 111 S. Ct. 1647, 114 L. Ed. 2d 26 (1991)*. Even Title VII claims can be subject to compulsory arbitration. *Alford v. Dean Witter Reynolds, Inc., 939 F.2d 229, 230 (5th Cir. 1991)*.

Since Granger's intentional infliction of emotional distress claim relates to her employment, it is encompassed by the arbitration agreement. *See McBride v. Mursimco, Inc., 2004 U.S. Dist. LEXIS 11953, 2004 WL 1459565 (E.D. La. June 28, 2004)* (in which plaintiff alleged intentional infliction [*18] of emotional distress in connection with retaliation claim); *Burton v. Citigroup, 2004 U.S. Dist. LEXIS 10627, 2004 WL 1285033 *5 (N.D. Tex. June 9, 2004)* (in which plaintiff alleged intentional infliction of emotional distress in connection with racial discrimination and sexual harassment claims).

As for Granger's claim pursuant to *42 U.S.C. § 1983*, the Court notes at the outset that in *McDonald v. City of West Branch, 466 U.S. 284, 290, 104 S. Ct. 1799, 80 L. Ed. 2d 302 (1984)*, the Supreme Court held that §

1983 claims are nonarbitrable because arbitration "cannot provide an adequate substitute for a judicial proceeding" in achieving *§ 1983*'s objectives. However, where the plaintiff's factual allegations, if proved, would come under the specific terms of Title VII, then Title VII would provide the plaintiff's exclusive remedy unless she alleges an independent basis for her *§ 1983* claim. *See Barwick v. City of Aurora Animal Care Division, 1992 WL 455488 (D. Colo. June 12, 1992)*.

"*Section 1983* provides a remedy against 'any person' who, under color of state law, deprives another of rights protected by the Constitution." [2] *Collins v. City of Harker Heights, Texas, 503 U.S. 115, 120, 112 S. Ct. 1061, 117 L. Ed. 2d 261 (1992)*. [*19] *Section 1983* does not create any substantive rights; it creates only a remedy for the violation of a substantive federal right. *Pennhurst State School & Hosp. v. Halderman, 451 U.S. 1, 28, 101 S. Ct. 1531, 67 L. Ed. 2d 694 (1981)*. Thus, *§ 1983* is not available when "the governing statute provides an exclusive remedy for violations of its terms." *Id.* (citations omitted).

> 2  *Section 1983* provides, in pertinent part:
>
>> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.
>
> *42 U.S.C. § 1983*.

In Count I of her Amended Complaint, Granger alleges that she was denied equal protection [*20] of the laws. The Fourteenth Amendment guarantees that no state shall "deny to any person within its jurisdiction the equal protection of the laws." This is "essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439, 105 S. Ct. 3249, 87 L. Ed. 2d 313 (1985)*. In Count I, the plaintiff claims that she was subject to harassment, denied a promotion and discharged from her position because of her gender. Granger's claims clearly fall within the expansive reach of Title VII. The "civil

rights" which the plaintiff claims were violated are rights created by Title VII, and would not be cognizable remedy for § 1983, since Title VII provides the exclusive remedy for violations of its terms. _Irby v. Sullivan, 737 F.2d 1418, 1429 (5th Cir. 1984)._

Granger's equal protection claim, which the Court construes as a Title VII claim, is thus not rendered non-arbitrable by any federal statute or policy. "By agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum." _Mitsubishi v. Soler Chrysler-Plymouth Inc., 473 U.S. 614, 628, 105 S. Ct. 3346, 87 L. Ed. 2d 444 (1985)._ [*21]

Nevertheless, the plaintiff may still pursue a § 1983 claim in addition to her Title VII claim if she alleges an independent basis for her § 1983 claim. In _Johnston v. Harris County Flood controlDist., 869 F.2d 1565, 1576 (5th Cir. 1989),_ the Fifth Circuit qualified its position in _Irby_ by holding that a plaintiff could pursue a remedy under § 1983 as well as under Title VII when the employer's conduct violates both Title VII and a separate constitutional or statutory right.

In addition to her equal protection claim, the plaintiff asserts a due process claim under § 1983. A § 1983 claim has two essential elements: a plaintiff must plead and prove that "(1) the defendant acted under color of state law; and (2) as a result of the defendant's actions, the plaintiff suffered a deprivation of his rights or privileges secured by the Constitution or federal laws." _Perry v. Metropolitan Suburban Bus Authority, 390 F.Supp.2d 251 (E.D. N.Y. 2005)_(citing _Annis v. County of West-chester, 136 F.3d 239, 245 (2nd Cir. 1998)_). Therefore, as a threshold matter, the plaintiff must allege that the offensive conduct occurred "under color of [*22] state law." A private party such as Securitas may violate § 1983, but only if its joint participation with state officials justifies its characterization as a "state actor." _Lugar v. Edmondson Oil Co., 457 U.S. 922, 941, 102 S. Ct. 2744, 73 L. Ed. 2d 482 (1982)._ Granger's complaint contains no such allegation. Her failure to allege that her employer acted in any respect other than as a wholly private actor is fatal to both her equal protection and due process claims under § 1983. Thus, the plaintiff cannot show an independent basis, or any basis at all, that would allow her to pursue a § 1983 claim.

Finally, the Court addresses the plaintiff's § 1985(3) claim in Count II. The elements of a § 1985(3) claim are: (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States. _Griffin v. Breckenridge, 403 U.S. 88, 91, 91 S. Ct. 1790, 29 L. Ed. 2d 338 (1971)._ Unlike § 1983, which requires that [*23] the offensive conduct be "under color of state law," § 1985(3) has been interpreted to reach purely _private_ conspiracies absent government action. _Id._ However, the question here is whether the alleged conspiracy deprived the plaintiff of the "equal protection of the laws," or of "equal privileges and immunities under the laws" within the meaning of § 1985(3).

Like § 1983, § 1985(3) creates no substantive rights; it merely provides a _remedy_ for violation of the rights which it designates. _Great American Federal Savings & Loan Assoc. v. Novotny, 442 U.S. 366, 372, 99 S. Ct. 2345, 60 L. Ed. 2d 957 (1979)._ As with § 1983, rights created by Title VII do not fall under the protection of § 1985(3) because the complex procedural requirements for a Title VII claim would be impaired if a plaintiff were allowed to assert her claim within the remedial framework of § 1985(3). _Id._ at 378.

Granger's § 1985(3) claims are merely for deprivations of her rights under Title VII. Since she may not invoke § 1985(3) to redress violations of Title VII, the Court must construe her claims as falling under Title VII and subject to arbitration. _See True v. New York State Dept. Of Correctional Services, 613 F.Supp. 27, 32 (W.D. N.Y. 1984)_ [*24] ("[P]laintiff has failed to plead a conspiracy regarding a federally protectable interest other than the discrimination in employment allegations which must be enforced under Title VII and not under section 1985(3).").

The Court therefore concludes that all of the plaintiff's claims against Securitas are subject to arbitration, and she must pursue her claims in the manner as provided in the arbitration agreement. This action shall be dismissed without prejudice as to defendant Securitas. As for defendants Kenneth Graves Apartments and Ronald Promise, neither of these defendants has been served with process in this action. Federal Rule of Civil Procedure 4(m) provides:

> If service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, the court, upon motion or on its own initiative after notice to the plaintiff, shall dismiss the action without prejudice as to that defendant or direct that service be effected within a specified time; provided that if the plaintiff shows good cause for the failure, the court shall extend the time for service for an appropriate period.

