```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------x
                                          :
STEVEN NUNEZ,                             :
                                          :
                    Plaintiff,            :
                                          :    08 Cv. 5398 (BSJ)
        v.                                :
                                          :
                                          :    Order
CITIBANK, N.A.,                           :
                                          :
                    Defendant.            :
------------------------------------------x
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 2/3/09

BARBARA S. JONES
UNITED STATES DISTRICT JUDGE

Plaintiff Steven Nunez ("Nunez") brought this action alleging that Defendant Citibank N.A. ("Citibank") discriminated and retaliated against him, on the basis of his race and religion and in violation of city, state and federal law. Pursuant to the Federal Arbitration Act ("FAA") and Federal Rules 12(b)(1) and 12(b)(6), Citibank moves to compel arbitration and dismiss or stay this action. Nunez has not opposed or addressed Citibank's motion, and for the reasons that follow, it is GRANTED.

## BACKGROUND

This action arises out of Nunez's employment with Citibank, which spanned from April 25, 2005 until his termination on July 19, 2007. (Complaint ¶ 6). In March of 2005, Nunez completed and signed an employment application that declared Citibank's "mandatory employment arbitration policy" (the "Arbitration

1

Policy"), which made employment "contingent upon execution of . . . an agreement to submit employment related disputes to binding arbitration." (Certification of Ruth A. Pollock ("Pollock Cert."), Ex. 1). On April 25, 2005, Citibank hired Nunez as a Personal Banker, in a branch located in Uniondale, New York. (Complaint ¶¶ 6, 14). Upon the commencement of his employment, Nunez signed two documents indicating his agreement to the Arbitration Policy. The first, entitled "Principles of Employment," states,

> "You agree to follow our dispute resolution/arbitration procedures for employment disputes . . . These include without limitation all claims, demands or actions under Title VII . . . and any other federal, state or local statute, regulation or common law doctrine regarding employment discrimination, conditions of employment or termination of employment."

(Pollock Cert. ¶ 7, Ex. 2). This document outlines those procedures, provides that, with respect to any dispute that is not resolved internally, "you and the Company agree to submit the dispute. . . to binding arbitration with the American Arbitration Association ("AAA")," and makes clear that "<u>it is your responsibility to read and understand the dispute resolution/arbitration procedures.</u>" (Pollock Cert. Ex. 2) (emphasis supplied).

Nunez also signed a "Receipt Form," dated April 26, 2005, which acknowledged his agreement to arbitrate employment-related

2

disputes and his receipt of a copy of the U.S. Consumer Group 2004 Employee Handbook containing the Arbitration Policy. (Pollock Cert. ¶¶ 8-9, Ex. 3). The "Receipt Form" states,

> I understand that this *Handbook* contains a policy that requires me to submit employment-related disputes to binding arbitration (see page 35). I have read that policy carefully. I also understand that no provision in this *Handbook* or elsewhere is intended to constitute a waiver, nor be construed to constitute a waiver, of the Company's right to compel arbitration of employment-related disputes.

(Pollock Cert. Ex. 3). The first page of the 2004 Employee Handbook states, in bold type:

> **Important: This Handbook contains a policy that requires you to submit employment-related disputes to a binding arbitration (see page 35). Please read that policy carefully. No provision in this Handbook or elsewhere is intended to constitute a waiver, or be construed to constitute a waiver, of the Company's right to compel arbitration of employment-related disputes.**

(Pollock Cert. Ex. 3) (emphasis supplied). The 2004 Employee Handbook also provides that the Arbitration Policy applies to all persons employed by U.S. Consumer Group on or after September 1, 2001. The Arbitration Policy

> makes arbitration the required and exclusive forum for the resolution of all employment disputes based on legally protected rights (i.e., statutory, contractual or common law rights) that may arise between an employee or former employee and U.S. Consumer Group . . . including, without limitation, claims, demands, or actions under Title VII of the Civil Rights Act of 1964 . . . and any other federal, state, or local statute, regulation, or common-law doctrine regarding employment discrimination, conditions of employment,

3

>           termination of employment, breach of contract, or
>           defamation.