# EXHIBIT G

LEXSEE



Positive
As of: Aug 16, 2008

**BENJAMIN RICE, Plaintiff, -against- BROWN BROTHERS HARRIMAN & CO.,
Defendant.**

**96 Civ. 6326 (MBM)**

**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF
NEW YORK**

**1997 U.S. Dist. LEXIS 3628; 73 Fair Empl. Prac. Cas. (BNA) 1210; 71 Empl. Prac.
Dec. (CCH) P44,907**

**March 20, 1997, Decided
March 21, 1997, FILED**

**DISPOSITION:** [*1] Defendant's motions to dismiss plaintiff's declaratory judgment claim and to compel arbitration and stay proceedings granted.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff employee brought an age discrimination claim against defendant employer under the Age Discrimination in Employment Act, 29 U.S.C.S. § 621 et seq., and a state law and local law. Plaintiff alleged that he was denied the same job opportunities and compensation as younger employees. Defendant filed a motion to dismiss plaintiff's declaratory judgment claim and a motion to compel arbitration pursuant to a U-4 form that plaintiff signed.

**OVERVIEW:** Plaintiff employee brought an age discrimination action against defendant employer under the Age Discrimination in Employment Act, 29 U.S.C.S. § 621 et seq., and a state law and local law. The court granted defendant's motion to dismiss plaintiff's declaratory judgment claim and its motion to compel arbitration. The court found that plaintiff had signed a U-4 form, which required all matters subject to arbitration under the rules of the New York Stock Exchange (NYSE) to be arbitrated. NYSE Rule 347 required that any employment dispute between a registered representative and a member organization be arbitrated. Plaintiff was a registered representative on the NYSE and defendant was a member organization. The court also found that age dis-

crimination claims under federal, state, and local laws were subject to arbitration. The court held that plaintiff's subjective knowledge of the scope of the arbitration clause was irrelevant. The court also held that plaintiff could not rely on the Old Workers Benefit Protection Act of 1990 (OWBPA), 29 U.S.C.S. § 626, because his U-4 was executed before the OWBPA was enacted and the OWBPA waiver requirements did not apply to the arbitration clause.

**OUTCOME:** The court granted defendant employer's motion to dismiss plaintiff employee's declaratory judgment claim and motion to compel arbitration. Plaintiff's U-4 form required plaintiff's age discrimination claim to be arbitrated in accordance with a New York Stock Exchange rule. Plaintiff's subjective knowledge about the scope of the arbitration clause was irrelevant. Plaintiff could not rely on the Old Workers Benefit Protection Act of 1990.

**CORE TERMS:** arbitration, arbitration clause, discrimination claims, judicial forum, arbitrate, arbitrable, substantive rights, compel arbitration, waiver provisions, arbitrability, age discrimination, procedural rights, arbitrated, registered representative, declaratory judgment, pre-dispute, waiving, waive, NYSE Rule, securities industry, federal policy, statutory claims, subject to arbitration, favoring arbitration, registration, termination, settlement, presumed, exit

**LexisNexis(R) Headnotes**

1997 U.S. Dist. LEXIS 3628, *; 73 Fair Empl. Prac. Cas. (BNA) 1210;
71 Empl. Prac. Dec. (CCH) P44,907

*Civil Procedure > Alternative Dispute Resolution > General Overview*
*Labor & Employment Law > Collective Bargaining & Labor Relations > Arbitration > Enforcement*
*Securities Law > Self-Regulating Entities > National Securities Exchanges > New York Stock Exchange*
[HN1]New York Stock Exchange Rule 347 provides: Any controversy between a registered representative and any member or member organization arising out of the employment or termination of employment of such registered representative by and with such member or member organization shall be settled by arbitration, at the instance of any such party.

*Civil Procedure > Alternative Dispute Resolution > Arbitrations > Federal Arbitration Act > General Overview*
*Civil Procedure > Alternative Dispute Resolution > Mandatory ADR*
*International Trade Law > Dispute Resolution > Arbitration*
[HN2]See 9 U.S.C.S. § 3.

*Civil Procedure > Alternative Dispute Resolution > Arbitrations > Federal Arbitration Act > Stays Pending Arbitration*
*Civil Procedure > Alternative Dispute Resolution > Mandatory ADR*
*International Trade Law > Dispute Resolution > Arbitration*
[HN3]Federal Arbitration Act § 4 provides that a federal court may compel a party to proceed to arbitration if the party fails, refuses, or neglects to honor an agreement to arbitrate. 9 U.S.C.S. § 4. To determine whether to stay proceedings and compel arbitration, a court must engage in a four-part inquiry: First, it must determine whether the parties agreed to arbitrate; second, it must determine the scope of that agreement; third, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable; and fourth, if the court concludes that some, but not all, of the claims in the case are arbitrable, it must then determine whether to stay the balance of the proceedings pending arbitration. If this inquiry yields a finding that the matter is arbitrable, the court must send the parties to arbitration; there is no room for discretion.

*Civil Procedure > Alternative Dispute Resolution > Arbitrations > General Overview*

*Contracts Law > Contract Conditions & Provisions > Arbitration Clauses*
*Securities Law > Self-Regulating Entities > National Securities Exchanges > New York Stock Exchange*
[HN4]Enforcement of an arbitration agreement in relation to a particular claim should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.

*Civil Procedure > Alternative Dispute Resolution > General Overview*
*Contracts Law > Contract Conditions & Provisions > Arbitration Clauses*
*Securities Law > Self-Regulating Entities > National Securities Exchanges > New York Stock Exchange*
[HN5]Age discrimination claims brought under the Age Discrimination in Employment Act, 29 U.S.C.S. § 621 et seq., and under state and local law are subject to arbitration.

*Civil Procedure > Alternative Dispute Resolution > Validity of ADR Methods*
*Labor & Employment Law > Discrimination > Actionable Discrimination*
[HN6]State law discrimination claims under N.Y. Exec. Law § 296(1)(a) are arbitrable.

*Civil Procedure > Alternative Dispute Resolution > Validity of ADR Methods*
*Labor & Employment Law > Discrimination > Actionable Discrimination*
[HN7]Discrimination claims under New York City Human Rights Law, Admin. Code § 8-101 et seq., are arbitrable.

*Civil Procedure > Alternative Dispute Resolution > Judicial Review*
*Contracts Law > Contract Conditions & Provisions > Arbitration Clauses*
*Contracts Law > Formation*
[HN8]When deciding whether the parties agreed to arbitrate a certain matter, courts generally should apply ordinary state-law principles that govern the formation of contracts. Under New York law, a party's subjective knowledge of the contents of a contract at the time he signs it is irrelevant. Rather, one who signs and accepts a written contract, in the absence of fraud or other wrongful act on the part of another contracting party, is conclusively presumed to know its contents and to assent to them. Under general contract principles a party is bound

1997 U.S. Dist. LEXIS 3628, *; 73 Fair Empl. Prac. Cas. (BNA) 1210;
71 Empl. Prac. Dec. (CCH) P44,907

by the provisions of a contract that he signs, unless he can show special circumstances that would relieve him of such obligation.

*Labor & Employment Law > Discrimination > Age Discrimination > Coverage & Definitions > General Overview*
*Labor & Employment Law > Discrimination > Age Discrimination > Employment Practices > General Overview*
*Labor & Employment Law > Discrimination > Age Discrimination > Waivers*
[HN9]The Old Workers Benefit Protection Act of 1990, 29 U.S.C.S. § 626, provides that an individual may not waive any right or claim under this chapter unless the waiver is knowing and voluntary. 29 U.S.C.S. § 626(f)(1). It then provides that a waiver is not considered knowing and voluntary unless certain general requirements are met, including that the waiver is written in an understandable manner, that it refers specifically to the Age Discrimination in Employment Act, 29 U.S.C.S. § 621 et seq., that it does not waive rights arising after the waiver is executed, that it is in return for consideration which is in addition to anything of value to which the individual is already entitled, that the waiving party is advised to consult an attorney, and that the waiving party is given seven days to revoke the waiver after its execution. 29 U.S.C.S. § 626(f)(1)(A)-(E), (G).

*Governments > Legislation > Interpretation*
*Labor & Employment Law > Discrimination > Age Discrimination > Coverage & Definitions > General Overview*
*Labor & Employment Law > Discrimination > Age Discrimination > Waivers*
[HN10]The Old Workers Benefit Protection Act of 1990 (Act), 29 U.S.C.S. § 626, provides that the waiver requirements shall not apply with respect to waivers that occur before the date of enactment of the Act. The plain meaning of the word "occur" is that the waiver is signed or executed. Therefore, the most logical interpretation of this statutory provision is that the Act's waiver requirements do not apply to waivers executed before the statute's enactment.