On March 2, 2006, Nunez signed another "Receipt Form" acknowledging his receipt of a copy of the U.S. Consumer Group 2006 Employee Handbook, which included the Arbitration Policy. In so doing, Nunez reaffirmed his agreement to and understanding of the mandatory Arbitration Policy. (Pollock Cert. Ex. 5). The first page of the 2006 Handbook, like the 2004 Handbook, emphasized that the Arbitration Policy "**requires you to submit employment-related disputes to binding Arbitration.**" (Pollock Cert. ¶ 13, Ex. 6, p. 1) (emphasis supplied). The 2004 and 2006 Handbooks contain substantively identical Arbitration Policies. (See Pollock Cert. Ex. 5, 6).

Nunez's employment continued until his termination on July 19, 2007. (Complaint ¶ 6). He commenced this action on June 13, 2008, alleging that, in the course of his employment at Citibank, Citibank discriminated and retaliated against him, in violation of Title VII, New York State and City Human Rights Laws, 42 U.S.C. §§ 1981a, 1983, and 1985, and the First and Fourteenth Amendments to the U.S. Constitution. (Complaint ¶¶ 1, 44, 49, 50, 54). Citibank filed the instant motion on August 20, 2008.

**DISCUSSION**

**1. Mandatory Arbitration**

4

Because Nunez has agreed to arbitrate his claims against Citibank, he cannot pursue those claims in this Court. The FAA governs Citibank's Arbitration Policy. See Circuit City Stores, Inc. v. Adams, 532 U.S. 105, 119 (2001) (holding that FAA governs arbitration clauses in employment contracts other than those for transportation workers). The FAA establishes "a strong federal policy favoring arbitration as an alternative means of dispute resolution," JLM Indus., Inc. v. Stolt-Nielsen SA, 387 F.3d 163, 171 (2d Cir. 2004), and requires federal courts to enforce "privately made agreements to arbitrate" as they would any other contract. Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 219 (1985). "By its terms, the Act leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." Genesco, Inc. v. T. Kakiuchi & Co., 815 F.2d 840, 844 (2d Cir. 1987) (citing Dean Witter, 470 U.S. at 218). Once a court is satisfied that an arbitration agreement is valid and the claim before it is arbitrable, it must stay or dismiss further judicial proceedings and order the parties to arbitrate. Cronas v. Willis Group Holdings Ltd., No. 06 Civ. 15295 (GEL), 2007 U.S. Dist. LEXIS 68797, at *9 (S.D.N.Y. 2007) (citing Progressive Cas. Ins. Co. v. C .A.

Reaseguradora Nacional de Venezuela, 991 F.2d 42, 45 (2d Cir. 1993)).

The Court's "duty to enforce arbitration agreements is not diminished when a party bound by an agreement raises a claim founded on statutory rights." Shearson/American Exp., Inc. v. McMahon, 482 U.S. 220, 226 (1987). To decide a motion to compel arbitration of claims based on statutory rights, a district court must determine: (1) whether the parties agreed to arbitrate; (2) the scope of that agreement; (3) if federal statutory claims are asserted, whether Congress intended those claims to be nonarbitrable. Genesco, 815 F.2d at 844. Here, the Court resolves each of these issues in Citibank's favor.

### a. The Parties Agreed to Arbitrate

It is clear that the parties entered into an agreement to arbitrate. As set forth above, Nunez expressly agreed, on four separate occasions, to arbitrate any employment-related claims against Citibank. The parties' "undisputed execution of [multiple] agreements demonstrates that [they] freely agreed to arbitrate." White v. Cantor Fitzgerald, L.P., No. 07 Civ. 8006 (DAB), 2008 U.S. Dist. LEXIS 106456, at *12 (S.D.N.Y. Dec. 23, 2008) (dismissing claims subject to mandatory arbitration); see also Tarulli v. Circuit City Stores, Inc., 333 F. Supp. 2d 151, 158 (S.D.N.Y. 2004) (compelling arbitration where plaintiff "voluntarily signed the Agreement and knowingly accepted

6

employment with the Defendant on the express condition that employment-related disputes would be settled through arbitration").