*Civil Procedure > Alternative Dispute Resolution > General Overview*
*Civil Procedure > Trials > Jury Trials > Right to Jury Trial*
*Labor & Employment Law > Discrimination > Age Discrimination > Waivers*

[HN11]The Old Workers Benefit Protection Act of 1990, 29 U.S.C.S. § 626, does not refer specifically to waivers of procedural rights collateral to claims under the Age Discrimination in Employment Act, 29 U.S.C.S. § 621 et seq., such as the right to a judicial forum or a jury trial.

*Civil Procedure > Alternative Dispute Resolution > Arbitrations > General Overview*
*Contracts Law > Contract Conditions & Provisions > Arbitration Clauses*
*Labor & Employment Law > Discrimination > Age Discrimination > Waivers*
[HN12]The waiver provisions of the Old Workers Benefit Protection Act of 1990, 29 U.S.C.S. § 626, apply to substantive claims.

*Contracts Law > Contract Conditions & Provisions > Arbitration Clauses*
*Labor & Employment Law > Discrimination > Title VII of the Civil Rights Act of 1964 > Amendments*
*Labor & Employment Law > Discrimination > Title VII of the Civil Rights Act of 1964 > Remedies > Alternative Dispute Resolution*
[HN13]Questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration.

**COUNSEL:** APPEARANCES:

For Plaintiff: ARLENE BOOP, ESQ., NINA KOENIGSBERG, ESQ., Alterman & Boop, New York, New York.

For Defendant: ANDREA S. CHRISTENSEN, ESQ., JOHN D. GEELAN, ESQ., JOHN ROBERTI, ESQ., Kaye Scholer Fierman Hays & Handler, New York, New York.

**JUDGES:** Michael B. Mukasey, U.S. District Judge

**OPINION BY:** Michael B. Mukasey

**OPINION**

OPINION AND ORDER

MICHAEL B. MUKASEY, U.S.D.J.

Benjamin Rice sues Brown Brothers Harriman & Co. ("BBH"), his employer, claiming that BBH discriminated against him in his compensation and other conditions of his employment because of his age, in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq., New York State Human Rights Law, N.Y. Exec. Law § 290 et seq., and

1997 U.S. Dist. LEXIS 3628, *; 73 Fair Empl. Prac. Cas. (BNA) 1210;
71 Empl. Prac. Dec. (CCH) P44,907

New York City Human Rights Law, Administrative Code § 8-101 *et seq.* Plaintiff seeks also a declaratory judgment that his discrimination claims need not be arbitrated under an arbitration clause included in a securities industry registration form which he signed when he was hired. Defendant moves to dismiss pursuant [*2] to Fed. R. Civ. P. 12(b)(2) and (6), or for summary judgment pursuant to Fed. R. Civ. P. 56, or in the alternative to compel arbitration and stay further proceedings pending conclusion of the arbitration pursuant to the Federal Arbitration Act ("F.A.A."), 9 U.S.C. §§ 3-4. For the reasons set forth below, defendant's motion to dismiss plaintiff's declaratory judgment claim and its motion to compel arbitration and stay these proceedings are granted.

I.

BBH provides private banking services, including investment, advisory, management and custodial services. (Compl. P 7) Plaintiff, 66 years old, has been employed by BBH since 1983 and is now a securities analyst and manager. (*Id.* P 13) He claims that BBH denied him the same job opportunities and compensation as younger employees. (*Id.* PP 23-26)

Around the time he commenced his employment, plaintiff signed a "Uniform Application for Securities Industry Registration or Transfer Form," commonly known as a U-4. (*Id.* P 15; Geelan Aff., Ex. B) The U-4 provided:

> I agree to arbitrate any dispute, claim or controversy that may arise between me and my firm, or a customer, or any other person, that is required to be arbitrated [*3] under the rules, constitutions, or by laws of the organizations with which I register, as indicated in Question 8.

(Geelan Aff., Ex. B) In answer to Question 8, which asked with which organizations plaintiff planned to register, Rice checked the box labelled NYSE ("New York Stock Exchange"). (*Id.*) [HN1]NYSE Rule 347 provides:

> Any controversy between a registered representative and any member or member organization arising out of the employment or termination of employment of such registered representative by and with such member or member organization shall be settled by arbitration, at the instance of any such party . . . .

(Geelan Aff., Ex. C) Plaintiff is a registered representative on the NYSE and defendant is a member organization. (Compl. P 14)

Plaintiff asserts age discrimination claims under federal, state and local law. He claims that the U-4 arbitration clause does not cover age discrimination claims. (*Id.* P 19) Further, plaintiff argues that even if the clause does compel arbitration of age discrimination claims, plaintiff did not knowingly and voluntarily waive his right to a judicial forum for such claims. (*Id.* PP 20-22, 32-35)

II.

This [*4] action is governed by the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*, and by New York contract law. Under [HN2] 9 U.S.C. § 3:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement.

9 U.S.C. § 3 (1994). Further, [HN3]section 4 of the F.A.A. provides that a federal court may compel a party to proceed to arbitration if the party fails, refuses or neglects to honor an agreement to arbitrate. 9 U.S.C. § 4 (1994). To determine whether to stay proceedings and compel arbitration, a court must engage in a four-part inquiry:

> First, it must determine whether the parties agreed to arbitrate . . .; second, it must determine the scope of that agreement; third, if federal statutory claims are asserted, it must consider whether Congress intended [*5] those claims to be nonarbitrable . . . ; and fourth, if the court concludes that some, but not all, of the claims in the case are arbitrable, it must then determine whether to stay the balance of the proceedings pending arbitration.

*Genesco, Inc.* v. *T. Kakiuchi & Co.*, 815 F.2d 840, 844 (2d Cir. 1987). If this inquiry yields a finding that the matter is arbitrable, the court must send the parties to arbitration; there is no room for discretion. *Id.*

1997 U.S. Dist. LEXIS 3628, *; 73 Fair Empl. Prac. Cas. (BNA) 1210;
71 Empl. Prac. Dec. (CCH) P44,907

## A. *Agreement to Arbitrate*

Plaintiff does not deny that he signed the U-4 form. The U-4 requires that all matters subject to arbitration under the rules of the NYSE be arbitrated. NYSE Rule 347 requires that any employment dispute between a registered representative and a member organization be arbitrated. Plaintiff is a registered representative on the NYSE, defendant is a member organization, and therefore plaintiff agreed to arbitrate claims arising from his employment.

## B. *Scope of the Arbitration Clause*

[HN4]Enforcement of an arbitration agreement in relation to a particular claim "should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation [*6] that covers the asserted dispute." *AT&T Tech., Inc. v. Communications Workers*, 475 U.S. 643, 650, 89 L. Ed. 2d 648, 106 S. Ct. 1415 (1986). Under the U-4's arbitration clause, and NYSE Rule 347, plaintiff was required to arbitrate any dispute "arising out of . . . employment." Rule 347 is broad, and therefore must be read to include all employment disputes. Accordingly, plaintiff's claim that defendant discriminated against him in the condition of employment on account of his age is an employment dispute covered by this language. *See, e.g., Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26, 114 L. Ed. 2d 26, 111 S. Ct. 1647 (1991); *Chisolm v. Kidder, Peabody Asset Management, Inc.*, 810 F. Supp. 479, 481 (S.D.N.Y. 1992).