### b. Nunez's Claims Fall Within the Scope of the Arbitration Policy

In determining the proper scope of an arbitration agreement, courts "should generally apply state-law principles that govern the formation of contracts," Mehler v. Terminix Int'l Co. L.P., 205 F.3d 44, 48 (2d Cir. 2000), and discerns whether a party's claim actually falls within the scope of an arbitration agreement as written. JLM Industries, Inc., 387 F.3d at 169. It is well established under New York law that one "who signs or accepts a written contract . . . is conclusively presumed to know its contents and to assent to them . . . ." Metzger v. Aetna Ins. Co., 227 N.Y. 411 (1920).

The FAA establishes a strong presumption of arbitrability. See Sphere Drake Ins. Ltd. v. Clarendon Nat'l Ins. Co., 263 F.3d 26, 29-30 (2d Cir. 2001). Generally, the Court broadly construes an agreement to arbitrate; "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983). Arbitration is properly compelled "unless it may be said with positive assurance that the arbitration clause is not susceptible to an interpretation

7

that covers the asserted dispute." Roby v. Corp. of Lloyd's, 996 F.2d 1353, 1361 (2d Cir. 1993).

That may not be said here: Nunez's discrimination and retaliation claims fall squarely within the scope of the Arbitration Policy, which explicitly encompasses "claims, demands or actions under . . . any . . . federal, state or local statute, regulation or common-law doctrine regarding employment discrimination, conditions of employment, termination of employment, breach of contract, or defamation." (Pollack Cert. Ex. 4, 6). See, e.g., White, 2008 U.S. Dist. LEXIS at *16 (compelling arbitration and finding employment discrimination claims arbitrable where agreement specifically referred such claims to mandatory arbitration); Cronas, 2007 U.S. Dist. LEXIS at *9 (collecting cases doing same).

### c. Nunez's Claims are Arbitrable

The federal statutory claims that Nunez asserts are arbitrable. See, e.g., Circuit City Stores, Inc., 532 U.S. at 123 ("The Court has been quite specific in holding that arbitration agreements can be enforced under the FAA without contravening the policies of congressional enactments giving employees specific protection against discrimination prohibited by federal law[.]"); Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 26 (1991) (concluding that the federal policy in favor of arbitration extends to claims under federal statutes);

8

White, 2008 U.S. Dist. LEXIS, at *16 ("[T]here is no question that federal employment discrimination claims brought under Title VII have been found to be arbitrable."); Doctor's Assocs. v. Agrawal, No. 05 Civ. 250, 2006 U.S. Dist. LEXIS 30122 (D. Conn. Apr. 13, 2006) (finding arbitrable discrimination claim brought pursuant to 42 U.S.C. § 1981).

### 2. Dismissal

Because all of Nunez's claims must be submitted to arbitration, "no useful purpose will be served by granting a stay of these proceedings." White, 2008 U.S. Dist. LEXIS, at *18 (citations omitted). As a result, the Court dismisses those claims in favor of arbitration. See, e.g., Rubin v. Sona Int'l Corp., 457 F. Supp. 2d 191, 198 (S.D.N.Y. 2006) ("Where all of the issues raised in the Complaint must be submitted to arbitration, the Court may dismiss an action rather than stay proceedings.").

### CONCLUSION

For the foregoing reasons, Citibank's motion to compel arbitration and dismiss or stay these proceedings is GRANTED. The Court dismisses this action in favor of arbitration and directs the Clerk of Court to close this case.

SO ORDERED:

SO ORDERED:

_____
**BARBARA S. JONES**
**UNITED STATES DISTRICT JUDGE**

Dated:   New York, New York
         February 3, 2009