## C. *Arbitrability of Statutory Claims*

It is well settled that [HN5]age discrimination claims brought under the ADEA and under state and local law are subject to arbitration. *Gilmer*, 500 U.S. at 27-28; *Fletcher v. Kidder, Peabody & Co.*, 81 N.Y.2d 623, 634, 601 N.Y.S.2d 686, 692, 619 N.E.2d 998, *cert. denied*, 510 U.S. 933 (1993). In *Gilmer*, the Supreme Court held in circumstances remarkably similar to these -- a securities [*7] industry employee, registered with the NYSE, who had signed a U-4 form with the same arbitration clause -- that ADEA claims are subject to arbitration to the same extent as other claims. *Gilmer*, 500 U.S. at 27-28. The Court reasoned that neither the text of the ADEA nor its legislative history shows a Congressional intent to preclude arbitration of ADEA claims, and that the ADEA's purpose was not inconsistent with arbitration. *Id.*

Similarly, in *Fletcher*, the New York Court of Appeals held that [HN6]state law discrimination claims under New York Executive Law § 296(1)(a) are arbitrable. *Fletcher*, 81 N.Y.2d at 634, 601 N.Y.S.2d at 692. The Court stated that "the arbitrability of statutory discrimination claims is henceforth to be determined by reference to Congress' intent with regard to alternative dispute resolution of that class of claims." *Id.* at 688. The Court found in light of *Gilmer* and the Court of Appeals' own reading of Congressional intent, Congress intended that discrimination claims be arbitrable. *Id.* at 690-92.

*Fletcher's* reasoning would apply also to local law-based discrimination claims. The *Fletcher* Court stated that "where the right is [*8] predicated on a State or local statute rather than on a congressional enactment, . . . the courts are obliged to draw an analogy to the equivalent Federal law, where possible, and to consider Congress' intentions with regard to the rights created by that law." *Id.* at 690. Therefore, the arbitrability of a discrimination claim under local law, such as the New York City Human Rights Law, is determined by reference to Congressional intent. As the *Fletcher* Court noted, Congressional intent favors arbitrating discrimination claims. Accordingly, [HN7]discrimination claims under New York City Human Rights Law also are arbitrable.

The fourth part of the inquiry -- whether nonarbitrable claims should be stayed pending the completion of arbitration on arbitrable claims -- is inapplicable here because all of plaintiff's claims are arbitrable.

## D. *Knowing and Voluntary Agreement to Arbitrate Age Discrimination Claims*

Although the mandated four-part inquiry appears to compel arbitration, plaintiff argues that his claim need not be arbitrated because he did not knowingly and voluntarily agree to arbitrate age discrimination claims. He asserts three different theories in support of this [*9] conclusion. First, plaintiff claims that he was never told that discrimination claims are arbitrable under the U-4 arbitration clause. [HN8]"When deciding whether the parties agreed to arbitrate a certain matter . . ., courts generally . . . should apply ordinary state-law principles that govern the formation of contracts." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 115 S. Ct. 1920, 1924, 131 L. Ed. 2d 985 (1995). Under New York law, a party's subjective knowledge of the contents of a contract at the time he signs it is irrelevant. *See Schmidt v. Magnetic Head Corp.*, 97 A.D.2d 151, 157, 468 N.Y.S.2d 649, 654 (2d Dep't 1983). Rather, "one 'who signs and accepts a written contract, in the absence of fraud or other wrongful act on the part of another contracting party, is conclusively presumed to know its contents and to assent to them.'" *Maye v. Smith Barney Inc.*, 897 F. Supp. 100, 108 (S.D.N.Y. 1995) (quoting *Metzger v. Aetna Ins. Co.*, 227 N.Y. 411, 125 N.E. 814 (1920)); *see also Genesco, Inc.*, 815 F.2d at 845 ("Under general contract principles a party is bound by the provisions of a contract that he signs, unless he can show special circumstances [*10] that would relieve him of such obligation.").

1997 U.S. Dist. LEXIS 3628, *; 73 Fair Empl. Prac. Cas. (BNA) 1210;
71 Empl. Prac. Dec. (CCH) P44,907

Here, plaintiff claims that he "was not told and had not [sic] idea that the rules of the New York Stock Exchange could be read to require arbitration of the present claims I bring for age discrimination." (Rice Aff. P 2) However, under New York law, plaintiff's subjective knowledge of the scope of the arbitration clause is irrelevant and he is presumed to have agreed to all the terms of the contract, including the broad arbitration clause in NYSE Rule 347, which on its face encompasses discrimination claims. See, e.g., Smith v. Lehman Bros., Inc., 1996 U.S. Dist. LEXIS 9485, No. 95 Civ. 10326, 1996 WL 383232, at *1 (S.D.N.Y. July 8, 1996) ("As such assertions [that plaintiff was not aware of arbitration clause] alone do not constitute economic duress, coercion, or fraud, Smith is conclusively presumed to have assented to submit his claims to arbitration."); Hall v. Metlife Resources/Div. of Metro. Life Ins. Co., 1995 U.S. Dist. LEXIS 5812, No. 94 Civ. 0358, 1995 WL 258061, at *2-3 (S.D.N.Y. May 3, 1995) (holding arbitration clause binding where plaintiffs claimed in affidavits that they were unaware that U-4's which they signed contained arbitration clauses).

To the [*11] extent that plaintiff might seek to rely on Prudential Insurance Company of America v. Lai, 42 F.3d 1299 (9th Cir. 1994), cert. denied, 133 L. Ed. 2d 24, 116 S. Ct. 61 (1995), for the proposition that an explicit waiver of the right to a judicial forum or actual knowledge of such a waiver is required to arbitrate a discrimination claim, I follow other courts in this district in rejecting that rule. See DeGaetano v. Smith Barney, Inc., 1996 U.S. Dist. LEXIS 1140, No. 95 Civ. 1613, 1996 WL 44226, at *7 (S.D.N.Y. Feb. 5, 1996); Hall, 1995 U.S. Dist. LEXIS 5812, 1995 WL 258061, at *3-4; Pitter v. Prudential Life Ins. Co. of Amer., 906 F. Supp. 130, 139-40 (S.D.N.Y. 1995); Maye, 897 F. Supp. at 107; see also Beauchamp v. Great West Life Assurance Co., 918 F. Supp. 1091, 1098 (E.D. Mich. 1996). Moreover, unlike the arbitration clause in Lai, NYSE Rule 347 explicitly covers employment disputes. See, e.g., Topf v. Warnaco, Inc., 942 F. Supp. 762, 771 (D. Conn. 1996) (distinguishing Lai because arbitration clause "refer[s] specifically to the arbitrability of any controversy arising out of an employment relationship."); Golenia v. Bob Baker Toyota, 915 F. Supp. 201, 205 (S.D. [*12] Cal. 1996) (same).

Second, plaintiff claims in the complaint that defendant fraudulently induced him to sign the arbitration clause. However, plaintiff has since abandoned this claim. (Christensen Aff., Ex. D) Thus, plaintiff has shown no special circumstances which can overcome the presumption of knowing and voluntary agreement to the full scope of the arbitration clause.

Third, plaintiff argues that the Older Workers Benefit Protection Act of 1990, Pub. L. No. 101-433, title II, 104 Stat. 978, 983-84 (1990) ("OWBPA") (codified at 29 U.S.C. § 626), which amended the ADEA, bars arbitration of this ADEA claim because it imposes high standards for a knowing and voluntary waiver of a judicial forum in ADEA claims, which were not met here. [HN9]The OWBPA provides that "an individual may not waive any right or claim under this chapter unless the waiver is knowing and voluntary." 29 U.S.C. § 626(f)(1) (1994). It then provides that a waiver is not considered knowing and voluntary unless certain general requirements are met, including that the waiver is written in an understandable manner, that it refers specifically to the ADEA, that it does not waive rights arising after the waiver is executed, [*13] that it is in return for consideration which is in addition to anything of value to which the individual is already entitled, that the waiving party is advised to consult an attorney, and that the waiving party is given seven days to revoke the waiver after its execution. 29 U.S.C. § 626(f)(1)(A)-(E), (G). In addition to these general requirements, the statute requires also that an individual be given 21 days to consider the waiver. 29 U.S.C. § 626(f)(1)(F)(i). However, if the "waiver is requested in connection with an exit incentive or other employment termination program offered to a group or class of employees," the individual must be given 45 days to consider the waiver and must be informed of details concerning the group or class being offered the program. 29 U.S.C. § 626(f)(1)(F)(ii), (H). In addition, a "waiver in settlement of a charge filed with the Equal Employment Opportunity Commission, or an action filed in court by the individual or the individual's representative" alleging age discrimination must meet the general requirements listed above and the waiving party must be given a "reasonable period of time" within which to consider the settlement agreement. 29 U.S.C. [*14] § 626(f)(1)-(2).

Plaintiff's reliance on the statute is misplaced in part because the arbitration clause in plaintiff's U-4 was executed before the OWBPA was enacted. [HN10]The Act provides that the waiver requirements "shall not apply with respect to waivers that occur before the date of enactment of this Act." Old Workers Benefit Protection Act, Pub. L. No. 101-433, § 202, 104 Stat. 978, 984 (1990); see also Ulvin v. Northwestern Nat'l Life Ins. Co., 943 F.2d 862, 866 (8th Cir. 1991), cert. denied, 502 U.S. 1073, 117 L. Ed. 2d 135, 112 S. Ct. 970 (1992). The plain meaning of the word "occur" is that the waiver is signed or executed. Therefore, the most logical interpretation of this statutory provision is that the OWBPA's waiver requirements do not apply to waivers executed before the statute's enactment. Rice signed the U-4 on August 12, 1983 (Geelan Aff., Ex. B), and Congress enacted the OWBPA on October 16, 1990. Any waiver of judicial forum in the U-4 "occurred" well before the enactment of the OWBPA. Accordingly, the OWBPA

1997 U.S. Dist. LEXIS 3628, *; 73 Fair Empl. Prac. Cas. (BNA) 1210;
71 Empl. Prac. Dec. (CCH) P44,907

waiver requirements do not apply to the arbitration clause at issue in this case.

Even if I were to interpret the OWBPA as providing that a waiver [*15] of the right to a judicial forum through an arbitration clause does not "occur" until the claim arises and there is occasion for the waiver to be invoked, and that therefore the arbitration clause is covered by the statute, plaintiff's argument would still fail because Congress intended the OWBPA requirements to apply to the waiver only of substantive ADEA claims, and not procedural rights such as the right to a judicial forum. As the Fifth Circuit noted:

> Congress, through the OWBPA, has protected terminated employees who waive their substantive rights under ADEA in exchange for a more favorable severance package; however, we find no clear indication that Congress was likewise concerned with protecting employees who agree to arbitrate claims that may arise during the course of their employment."

_Williams_ v. _Cigna Fin. Advisors, Inc._, 56 F.3d 656, 661 (5th Cir. 1995).

There are several indications that Congress intended the OWBPA waiver requirements to apply only to waivers of substantive rights or claims under the ADEA, and not to arbitration agreements. First, the text of the OWBPA shows that, as the Fifth Circuit noted, "Congress' primary concern [in the [*16] OWBPA] was with releases and voluntary separation agreements in which employees were forced to waive their rights." _Williams_, 56 F.3d at 660. The statute states that the waiver provisions apply to the waiver of "any right or claim under this chapter." 29 U.S.C. § 626(f)(1). The reference to rights "under this chapter" would seem to refer to substantive rights conferred by this chapter of the code -- i.e., the right to sue for age discrimination -- rather than to procedural rights. In addition, the statute refers specifically to additional safeguards for exit incentive or other termination programs and to settlements of claims filed by individuals or the EEOC, all of which engage substantive rights.

Moreover, the statute does not refer specifically to arbitration or other procedures. The Supreme Court has endorsed a distinction between waivers of substantive rights and waivers of procedural rights: "By agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum." _Mitsubishi Motors Corp._, v. _Soler Chrysler-_

_Plymouth, Inc._, 473 U.S. 614, [*17] 628, 87 L. Ed. 2d 444, 105 S. Ct. 3346 (1985). Therefore, it is significant that [HN11]the OWBPA does not refer specifically to waivers of procedural rights collateral to ADEA claims such as the right to a judicial forum or a jury trial. _See_ Douglas E. Abrams. _Arbitrability in Recent Federal Civil Rights Legislation: The Need for Amendment_, 26 Conn. L. Rev. 521, 584 n.187 (1994) (noting that omission of reference to arbitration in statute "stands in stark contrast to legislation which, for nearly two decades, had referred specifically to arbitration when the lawmakers intended to reach the mandate's effect on agreements covering claims under a particular statute."). Absent such reference, there is no reason to interpret the statute to restrict arbitration clauses.

Second, the legislative history of the OWBPA is consistent with an interpretation of the statute as applying to waivers of ADEA claims but not to waivers of procedural rights such as the right to a judicial forum or a jury trial. The Senate Report states that the purpose of the waiver provisions is to "ensure[] that older workers are not coerced or manipulated into waiving their rights to seek legal relief under the [*18] ADEA." Sen. Rep. No. 623, 101st Cong., 2d Sess. 5 (1990), _reprinted in_ 1990 U.S.C.C.A.N. 1509, 1510. In addition, the Congressional Budget Office in a letter to the Chairman of the Senate Committee on Labor and Human Resources discussing cost estimates, noted that the bill was intended to alleviate the problem of "some employers . . . requiring employees, particularly those accepting retirement and other exit incentive offers, to sign waivers of the right to bring cases of age discrimination against the employer." _Id._ at 1542-43. Under the heading "Minority Views," the Report notes that the OWBPA sets forth a "series of stringent requirements that must be met by employers seeking waivers or releases of claims under the [ADEA]." _Id._ at 1563-64. None of these documents mention arbitration and all seem to confirm that Congress intended [HN12]the OWBPA waiver provisions to apply to substantive claims.

Third, if the statute were interpreted to cover waivers of the right to a judicial forum or a jury, that would undermine the traditional federal policy favoring arbitration. Under the OWBPA, an "individual . . . [may] not waive rights or claims that may arise after the date the [*19] waiver is executed." 29 U.S.C. § 626(f)(1)(C). Pre-dispute arbitration clauses necessarily waive rights -- i.e., the right to a judicial forum -- that arise after they are executed. As the _Williams_ court noted,

> If we were to hold that an arbitration clause in a U-4 Registration had to comply with the OWBPA's waiver provisions, we would in effect be holding that em-

# EXHIBIT H

LEXSEE

**JULIE VITTENGL, BENJAMIN DeGONZAGUE, SARAH KAYS, and THOMAS
BORST, on behalf of themselves and all others similarly situated, Plaintiffs, vs.
WURLD MEDIA, INC., Defendant.**

1:06-CV-1513

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF
NEW YORK**

**2007 U.S. Dist. LEXIS 25492**

**April 5, 2007, Decided
April 5, 2007, Filed**

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff employees commenced an action under 29 U.S.C.S. § 206 of ERISA and N.Y. Lab. Law art. 6 to recover unpaid wages and contributions to retirement accounts. Relying on an arbitration clause included in employment agreements, defendant employer filed a Fed. R. Civ. P. 12(b)(3) motion to dismiss for lack of subject matter jurisdiction. The employees filed a motion to refer the action to the court's alternative dispute resolution program.

**OVERVIEW:** An arbitration clause in the parties' employment agreements required that all legal disputes arising out of employment be resolved through binding arbitration. Although the employees conceded that all their claims were subjected to arbitration, they opposed the motion to dismiss because the court had discretion under 9 U.S.C.S. § 3 of the Federal Arbitration Act, 9 U.S.C.S. §§ 1-14, to stay the action. The court determined that it was appropriate to dismiss the action rather than to stay it because there were no issues remaining that might properly be decided by the court. The court held that it would be inappropriate to refer the action to the court's alternative dispute resolution program pursuant to N.D.N.Y. R. 83.7-2 because the employer had unequivocally expressed its lack of consent. Furthermore, the employment agreements' requirement that disputes be resolved by binding arbitration could not be met by the court's non-binding alternative dispute resolution program.

**OUTCOME:** The court granted the employer's motion to dismiss and denied the employees' motion to refer the action to the court's alternative dispute resolution program.

**CORE TERMS:** arbitrator, binding arbitration, arbitration, Federal Arbitration Act, arbitration clause, concede, causes of action, subject matter jurisdiction, submitted to arbitration, non-binding, arbitrate, local rules, disputes arising

**LexisNexis(R) Headnotes**

*Civil Procedure > Dismissals > Involuntary Dismissals
> General Overview*
*Civil Procedure > Alternative Dispute Resolution >
Arbitrations > Federal Arbitration Act > Stays Pending
Arbitration*
[HN1]Under the Federal Arbitration Act, 9 U.S.C.S. §§ 1-14, a party may seek to stay an action if a part of that action is referable to arbitration. 9 U.S.C.S. § 3. However, where all issues raised in a complaint must be submitted to arbitration, the court may dismiss an action rather than stay proceedings.

*Civil Procedure > Alternative Dispute Resolution >
General Overview*
[HN2]The Alternative Dispute Resolution (ADR) program of the United States District Court for the Northern District is a consensual arbitration program for the referral of civil actions to court-annexed arbitration. Its purpose is to establish a less formal procedure while preserving a right to full trial on demand. N.D.N.Y. R. 83.7-1. ADR is non-binding. N.D.N.Y. R. 83.7-2. ADR is an

alternative mechanism to resolve litigation before the district court. Consent of both parties to participation is critical to its success. Further, ADR is not appropriate where there is no cause of action over which the district court properly has jurisdiction.

*Civil Procedure > Alternative Dispute Resolution > Arbitrations > Federal Arbitration Act > General Overview*

[HN3]Under the Federal Arbitration Act, 9 U.S.C.S. §§ 1-14, where an agreement to arbitrate does not name an arbitrator or arbitrators, then upon application of either party to the controversy the court shall designate and appoint an arbitrator or arbitrators. 9 U.S.C.S. § 5.

**COUNSEL:** [*1] JAMES T. TOWNE, JR., ESQ., SUSAN F. BARTKOWSKI, ESQ., THE TOWNE LAW OFFICE, PC, Attorneys for Plaintiffs, Albany, New York.

GREGG T. JOHNSON, ESQ., JACINDA HALL CONBOY, ESQ., SCOTT P. QUESNEL, ESQ., GIRVIN & FERLAZZO, PC, Attorneys for Defendant, Albany, New York.

**JUDGES:** David N. Hurd, United States District Judge.

**OPINION BY:** David N. Hurd

**OPINION**

*MEMORANDUM DECISION and ORDER*

### I. *INTRODUCTION*

Julie Vittengl, Benjamin DeGonzague, Sarah Kays, and Thomas Borst, as representatives of their class, ("plaintiffs") commenced this class action under 29 U.S.C. § 206("ERISA") (*First* through *Fourth* causes of action) and Article 6 of the New York Labor Law (*Fourth* and *Fifth* causes of action) to recover unpaid wages and contributions to 401(k) accounts. Wurld Media, Inc. ("defendant" or "Wurld Media") moved to dismiss the action for lack of subject matter jurisdiction under Federal Rule of Civil Procedure ("Rule") 12(b)(3). Oral argument was heard in Albany, N.Y. on February 23, 2007. Decision was reserved.

### II. *FACTS*

This action was brought by plaintiffs, as representatives of a class [*2] of similarly situated Wurld Media employees, to recover wages and 401(k) account contributions that defendant allegedly failed to pay in violation of ERISA and New York state law. Defendant promptly sought dismissal for lack of subject matter jurisdiction

because plaintiffs, as a condition of their employment, signed agreements requiring that all legal disputes arising out of their employment be resolved through binding arbitration. The sixth clause of the agreement titled "Resolution of Legal Disputes Through Binding Arbitration" ("arbitration clause") read in relevant part:

> Any legal dispute arising between the Employee and the Company . . . shall be resolved through final and binding arbitration. "Legal dispute" when applied to an employee claim means a claim by an employee that Wurld Media or one of its agents has breached a legal obligation to the employee by violating a statute, regulation or common law obligation applicable in the employment relationship.

(Kerber Aff. Ex. A at 4.)

Plaintiffs concede that the arbitration clause is applicable to their claim.

### III. *DISCUSSION*

Because both parties agree that the underlying dispute is arbitrable, the [*3] Federal Arbitration Act, 9 U.S.C. §§ 1-14, is the controlling source of law for the questions presented here.

#### A. *Motion to Dismiss*

Defendant seeks dismissal of plaintiffs' action because, as plaintiffs concede, the matter is one which is subject to arbitration. Plaintiffs oppose the motion to dismiss on the ground that the district court has the discretion to stay the action under 9 U.S.C. § 3. Therefore, the issue is whether the action should be dismissed or stayed in accordance with 9 U.S.C. § 3.

[HN1]Under the Federal Arbitration Act a party may seek to stay an action if a part of that action is referable to arbitration. 9 U.S.C. § 3 (2005). However, courts of this circuit have held that "[w]here all issues raised in the complaint must be submitted to arbitration, the court may dismiss an action rather than stay proceedings." *Rubin v. Sona Int'l. Corp.*, 457 F. Supp. 2d 191, 198 (2006); *see also Spencer-Franklin v. Citigroup/Citibank N.A.*, No. 06 Civ. 3475, 2007 U.S. Dist. LEXIS 11625, 2007 WL 521295, at *4 (S.D.N.Y. 2007) (stating that "all courts of which we are aware [*4] have followed the rule" that where all issues in the complaint must be submitted to arbitration the action should be dismissed); *Margalioth v. Merrill, Lynch, Pierce, Fenner & Smith Inc.*, 695 F. Supp. 756, 757 (S.D.N.Y. 1988) (holding that where "none of plaintiff's claims remain to be resolved by [the]

court . . . there is no reason to stay [the] proceedings pending the arbitrator's decision").

In this case, plaintiffs concede that all of the claims in the complaint are subject to final and binding arbitration. Therefore, because there are no issues remaining in this dispute that might properly be decided by the district court, it is appropriate to dismiss the action rather than to stay it.

Defendant's motion to dismiss must be granted.

### B. *Cross Motion to Place Matter in ADR*

Plaintiffs entered a cross motion to have the arbitration placed in the Alternative Dispute Resolution ("ADR") program of the Northern District pursuant to Local Rule 83.7-2. Therefore, the issue is whether this dispute may properly be brought in ADR.

[HN2]The ADR is a "*consensual* arbitration program for the referral of civil actions to court-annexed arbitration. Its purpose [*5] is to establish a less formal procedure . . . while preserving a *right to full trial on demand.*" L. R. 83.7-1 (emphasis added). Further, ADR is "non-binding." L. R. 83.7-2.

The ADR is not an appropriate forum for this action. As the local rules make clear, ADR is an alternative mechanism to resolve litigation pending before the district court. Consent of both parties to participation is critical to its success. Here, defendant has unequivocally expressed its lack of consent. Further, ADR is not appropriate where there is no cause of action over which the district court properly has jurisdiction. As previously stated, plaintiffs' claims are subject to final and binding arbitration, and neither party has a right to seek a trial, as the local rules allow for cases in ADR. Additionally, ADR is by rule non-binding, but the contract of the parties in this action requires that the dispute be resolved through binding arbitration. Therefore, because the contract to resolve this dispute cannot be met by ADR, it would be inappropriate to compel arbitration of this case in ADR.

While the action is not appropriate for ADR, it should be noted by both parties that the lack of express language [*6] in the arbitration clause on who shall arbi-

trate this dispute risks further proceedings. [HN3]Under the Federal Arbitration Act, 9 U.S.C. § 5, where an agreement to arbitrate does not name an "arbitrator or arbitrators . . . then upon application of either party to the controversy the court shall designate and appoint an arbitrator or arbitrators." 9 U.S.C. § 5 (2005).

It should be the preference of all involved in this matter to quickly resolve the differences over whom shall be appointed arbitrator. However, if the parties can not come to a mutually satisfactory determination, either party may petition for appointment of an arbitrator in accordance with 9 U.S.C. § 5.

Therefore, because this dispute is not one that is susceptible to resolution through ADR, plaintiffs' cross motion must be denied.

### IV. *CONCLUSION*

Defendant's motion to dismiss all of plaintiffs' claims is granted because these disputes are subject to final and binding arbitration, and there are no remaining matters that are properly brought before the district court. Plaintiffs' motion to remove this action to the Northern District's ADR program [*7] is denied because ADR is not an appropriate forum for this dispute.

Accordingly, it is

ORDERED that

1. Plaintiffs' cross motion to direct the action to the Alternative Dispute Resolution program of the Northern District is DENIED;

2. Defendant's motion to dismiss is GRANTED: and

3. The complaint is DISMISSED in its entirety.

The Clerk is directed to enter judgment accordingly.

IT IS SO ORDERED.

David N. Hurd

United States District Judge

Dated: April 5, 2007

Utica, New York.

# EXHIBIT I

LEXSEE



Positive
As of: Aug 16, 2008

**HENRIETTA B. SPENCER-FRANKLIN, Plaintiff, -v.- CITIGROUP/CITIBANK N.A.; CHARLES PRINCE; MAURA MARKUS; GARY KIMMELMAN; DONNA GRIFFIN; NICHOLAS DECESARE; JOHN E. GUNTHER. Defendants.**

**06 Civ. 3475 (GBD) (GWG)**

**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK**

**2007 U.S. Dist. LEXIS 11625**

**February 21, 2007, Decided**

**SUBSEQUENT HISTORY:** Adopted by, Motion granted by, Complaint dismissed at Spencer-Franklin v. Citigroup/Citibank N.A., 2007 U.S. Dist. LEXIS 25870 (S.D.N.Y., Apr. 4, 2007)

**CORE TERMS:** arbitration, compel arbitration, reproduced, arbitration agreements, agreement to arbitrate, employee handbooks, employment-related, disability, arbitrable, lawsuit, waived, Federal Arbitration Act FAA, policy favoring arbitration, dispute resolution, binding arbitration, summary judgment, parties agreed, party opposing, citations omitted, opposition papers, evidentiary facts, acknowledgment, nonarbitrable, encouraged, arbitrate, handbooks, opposing, arbitrability

**COUNSEL:** [*1] Henrietta B. Spencer-Franklin, Plaintiff, Pro se, Roselle, NJ.

For Citigroup/Citibank N.A., Charles Prince, Maura Markus, Gary A. Kimmelman, Donna Griffin, Nicholas DeCecasare, John E. Gunther, Defendants: Daniel R Halem, LEAD ATTORNEY, Proskauer Rose LLP (New York), New York, NY.

**JUDGES:** GABRIEL W. GORENSTEIN, United States Magistrate Judge.

**OPINION BY:** GABRIEL W. GORENSTEIN

**OPINION**

REPORT AND RECOMMENDATION

**GABRIEL W. GORENSTEIN, UNITED STATES MAGISTRATE JUDGE**

Plaintiff Henrietta Spencer-Franklin ("Spencer-Franklin") filed the instant action against her current employer Citibank. N.A., its corporate parent Citigroup, and various individual defendants alleging violations of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12112-12117. Defendants have now moved to compel arbitration and dismiss this proceeding pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) as well as the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et seq.I. BACKGROUND

A. The Arbitration Policy

Citibank's [*2] U.S. Consumer Group hired Spencer-Franklin in 1989 to work as an Administrative Assistant in its Legal Department. See Declaration of Ruth Pollock ("Pollock Decl.") (attached to Notice of Motion to Compel Arbitration and to Dismiss Action, filed Sept. 1, 2006 (Docket # 7) ("Notice of Motion")), P2. On or about September 1, 2001, the U.S. Consumer Group adopted an Employment Arbitration Policy. Id. P3. At the time of its adoption, all employees received a copy of the policy with a cover memo attached which stated the following:

>    Pursuant to the Arbitration Policy, you and the Company agree to make arbitration the required and exclusive forum for resolution of all employment-related dis-

putes that are based on legally protected rights. Arbitration is an essential element of your employment relationship and a condition of employment . . . . *Your continued employment will constitute acceptance of the Arbitration Policy.*

See Cover Letter, dated Sept. 1, 2001 (reproduced in Ex. A. to Pollock Decl.) (emphasis in original); see also Pollock Decl. PP3-4. Specifically, the Arbitration Policy states:

U.S. Consumer Group believes that the resolution of [*3] such disagreements will be best accomplished by internal dispute resolution and, where that fails, by arbitration conducted under the auspices of the American Arbitration Association. For these reasons, U.S. Consumer Group has adopted this Employment Arbitration Policy ("Policy"). Except as provided below, the Policy applies to all persons employed by U.S. Consumer Group as of September 1, 2001 and all employees joining U.S. Consumer Group after that date . . . .

The Policy makes arbitration the required and exclusive forum for the resolution of all employment disputes based on legally protected rights . . . that may arise between an employee or former employee and U.S. Consumer Group or its current and former parents, subsidiaries and affiliates and its and their current and former officers, directors, employees and agents . . . .

See Arbitration Agreement (reproduced in Ex. A to Pollock Decl.); Pollock Decl. P5. A copy of the Arbitration Policy subsequently appeared in Citigroup's Employee Handbook as distributed in 2002, 2004 and most recently, on March 3, 2006. Pollock Decl. P6. With this latest distribution of the Handbook, Spencer-Franklin signed a written acknowledgment [*4] form which stated, "I understand that this *Handbook* contains a policy that requires me to submit employment-related disputes to binding arbitration (see page 37)." Receipt Form, dated Mar. 3, 2006 (reproduced as Ex. B to Pollock Decl.); see also Pollock Decl. P6.

B. The Current Claim

Spencer-Franklin filed her complaint in this action on May 8, 2006. See Complaint, (Docket # 1) (repro-

duced in Ex. A to Declaration of Daniel Halem ) ("Halem Decl.") (attached to Notice of Motion), after first receiving a right to sue letter from the Equal Employment Opportunity Commission. See Right to Sue Letter, dated Feb. 21, 2006 (reproduced in Ex. A of Halem Decl.). In her complaint, she alleges that Citibank violated the ADA by failing to provide her with reasonable accommodations upon her return to work after a period of disability leave from April through August 2002. Compl. P4; see also Letter, dated Feb. 17, 2006 from Nicolas De Cesare (reproduced in Ex. A to Halem Decl.), at 2.

On September 1, 2006, Citibank filed the instant motion to compel arbitration and dismiss this action. See Notice of Motion; Memorandum of Law in Support of Defendants' Motion to Compel [*5] Arbitration and to Dismiss this Action (Docket # 5); Notice to Pro Se Litigant Opposing Motion for Summary Judgment, filed Sept. 1, 2006 (Docket # 6). In response, Spencer-Franklin filed an "Answer to Notice to Dismiss" on September 27, 2006 (Docket # 8).

II. DISCUSSION

A. Motion to Compel Arbitration

As the Second Circuit has noted, "[t]he Federal Arbitration Act, 9 U.S.C. §§ 1 et seq. (1988), requires the federal courts to enforce arbitration agreements, reflecting Congress' recognition that arbitration is to be encouraged as a means of reducing the costs and delays associated with litigation." Vera v. Saks & Co., 335 F.3d 109, 116 (2d Cir. 2003) (quoting Deloitte Noraudit A/S v. Deloitte Haskins & Sells, United States, 9 F.3d 1060, 1063 (2d Cir. 1993)). Title 9 U.S.C. § 4 specifically contemplates that a party may obtain an order "directing that [an] arbitration proceed in the manner provided for in [an arbitration] agreement." Where a motion is brought to compel arbitration, a court "applies a standard similar to that applicable for a motion for summary judgment" in that it must [*6] determine whether there is "an issue of fact as to the making of the agreement for arbitration." Bensadoun v. Jobe-Riat, 316 F.3d 171, 175 (2d Cir. 2003).

In this Circuit, a court conducts a four-pronged analysis to determine whether an action is governed by an arbitration agreement:

[F]irst, it must determine whether the parties agreed to arbitrate; second, it must determine the scope of that agreement; third, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable; and fourth, if the court concludes that

some, but not all, of the claims in the case are arbitrable, it must then decide whether to stay the balance of the proceedings pending arbitration.

JLM Indus., Inc. v. Stolt-Nielsen SA, 387 F.3d 163, 169 (2d Cir. 2004) (citations omitted) (alteration in original); see also Thomas James Assocs. v. Jameson, 102 F.3d 60, 65 (2d Cir. 1996) ("unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute," arbitration is to be compelled) (citations omitted) (emphasis [*7] in original). We now examine each of the four factors.

On the question of whether the parties agreed to arbitrate, defendants have presented undisputed facts that Citibank's U.S. Consumer Group had an arbitration policy applicable to ADA suits and that Spencer-Franklin received and/or acknowledged the policy on at least four occasions prior to the institution of this lawsuit - most recently on March 3, 2006. Spencer-Franklin indicated in writing that she "underst[ood] that [the Arbitration Policy] . . . requires me to submit employment-related disputes to binding arbitration . . . ." See Receipt Form. "Courts in this district routinely uphold arbitration agreements contained in employee handbooks where, as here, the employee has signed an acknowledgment form." Beletsis v. Credit Suisse First Boston, Corp., 2002 U.S. Dist. LEXIS 16586, 2002 WL 2031610, at *3 (S.D.N.Y. Sept. 4, 2002). Also, "[t]he mere fact that an agreement to arbitrate was required as a condition of . . . continued employment . . . is insufficient to invalidate the provision." Ciago v. Ameriquest Mortgage Co., 295 F. Supp. 2d 324, 329 (S.D.N.Y. 2003) (citing cases); accord Arakawa v. Japan Network Group, 56 F. Supp. 2d 349, 352 (S.D.N.Y. 1999). [*8]

Spencer-Franklin's opposition papers do not address any of the relevant facts or legal principles regarding arbitrability. Instead, she characterizes the defendants' request for a dismissal as "unfair" and "Justice Denied." See Summary, Ex. 19, Answer to Notice to Dismiss. She states:

It is incomprehensible that Citibank would hold me to these policies when its own officers have not followed its policies and procedures. The policies and procedures as set forth in the Code of Conduct, Employee Handbook, etc., and are not necessarily provided because it is stated in these manuals. It is a fact that these policies have not been followed in this case.

Id.

These allegations do not support a finding that there was no agreement to arbitrate. As the Second Circuit has noted:

[I]t is not sufficient for the party opposing arbitration to utter general denials of the facts on which the right to arbitration depends. If the party seeking arbitration has substantiated the entitlement by a showing of evidentiary facts, the party opposing may not rest on a denial but must submit evidentiary facts showing that there is a dispute of fact to be tried.

Oppenheimer & Co., Inc. v. Neidhardt, 56 F.3d 352, 358 (2d Cir. 1995). [*9] Spencer-Franklin was obviously aware of her right to submit evidentiary materials in opposing the defendants' motion inasmuch as she submitted numerous exhibits as part of her opposition papers. Nothing she has submitted, however, relates in any way to the arbitration policy. Thus, the evidence is uncontroverted that there was an agreement to arbitrate. [1]

    1   To the extent that Spencer-Franklin's statements may be understood as an argument that Citibank waived its right to compel arbitration by not following its policies in other instances, this argument must fail. "Any examination of whether the right to compel arbitration has been waived must be conducted in light of the strong federal policy favoring arbitration for dispute resolution . . . . Clearly, the policies underlying the federal arbitration act favor enforcement of agreements to arbitrate disputes." Rush v. Oppenheimer & Co., 779 F.2d 885, 887 (2d Cir. 1985). Given the federal policy favoring arbitration, Spencer-Franklin's conclusory allegations cannot support a finding that Citibank waived its right to compel arbitration.

[*10]   As to the question of the scope of that agreement, the policy states specifically that it applies to "claims, demands or actions under [inter alia] . . . the Americans with Disabilities Act of 1990." See Arbitration Policy.

On the issue of whether Congress intended ADA claims to be arbitrable, the text of the ADA states that "[w]here appropriate and to the extent authorized by law, the use of alternative means of dispute resolution, includ-

ing . . . arbitration, is encouraged to resolve disputes." 42 U.S.C. § 12212. Thus, courts have upheld arbitration agreements in ADA cases. See, e.g., Santos v. GE Capital, 397 F. Supp. 2d 350, 356 (D. Conn. 2005); Topf v. Warnaco, Inc., 942 F. Supp. 762, 771 (D. Conn. 1996).

Finally, Spencer-Franklin's complaint asserts only an ADA claim and thus there are no nonarbitrable claims included in her lawsuit.

In sum, the application of four-factor test for arbitrability requires the conclusion that Spencer-Franklin's ADA claim must be arbitrated.

B. Dismissal or Stay

The remaining issue is whether to grant defendants' motion to dismiss the case in favor of arbitration [*11] or whether the case should merely be stayed - a remedy that is specifically contemplated by 9 U.S.C. § 3. All courts of which we are aware have followed the rule that, "[w]here all of the issues raised in the Complaint must be submitted to arbitration, the Court may dismiss an action rather than stay proceedings." Rubin v. Sona Int'l Corp., 457 F. Supp. 2d 191, 198 (S.D.N.Y. 2006) (citing Alford v. Dean Witter Reynolds, Inc., 975 F.2d 1161, 1164 (5th Cir. 1992) (citing cases)); accord Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc., 252 F.3d 707, 709-10 (4th Cir. 2001) ("Notwithstanding the terms of § 3, . . . dismissal is a proper remedy when all of the issues presented in a lawsuit are arbitrable."); Green v. Ameritech Corp., 200 F.3d 967, 972-73 (6th Cir. 2000); Bercovitch v. Baldwin Sch., Inc., 133 F.3d 141, 156 n.21 (1st Cir. 1998), aff'd, 191 F.3d 8 (1999); Sparling v. Hoffman Constr. Co., 864 F.2d 635, 636 (9th Cir. 1988). [2] Thus, where defendants have sought dismissal rather than a stay, courts in this district have granted [*12] dismissal. See, e.g., Titan Pharms. & Nutrition, Inc. v. Med. Shoppe Int'l, Inc., 2006 U.S. Dist. LEXIS 10131, 2006 WL 626051, at *6 (S.D.N.Y. Mar. 13, 2006); Najib v. Arnold, 2005 U.S. Dist. LEXIS 1264, 2005 WL 221429, at *4 (S.D.N.Y. Jan. 31, 2005); Perry v. N.Y. Law Sch. & Collegis, Inc., 2004 U.S. Dist. LEXIS 14516, 2004

WL 1698622, at *4 (S.D.N.Y. July 28, 2004). Accordingly, this case should be dismissed.

    2 While it does not appear that the Second Circuit has ruled directly on the question of whether dismissal is an available remedy under the FAA, the case of Salim Oleochemicals v. M/V Shropshire, 278 F.3d 90 (2d Cir. 2002), made clear that the court expected that a dismissal in such circumstances was permissible. See id. at 93 (noting that where courts dismiss an action under the FAA rather than staying it, the order of dismissal is appealable).

Conclusion

For the foregoing reasons, defendants' motion to compel arbitration and dismiss the action (Docket # 7) should be granted.

**PROCEDURE FOR FILING [*13] OBJECTIONS TO THIS REPORT AND RECOMMENDATION**

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have ten (10) days from service of this Report and Recommendation to serve and file any objections. See also Fed. R. Civ. P. 6(a), (e). Such objections (and any responses to objections) shall be filed with the Clerk of the Court, with copies sent to the Hon. George B. Daniels, and to the undersigned, at 500 Pearl Street, New York, New York 10007. Any request for an extension of time to file objections must be directed to Judge Daniels. If a party fails to file timely objections, that party will not be permitted to raise any objections to this Report and Recommendation on appeal. See Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985).

Dated: February 21, 2007

New York, New York

GABRIEL W. GORENSTEIN

United States Magistrate Judge